# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

               Plaintiff-Appellee,

v

KELVIN WAYNE HEATH,

               Defendant-Appellant.

UNPUBLISHED
August 20, 2013

No.  310897
Kent Circuit Court
LC Nos.  11-011910-FH;
            11-011911-FH

---

Before:  WHITBECK, P.J., and OWENS and M. J. KELLY, JJ.

PER CURIAM.

Defendant Kelvin Wayne Heath appeals of right his jury convictions of two counts of unarmed robbery, MCL 750.530; and two counts of false personation of a public officer, MCL 750.215.  The trial court sentenced him as a habitual offender, fourth offense, MCL 769.12, to serve concurrent sentences of 8 to 20 years in prison for each unarmed robbery and time served for the false personation counts.  Because we conclude that there were no errors warranting relief, we affirm.

Heath's convictions arise out of a pair of robberies committed within two weeks of each other.  In both cases, there was evidence that he used text messages to direct the victims to a particular apartment where they could purchase "massage" services.  When the victims arrived at the apartment complex, Heath confronted them and identified himself as a police officer conducting a sting operation.  Heath then took the victims' wallets to "check their identification" and took the victims' money.  He then returned the wallets and told the victims that they were free to go.

The second victim, Barry Isaacson, testified that he was from Illinois but came to Grand Rapids for unspecified "business."  He said he went to the apartment complex at issue for an "adult service."  After Heath stopped him and took his money, Isaacson drove around the parking lot and saw Heath getting into his car.  He drove up to Heath and took a picture of him with his phone's camera.  He then called the number given as a contact for the massage service and Heath answered.  Isaacson called the police department and, after an officer arrived at the parking lot, he gave the officer a copy of Heath's picture and the contact number.  The officer traced the phone number to Heath and verified Isaacson's photo as a match for Heath's driver's license photo.  The first victim later identified Heath as the person who robbed him.

-1-

On appeal, Heath argues that the trial court erred when it allowed the prosecutor to have Isaacson's preliminary examination testimony read into evidence.  Specifically, he contends that the trial court erred to the extent that it determined that the prosecutor had exercised due diligence in procuring Isaacson's presence.  He notes that there is no evidence that the prosecutor sought to obtain his presence under the Uniform Act to Secure the Attendance of Witnesses from without a State in Criminal Proceedings, see MCL 767.91 *et seq*., which, he maintains, precludes a finding of due diligence.  This Court reviews a trial court's decision to permit the admission of evidence for an abuse of discretion.  *People v Roper*, 286 Mich App 77, 90; 777 NW2d 483 (2009).  "However, this Court reviews de novo whether a rule or statute precludes admission of evidence as a matter of law."  *Id.* at 91.  This Court reviews de novo issues of constitutional law, such as the right to confront witnesses.  *People v Rose*, 289 Mich App 499, 505; 808 NW2d 301 (2010).  Heath's lawyer, however, did not contemporaneously object to the reading of Isaacson's testimony into the record.  Rather, she first brought up the issue of confrontation in a motion for a mistrial.  Therefore, this issue was not properly preserved and our review is limited to determining whether there was plain error affecting Heath's substantial rights.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).  When a claim has been forfeited, we will only grant relief if we conclude that there was in fact an error, that the error was plain (i.e., was clear or obvious), and the error affected the outcome of the lower court proceeding.  *Id.*

A criminal defendant has the right to confront the witnesses against him or her.  *People v Yost*, 278 Mich App 341, 369-370; 749 NW2d 753 (2008).  Generally, this includes the right to examine the witness at trial.  *Rose*, 289 Mich App at 513.  Nevertheless, the Sixth Amendment does not bar "testimonial statements by a witness who does not appear at trial" if the witness "is unavailable and the defendant had a prior opportunity to cross-examine the witness."  *Yost*, 278 Mich App at 370, citing *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

Consistent with the exception to the right to confront witnesses, MRE 804(b)(1) provides that a witness' testimony from a prior hearing may be admitted into evidence when the declarant is unavailable "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."  A witness is unavailable if he "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown."  MRE 804(a)(5).  Whether the prosecution showed due diligence is a question of whether a reasonable, good-faith effort was made in attempting to procure the witness, not "whether more stringent efforts would have produced [him]."  *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998).  This determination is dependent on the facts and circumstances of each case.  *Id*.

Although the record is sparse because the trial court did not conduct a hearing on the issue, it appears that the prosecutor knew Isaacson's home address and knew that Isaacson was reluctant to testify at trial; indeed, the prosecutor reminded the trial court that they took Isaacson's full testimony during the preliminary examination because he "was less than cooperative" even then and they wanted to be sure that they made a record.  The prosecutor

indicated that Isaacson had been subpoenaed, but did not respond.[1]  In the months leading to the trial, the prosecutor also made several unsuccessful attempts to contact Isaacson by telephone. No other efforts were made to secure his presence.

Heath's lawyer acknowledged that the prosecutor had attempted to get Isaacson to appear and that Isaacson refused to come, but nevertheless argued that the prosecutor could have done more to ensure his presence.  On the basis of the existing record, the trial court apparently determined that the prosecutor had made sufficient efforts to establish due diligence in procuring Isaacson's presence.  As such, the trial court determined that Isaacson was unavailable for purposes of MRE 804(b)(1) and determined that it was proper to read Isaacson's testimony from the preliminary examination into the record.

Here, the record was not fully developed and, for that reason, we cannot state with any degree of certainty that the prosecutor failed to exercise due diligence—that is, we cannot say that the trial court's implicit determination that the prosecutor's efforts were reasonable was on its face erroneous.  *Bean*, 457 Mich at 684 (stating that the test is one of "reasonableness and depends on the facts and circumstances" unique to each case).  As such, we cannot conclude that it was plain error to admit Isaacson's preliminary examination testimony.

Even if we were to conclude that the trial court plainly erred and the error prejudiced Heath's trial, this Court would nevertheless have to determine whether to exercise its discretion to grant relief.  *Carines*, 460 Mich at 763.  "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."  *Id.* (quotation marks and citation omitted).  Because Heath is not actually innocent and because any error does not—on this record—undermine the fairness, integrity or public reputation of judicial proceedings, Heath would not be entitled to the requested relief.  *Id.*

Next, Heath argues that the trial court improperly scored offense variable (OV) 10 and OV 19.  This Court reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the facts.  *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008). And this Court reviews the trial court's findings underlying a particular score for clear error. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).  However, because Heath did not object to the trial court's scores, our review is limited to plain error affecting his substantial rights.  *People v Odom*, 276 Mich App 407, 411; 740 NW2d 557 (2007).

The trial court must score OV 10 at 15 when the defendant uses predatory conduct to exploit a vulnerable victim.  MCL 777.40.  Predatory conduct is defined as "preoffense conduct directed at a victim for the primary purpose of victimization."  MCL 777.40(3)(a).  This has been interpreted to not include all preoffense conduct, but only that which is predatory in nature, such as lying in wait.  *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011).  Vulnerability

---

[1] Because the subpoena was served in Illinois, it was not enforceable.  See *People v Nieto*, 33 Mich App 535, 538 n 7; 190 NW2d 579 (1971).

refers to the victim's susceptibility to "injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c).  The vulnerability need not be inherent in the victim, but can arise from the circumstances surrounding the offense.  *Huston*, 489 Mich at 464.

On appeal, Heath argues that he did not engage in predatory conduct and that the victims were not vulnerable.  The record evidence established that Heath lured the victims to a particular apartment so that when they arrived he could approach and rob them; a clear example of lying in wait.  Moreover, the victims were vulnerable because Heath caused them to believe he was a police officer and exploited the victims' apprehension that they might be thought to be involved in an illegal activity.  Indeed, the victims were susceptible to physical restraint because they believed Heath had the authority to restrain them.  Accordingly, the trial court did not plainly err in scoring this variable.

The trial court had to score OV 19 at 10 points if the offender interfered, or attempted to interfere, with the administration of justice.  *People v Ericksen*, 288 Mich App 192, 203; 793 NW2d 120 (2010).  Interference with the administration of justice has been broadly construed to go beyond acts constituting obstruction of justice and includes interference with law enforcement officers.  *People v Barbee*, 470 Mich 283, 286-288; 681 NW2d 348 (2004).  Here, Heath argues that he was incorrectly scored under OV 19 for making perjured statements without a specific finding that he committed perjury.  But the trial court did not score this variable on that basis; it scored OV 19 because Heath made false statements to the police regarding whether he had been at the apartment complex where the robberies occurred.  Giving false information to a police officer investigating a crime interferes with the administration of justice.  *Id.* at 288.  Accordingly, there was no plain error.

Next, in a Standard 4 brief, Heath argues that he was denied effective assistance of counsel.  However, his allegations related to this claim are devoid of factual and legal support and amount to nothing more than a declaration of Heath's position.  Therefore, we conclude that he has abandoned this claim of error on appeal.  *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004).  Similarly, Heath argues in his Standard 4 brief that the prosecution engaged in racial discrimination by using peremptory challenges to exclude all African-Americans from the jury.  Heath failed to raise this issue in his statement of questions presented, thus it is not properly presented for review.  *People v Miller*, 238 Mich App 168, 172; 604 NW2d 781 (1999).  In any event, on reviewing the record, we can find no support for this claim; thus, he has not shown the existence of a plain error warranting relief.  *Carines*, 460 Mich at 764.

There were no errors that warrant relief.

Affirmed.

/s/ William C. Whitbeck
/s/ Donald S. Owens
/s/ Michael J. Kelly

310897

| STATE OF MICHIGAN<br>17th JUDICIAL CIRCUIT<br>KENT COUNTY<br>KENT | CLAIM OF APPEAL AND<br>ORDER APPOINTING COUNSEL | CASE NO. AND SUFFIX<br>11-11910 FH<br>11-11911 FH |
|---|---|---|

**Court Address**
180 OTTAWA, NW GRAND RAPIDS, MI 49503

**Court Telephone No**
(616)632-5043

People of THE STATE OF MICHIGAN

v

| Defendant Name, Last | First | Middle |
|---|---|---|
| HEATH | KELVIN | WAYNE |

**Date of Birth, Address, and Inmate number (If known)**
CHARLES EGELER RECEPTION & GUIDANCE CE 03-28-1961
3855     COOPER STREET                         199603
JACKSON                        MI     49201-7518

**Offense Information**

| Date | Description | PACC Code | H | C | A | S | Minimum |  |  | Maximum |  |  | K | P | J | Y | M | D | R | F | O |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  | Y | M | D | Y | M | D |  |  |  |  |  |  |  |  |  |
|  | ROBBERY/UNARMED | 750.530 | 4 |  |  |  | 8 |  |  | 20 |  |  | X | X |  |  |  |  | X |  | X |
|  | FALSE PERSONATION OF PUI | 750.215 |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  | X |
|  | ROBBERY/UNARMED | 750.530 |  |  |  |  | 8 |  |  | 20 |  |  | X | X |  |  |  |  | X |  | X |
|  | FALSE PERSONATION OF PUI | 750.215 |  |  |  |  |  |  |  |  |  |  |  | X |  |  |  |  |  |  | X |

Terms of Incarceration — Minimum / Maximum — Intermediate Sanctions — Probation

H=Habitual C=Conspiracy A=Attempt S=Solicitation Y=Year M=Month D=Day K=Consecutive P=Prison J=Jail R=Restitution F=Fine O=Other

The defendant claims an appeal from a final judgment or order entered on 05-16-2012 in the 17th Circuit Court, KENT County, Michigan by Judge GEORGE BUTH 11479. Copies of the final judgment or order being appealed and docket entries are attached for the Court of Appeals, appointed counsel, and Michigan Appellate Assigned Counsel System.

On 06-01-2012 the defendant filed a request for appointment of counsel and a declaration of indigency.

IT IS ORDERED:
DANIEL BREMER                                    1133 E. BRISTOL RD.
**Name of Appellate Counsel**                    **Address**

BURTON, MI 48529-1126                           810 232 6231          23554
**City, State, Zip**                             **Telephone No.**     **Bar No.**

is appointed counsel for the defendant in post-conviction proceedings. If appointed counsel cannot or will not accept this appointment, counsel shall notify the court immediately.

The court reporter(s)/recorder(s) shall file with the trial court clerk the transcripts indicated below and any other transcripts requested by counsel in this case not previously transcribed. Transcripts shall be filed within 28 days for pleas or 91 days for trials from the date ordered or requested. [MCR 7.210(B)]. Reporter(s)/recorder(s) shall be paid as provided by law.

| TRANSCRIPTS ORDERED | REPORTER/RECORDER NAME | OTHER DESCRIPTION | NUMBER | PROCEEDING DATE |
|---|---|---|---|---|
| SENTENCE | LESLIE RYDAHL |  |  | 05-16-2012 |
| JURY TRIAL | LESLIE RYDAHL |  |  | 03-27-2012 |
| JURY TRIAL | LESLIE RYDAHL |  |  | 03-29-2012 |

The clerk shall immediately send to counsel a copy of the transcripts ordered above or requested by counsel as they become available. The clerk shall also forward documents upon request by counsel. [MCR 6.433]

JUN 19 2012

GEORGE S. BUTH

**Date**

GEORGE S. BUTH          11479
**Judge**                **Bar No.**

CERTIFICATE OF MAILING

I certify that on this date I mailed a copy of this claim of appeal to appointed counsel, defendant, court reporter(s)/recorder(s), prosecutor, Court of Appeals, and Michigan Appellate Assigned Counsel System (MAACS). I also mailed a copy of the final judgment or order being appealed and docket entries to appointed counsel, the Court of Appeals, and MAACS. I also mailed a copy of the defendant's request for appointment of counsel to appointed counsel, the prosecutor, and MAACS.

JUN 19 2012                                     MARY FRARY

**Date**                                        **Signature**

CC403 (12/96)                    Page 1 of 1

Approved, SCAO

1st copy - Prosecutor
2nd copy - Defendant/Juvenile for return
3rd copy - Defendant/Juvenile

| STATE OF MICHIGAN<br>17th JUDICIAL CIRCUIT<br>KENT COUNTY | NOTICE OF RIGHT TO APPELLATE REVIEW<br>AND REQUEST FOR<br>APPOINTMENT OF ATTORNEY | CASE NO.<br>11 - 11916 F.L.<br>11-11916th<br>Judge: Byth |
| --- | --- | --- |

Court address                                                                    Court telephone no.

**180 OTTAWA AVE. NW, GRAND RAPIDS, MI 49503**

THE PEOPLE OF THE STATE OF MICHIGAN

v

Defendant/Juvenile, name, address, telephone no., and date of birth

Kelvin Heath
616-570-7089
3-28-61
M.D.O.C

---

| **NOTICE OF RIGHT TO APPELLATE REVIEW** Note to Court: This Notice must be given to the defendant/juvenile at sentencing. |
| --- |

1. You are entitled to appellate review of your conviction and sentence. This is done by filing a claim of appeal by right, or when you are not entitled to file a claim of appeal by right, an application for leave to appeal. If you pled guilty or nolo contendere, an appeal must be done by filing an application for leave to appeal.

2. Whether you appeal by right or apply for leave to appeal, if you cannot afford to hire an attorney to represent you on appeal and you request an attorney, the court will appoint an attorney and furnish the attorney with the portions of the transcript and record that the attorney needs.

3. A request for the appointment of an attorney must be made in writing and sent directly to the court at the address noted above within 42 days. The financial schedule on the back of this form must be completed.

| **RECEIPT OF NOTICE OF APPEAL RIGHTS** |
| --- |

On this day I received this form and financial schedule. I understand that I must return the completed Request for Appointment of Attorney to the court within 42 days if I want an attorney appointed for my appeal.

5-16-2012
Date

Kelvin Heath
Signature of defendant/juvenile

| **REQUEST FOR APPOINTMENT OF ATTORNEY AND AFFIDAVIT OF INDIGENCY** |
| --- |

I request appointment of an attorney to appeal my conviction. If applicable, conditions for my request are on the back of this form. The affidavit of indigency and financial schedule on the back of this form is submitted to show my financial condition.

5-18-2012
Date

Kelvin Heath
Signature of defendant/juvenile

NOTE TO DEFENDANT/JUVENILE: After completing the request for appointment of attorney and the affidavit of indigency and financial schedule, keep one copy for yourself and return the other copy to the court.

RCVD & FILED

JUN 1 2012

JUDGE BUTH
17TH CIRCUIT COURT

MCR 6.425(F)

CC 265 (5/07) **NOTICE OF RIGHT TO APPELLATE REVIEW AND REQUEST FOR APPOINTMENT OF ATTORNEY**

| STATE OF MICHIGAN 17TH JUDICIAL CIRCUIT KENT COUNTY | JUDGMENT OF SENTENCE COMMITMENT TO DEPARTMENT OF CORRECTIONS | CASE NO. 11-11910-FH |
|---|---|---|

**ORI** MI - 410025J    Court address: Kent County Courthouse 180 Ottawa NW, Grand Rapids, MI 49503    Court telephone number 616-632-5480

**Police Report No.**

| THE PEOPLE OF THE STATE OF MICHIGAN | v | Defendant name, address, and telephone no. KELVIN WAYNE HEATH |
|---|---|---|

| | CTN/TCN 41 11 014406 99 | SID 1021182T | DOB 03/28/1961 |
|---|---|---|---|

| Prosecuting attorney's name Bar no. William A. Forsyth    P23770 | Defendant's attorney name Bar no. PUBLIC DEFENDER |
|---|---|

1. The defendant was found guilty on ___03/29/2012___ of the crime(s) stated below.
Date

| Count | CONVICTED BY Plea* | Court | Jury | DISMISSED BY* | CRIME | CHARGE CODE(S) MCL citation/PACC Code |
|---|---|---|---|---|---|---|
| 1 | | | G | | ROBBERY – UNARMED; SUPP 4 | 750.530; 769.12 |
| 3 | | | G | | FALSE PERSONATION OF PUBLIC OFFICER | 750.215 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

*For Plea: insert "G" for guilty plea; "NC" for nolo contendere; or "MI" for guilty but mentally ill. *For dismissal: insert "D" for dismissed by court or "NP" for dismissed by prosecutor/plaintiff

☐ 2. The conviction is reportable to the Secretary of State under MCL 257.625(21)(b). ___H300465866247___
☐ 3. HIV testing and sex offender registration is completed.    Defendant's driver's license number
☒ 4. The defendant has been fingerprinted according to MCL 28.243.
**IT IS ORDERED:**
☐ 5. Probation is revoked.
6. Participating in a special alternative incarceration unit is ☐ prohibited. ☐ permitted.
7. Defendant is sentenced to custody of the Michigan Department of Corrections. This sentence shall be executed immediately.

| Count | SENTENCE DATE | MINIMUM Years | Mos. | Days | MAXIMUM Years | Mos. | DATE SENTENCE BEGINS | JAIL CREDIT Mos. | Days | OTHER INFORMATION |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 05/16/2012 | 8 | | | 20 | | 11-29-11 | | | |
| 3 | 05/16/2012 | | | | | | RCV'D & FILED | | | Ct. 3 – TIME SERVED |
| | | | | | | | MAY 16 2012 | | | |
| | | | | | | | JUDGE BUTH CIRCUIT COURT | | | |

☐ 8. Sentence(s) to be served consecutively to (if this item is not checked, sentences run concurrent.)
☐ each other. ☒ case numbers ___11-11911-FH___
9. Defendant shall pay:

| State Minimum | Crime Victim | Restitution | Court Costs | Fine | Other Costs |
|---|---|---|---|---|---|
| $121.00 | $130.00 | $500.00 | $ | $ | $ |

The due date for payment is **Date of Sentence.** Fine, costs, and fees not paid within 56 days of the due date are subject to a 20% late penalty on the amount owed.
☐ 10. The concealed weapon board shall ☐ suspend for ___ days    ☐ permanently revoke the concealed weapon license, permit number ___ , issued by ___ County.
☐ 11. The defendant is subject to lifetime monitoring pursuant to MCL 780.520n.
☐ 12. Court recommendation:

___5-16-12___
Date

Judge HONORABLE GEORGE BUTH    Bar. no. P11479

I certify that this is a correct and complete abstract from the original court records. The sheriff shall, without needless delay, deliver defendant to the Michigan Department of Corrections at a place designated by the department.

(SEAL)    Deputy court clerk

MCL 765.15(2); MCL 769.1k; MCL 769.16a; MCL ...    80.766
MCR 6.427

CC 219b (3/10)  JUDGMENT OF SENTENCE, COMMITMENT TO DEPARTMENT OF CORRECTIONS

JRL2283.PG0825

Close

| | | | |
|---|---|---|---|
| | Prosecutor | BRAMBLE, KEVIN M > | Felony |

DC Case #11FY4668

Open

Defendant

State/DLN/MI Val.  H300465866247

Save

Full Name HEATH, KELVIN WAYNE  > S.S.364-78-48 N. 90  Address  EGELER REC & GUIDANCE #199603

D.O.B  03/28/1961  S.I.D.1021182T  3855 COOPER ST

Print

Gender  Male  Race Code  BLACK

Height  5'7"  Weight  175  City/ST/Zip  JACKSON  MI  49201  >

Address  1833 PRARIE PKWY APT G

City/ST/Zip  WYOMING  MI  49509  >

Primary Str.

| # | | | | | |
|---|---|---|---|---|---|
| 1 | Case Maintenance | Full Name DEFENDER, PUBLIC  > | | | Secndry Str. |
| 2 | Docket Entries | | | | |
| 3 | Parties | Charge(s) | | | 1 of 4 |
| 4 | No Notes | Charge On # | (to ) | Offense Tm | City/Twp/Vill. | County | Report Number |
| 5 | Ticklers | 1 | 11/29/2011 | | WYOMING | | WY11114062 |
| 6 | Costs | Charge ROBBERY - UNARMED  > | | | Officer Agency | WYOMING POLICE DEPARTMENT> ... |
| 7 | Events | | | | | |
| 8 | Case Disposition | 2 | 11/29/2011 | | WYOMING | | WY11114062 |
| 9 | File Request (Interface) | Charge UNLAWFUL IMPRISONMENT  > | | | Officer Agency | WYOMING POLICE DEPARTMENT> ... |

3  11/29/2011  WYOMING  WY11114062

Charge FALSE PERSONATION OF PUBLIC OFFICER  >  Officer Agency  WYOMING POLICE DEPARTMENT> ...

4  WY11114062

Charge HABITUAL OFFENDER - FOURTH OFFENSE NOTICE  >  Officer Agency  WYOMING POLICE DEPARTMENT> ...

Other Parties

| Party Type | Full Name | | 1 of 19 |
|---|---|---|---|
| COMPLAINING WITNESS | DURELL, OFFICER JONATHAN | > ... | |
| SUPPLEMENTAL WITNESS | AGENT, SW FINGERPRINT | > ... | |
| SUPPLEMENTAL WITNESS | AGENT, SW KENT CO CIRCUIT COURT | > ... | |
| VICTIM | ISAACSON, BARRY GORDON | > ... | |
| WITNESS | BARTONE, OFFICER ADAM | > ... | |
| WITNESS | DEBOER, OFFICER CHRISTOPHER | > ... | |
| WITNESS | ROOKS, OFFICER MATTHEW | > ... | |
| WITNESS | SILVIS, OFFICER RYAN | > ... | |
| WITNESS | LOPEZ, OFFICER JESSE | > ... | |
| WITNESS | GRIFFIN, ELEANOR MAY | > ... | |
| WITNESS | HEATH, JERRELL JAPPA | > ... | |
| WITNESS | JOHNSON, ANTHONY DERREK | > ... | |
| WITNESS | MOODY, DEON LORENZO | > ... | |
| WITNESS | FERGUSON, OFFICER DENNIS | > ... | |
| WITNESS | VERHAGE, OFFICER DJ | > ... | |
| WITNESS | JACOB, OFFICER ANTHONY | > ... | |
| WITNESS | HOUSTON, TERRY DEMONTAE | > ... | |
| WITNESS | SWIERCZ, OFFICER PHILIP | > ... | |

Case Comments  Case Attributes  ...

11_11910.FH

Filed 12/19/201

Status CLOSED                    IncmpF  Bound Over12/14/201
                                                        1

Close     Search Criteria     Search    Clear

%Open       11-11910-FH      PEOPLE vs. HEATH, KELVIN WAYNE

%Save       Docket Entry             >     Begin Date        >     SortDescending
               Images     All Dockets                End Date          >

%Print       Participant               >
               Display     Exclude Non Display Dockets
               Option

1 Add Record
2 Long Display
3 In Custody

4 Parties
5 Events
6 System
   Notification
7 Docket ID
   Display
8 View Docket
   Images for the
   Case
9 Reorder Dockets

10 Print Docket
11 File Request
    (Interface)

**Search Results**

| Docket Date | Reference | Description | Amt Owed/ Amt Dism/Credit | Amount Due |
|---|---|---|---|---|
| 5/24/2012 | | ORDER TO REMIT PRISONER FUNDS & POM($251) | | |
| 5/16/2012 | | RESTITUTION FOR: B. ISAACSON | 500.00 | 500.00 |
| 5/16/2012 | | CVR FELONY | 130.00 | 130.00 |
| 5/16/2012 | | STATE MINIMUM COSTS | 121.00 | 121.00 |
| 5/16/2012 | | WARRANT FOR REMOVAL OF PRISONER ISSUED | | |
| 5/16/2012 | 2283-825- | JUDGMENT OF SENTENCE(JUDGE BUTH)(MDOC-MIN. 8 YRS. & MAX. 20 YRS. COMM. 11-29-11 ON CT. #1, CREDIT TIME SERVED ON CT. #3, CONSEC. TO 11-11911-FH, $121 SMC, $130 CVR, $500 REST.) | | |
| 5/16/2012 | | SENTENCING INFORMATION REPORT | | |
| 5/16/2012 | | HELD; L.Rydahl, CSR 4078 The following event: SENTENCE DATE scheduled for 05/16/2012 at 2:00 pm has been resulted as follows: Result: HELD Judge: BUTH, HONORABLE GEORGE    Location: 17TH CIRCUIT COURT- COURTROOM #12A | | |
| 5/10/2012 | | ADJOURNED DUE TO DEFENSE COUNSEL'S TIME CONFLICT The following event: SENTENCE DATE scheduled for 05/09/2012 at 2:00 pm has been resulted as follows: Result: ADJOURNED DUE TO DEFENSE COUNSEL'S TIME CONFLICT Judge: BUTH, HONORABLE GEORGE    Location: 17TH CIRCUIT COURT- COURTROOM #12A | | |
| 5/9/2012 | | SCHEDULED Event: SENTENCE DATE Date: 05/16/2012    Time: 2:00 pm Judge: BUTH, HONORABLE GEORGE    Location: 17TH CIRCUIT COURT- COURTROOM #12A Result: HELD | | |
| 4/30/2012 | | SCHEDULED The following event: SENTENCE DATE scheduled for 05/02/2012 at 2:00 pm has been rescheduled as follows: Event: SENTENCE DATE Date: 05/09/2012    Time: 2:00 pm Judge: BUTH, HONORABLE GEORGE    Location: 17TH CIRCUIT COURT- COURTROOM #12A Result: ADJOURNED DUE TO DEFENSE COUNSEL'S TIME CONFLICT | | |
| 4/30/2012 | | ADJOURNED DUE TO DEFENSE COUNSEL'S TIME CONFLICT The following event: SENTENCE DATE scheduled for 05/02/2012 at 2:00 pm has been resulted as follows: | | |

Result: ADJOURNED DUE TO DEFENSE COUNSEL'S TIME
CONFLICT
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A

4/25/2012     SCHEDULED

The following event: SENTENCE DATE scheduled for
04/25/2012 at 2:00 pm has been rescheduled as
follows:

Event: SENTENCE DATE
Date: 05/02/2012     Time: 2:00 pm
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A

Result: ADJOURNED DUE TO DEFENSE COUNSEL'S TIME
CONFLICT

4/25/2012     ADJOURNED DUE TO OTHER REASONS
The following event: SENTENCE DATE scheduled for
04/25/2012 at 2:00 pm has been resulted as
follows:

Result: ADJOURNED DUE TO OTHER REASONS
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A

4/2/2012     HELD
The following event: JURY TRIAL - CRIMINAL
scheduled for 03/29/2012 at 9:00 am has been
resulted as follows:

Result: HELD - FINAL DAY OF TRIAL.
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A

3/29/2012     ORDER OF ACQUITTAL BY JURY ON CT. #2 ONLY

2269-1201-

3/29/2012     RECORD OF 2ND &  FINAL DAY OF JURY TRIAL(JUDGE
BUTH)(GUILTY: CT.#1; NOT GUILTY:CT.#2; GUILTY:
2269-530-     CT. #3)

3/29/2012     VERDICT(GUILTY: OF CT. 1 -  UNARM ROBB; NOT
GUILTY CT. #2; GUILTY: CT. #3 FALSE PERSONATION)

3/29/2012     JURY NOTES

3/29/2012     SCHEDULED
Event: SENTENCE DATE
Date: 04/25/2012     Time: 2:00 pm
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A

Result: ADJOURNED DUE TO OTHER REASONS

3/28/2012     TRANSCRIPT OF JURY TRIAL(EXCERPT OF
PROCEEDINGS-WITNESS BRIAN JAMES GRAY;
3-27-12)(REPORTED BY LESLIE RYDAHL #4078)(31 PGS
CONDENSED, 11 ACTUAL)

3/28/2012     TRANSCRIPT OF JURY TRIAL(EXCERPT OF
PROCEEDINGS-WITNESS KELVIN WAYNE
HEATH)(3-27-12)(REPORTED BY LESLIE RYDAHL
#4078)(33 PGS CONDENSED, 12 ACTUAL)

3/28/2012     ORDER GRANTING JURY -REQUESTED TRANSCRIPT

3/28/2012     JURY TRIAL - CRIMINAL
Event: JURY TRIAL - CRIMINAL
Date: 03/29/2012     Time: 9:00 am
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A

Result: HELD

3/27/2012     FINAL INSTRUCTIONS

3/27/2012     PRELIMINARY INSTRUCTIONS

3/27/2012     HELD-TO BE CONTINUED
The following event: JURY TRIAL - CRIMINAL
scheduled for 03/27/2012 at 8:30 am has been
resulted as follows:

Result: HELD - TO BE CONTINUED
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A

3/26/2012     SCHEDULED

The following event: JURY TRIAL - CRIMINAL
scheduled for 03/26/2012 at 8:30 am has been
rescheduled as follows:

Event: JURY TRIAL - CRIMINAL
Date: 03/27/2012    Time: 8:30 am
Judge: BUTH, HONORABLE GEORGE    Location: 17TH
CIRCUIT COURT- COURTROOM #12A

Result: HELD - TO BE CONTINUED

3/26/2012    ADJOURNED DUE TO OTHER REASONS
The following event: JURY TRIAL - CRIMINAL
scheduled for 03/26/2012 at 8:30 am has been
resulted as follows:

Result: ADJOURNED DUE TO OTHER REASONS
Judge: BUTH, HONORABLE GEORGE    Location: 17TH
CIRCUIT COURT- COURTROOM #12A

3/20/2012    NOTICE OF JURY TRIAL & POS

3/19/2012    SCHEDULED

The following event: JURY TRIAL - CRIMINAL
scheduled for 03/19/2012 at 8:30 am has been
rescheduled as follows:

Event: JURY TRIAL - CRIMINAL
Date: 03/26/2012    Time: 8:30 am
Judge: BUTH, HONORABLE GEORGE    Location: 17TH
CIRCUIT COURT- COURTROOM #12A

Result: ADJOURNED DUE TO OTHER REASONS

3/19/2012    ADJOURNED DUE TO OTHER REASONS
The following event: JURY TRIAL - CRIMINAL
scheduled for 03/19/2012 at 8:30 am has been
resulted as follows:

Result: ADJOURNED DUE TO OTHER REASONS
Judge: BUTH, HONORABLE GEORGE    Location: 17TH
CIRCUIT COURT- COURTROOM #12A

3/6/2012    NOTICE OF JURY TRIAL & POS(3-19-12)

3/6/2012    NOT HELD
The following event: MOTION TO OBJECT scheduled
for 03/06/2012 at 8:30 am has been resulted as
follows:

Result: NOT HELD
Judge: BUTH, HONORABLE GEORGE    Location: 17TH
CIRCUIT COURT- COURTROOM #12A

3/6/2012    SCHEDULED

The following event: JURY TRIAL - CRIMINAL
scheduled for 03/06/2012 at 8:30 am has been
rescheduled as follows:

Event: JURY TRIAL - CRIMINAL
Date: 03/19/2012    Time: 8:30 am
Judge: BUTH, HONORABLE GEORGE    Location: 17TH
CIRCUIT COURT- COURTROOM #12A

Result: ADJOURNED DUE TO OTHER REASONS

3/6/2012    ADJOURNED DUE TO OTHER REASONS; L. RYDAHL, CSR
4078
The following event: JURY TRIAL - CRIMINAL
scheduled for 03/06/2012 at 8:30 am has been
resulted as follows:

Result: ADJOURNED DUE TO OTHER REASONS
Judge: BUTH, HONORABLE GEORGE    Location: 17TH
CIRCUIT COURT- COURTROOM #12A

3/5/2012    SCHEDULED

The following event: MOTION TO OBJECT scheduled
for 03/05/2012 at 8:30 am has been rescheduled
as follows:

Event: MOTION TO OBJECT
Date: 03/06/2012    Time: 8:30 am
Judge: BUTH, HONORABLE GEORGE    Location: 17TH
CIRCUIT COURT- COURTROOM #12A

Result: NOT HELD

Result: HELD

Result: MOTION DENIED

3/5/2012     ADJOURNED DUE TO OTHER REASONS
The following event: MOTION TO OBJECT scheduled
for 03/05/2012 at 8:30 am has been resulted as
follows:

Result: ADJOURNED DUE TO OTHER REASONS
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A
3/5/2012     SCHEDULED

The following event: JURY TRIAL - CRIMINAL
scheduled for 03/05/2012 at 8:30 am has been
rescheduled as follows:

Event: JURY TRIAL - CRIMINAL
Date: 03/06/2012     Time: 8:30 am
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A

Result: ADJOURNED DUE TO OTHER REASONS
3/5/2012     ADJOURNED DUE TO OTHER REASONS
The following event: JURY TRIAL - CRIMINAL
scheduled for 03/05/2012 at 8:30 am has been
resulted as follows:

Result: ADJOURNED DUE TO OTHER REASONS
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A
2/22/2012     SCHEDULED
Event: MOTION TO OBJECT
Date: 03/05/2012     Time: 8:30 am
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A

Result: ADJOURNED DUE TO OTHER REASONS
2/22/2012     DEF'S OBJECTION TO THE CONSOLIDATION OF CASES
AND MEMORANDUM IN SUPPORT OF THE OBJECTION &
NOTICE OF HEARING (3/9/12)

2/21/2012     NOTICE OF JURY TRIAL & POS(3-5-12)

2/13/2012     SCHEDULED
Event: JURY TRIAL - CRIMINAL
Date: 03/05/2012     Time: 8:30 am
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A

Result: ADJOURNED DUE TO OTHER REASONS
2/13/2012     NO PLEA TAKEN SET FOR TRIAL
The following event: STATUS CONFERENCE scheduled
for 02/13/2012 at 2:00 pm has been resulted as
follows:

Result: NO PLEA TAKEN SET FOR TRIAL
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A
2/10/2012     ORDER DENYING MOTION TO REDUCE BOND

2/10/2012     HELD & DENIED/SIGNED; D. Jamba, CER 0786
The following event: MOTION TO REDUCE BOND
scheduled for 02/10/2012 at 1:30 pm has been
resulted as follows:

Result: HELD & DENIED/SIGNED & FILED
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A
1/26/2012     SCHEDULED
Event: MOTION TO REDUCE BOND
Date: 02/10/2012     Time: 1:30 pm
Judge: BUTH, HONORABLE GEORGE     Location: 17TH
CIRCUIT COURT- COURTROOM #12A

Result: HELD & DENIED/SIGNED & FILED
1/25/2012     PRELIMINARY EXAMINATION
TRANSCRIPT(12-14-11)(RECORDED BY LORI HINUEBER
#8269)(31 PGS)

1/25/2012     MOTION TO REDUCE BOND, NOTICE OF HEARING AND POS
(2/10/12)

1/10/2012     DEMAND AND ORDER FOR PRELIMINARY EXAMINATION
TRANSCRIPT

12/29/2011     PRE-TRIAL NOTICE LETTER

12/29/2011        REQUEST FOR DISCOVERY

12/29/2011        AMENDED INFORMATION

12/28/2011        REQUEST FOR DISCOVERY & POS

12/27/2011        STATUS CONFERENCE NOTICE TO APPEAR AND POS

12/27/2011        SCHEDULED
                  Event: STATUS CONFERENCE
                  Date: 02/13/2012    Time: 2:00 pm
                  Judge: BUTH, HONORABLE GEORGE    Location: 17TH
                  CIRCUIT COURT- COURTROOM #12A

                  Result: NO PLEA TAKEN SET FOR TRIAL
12/19/2011        DNA SAMPLE IDENTIFIED AS BEING ON FILE WITH MSP

12/19/2011        EXAM WAIVED, CRIMINAL PRE-TRIAL ORDER AND POS

12/19/2011        WAIVER OF CIRCUIT COURT ARRAIGNMENT ON
                  INFORMATION (NOT GUILTY)

12/19/2011        BOND SET ($25,000 C/S)

12/19/2011        RETURN OF THE DISTRICT COURT OF KENT COUNTY

C%lose

%Open

%Save

%Print

Search Criteria

11-11910-FH       PEOPLE  vs.  HEATH, KELVIN WAYNE

| Event Type | | > | Begin Date | > |
| Event Group | | > | End Date | > |
| Code | | | | |

Search Results

| | Event Type | Block Date | Start Time | End Time | Judge | Result Code |
|---|---|---|---|---|---|---|
| 1 Add Record | | | | | | |
| 2 Forms | MOTION TO REDUCE BOND | 02/10/2012 | 1:30 pm | 5:00 pm | BUTH, HONORABLE GEORGE | HELD & DENIED/SIGNED & FILED |
| 3 No Notes | STATUS CONFERENCE | 02/13/2012 | 2:00 pm | 5:00 pm | BUTH, HONORABLE GEORGE | NO PLEA TAKEN SET FOR TRIAL |
| 4 No Event Staff | JURY TRIAL - CRIMINAL | 03/05/2012 | 8:30 am | 12:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO OTHER REASONS |
| 5 No Event Notes | MOTION TO OBJECT | 03/05/2012 | 8:30 am | 12:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO OTHER REASONS |
| 6 Ticklers | JURY TRIAL - CRIMINAL | 03/06/2012 | 8:30 am | 5:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO OTHER REASONS |
| 7 No Evidence Track | MOTION TO OBJECT | 03/06/2012 | 8:30 am | 10:00 am | BUTH, HONORABLE GEORGE | MOTION DENIED |
| | JURY TRIAL - CRIMINAL | 03/19/2012 | 8:30 am | 12:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO OTHER REASONS |
| | JURY TRIAL - CRIMINAL | 03/26/2012 | 8:30 am | 12:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO OTHER REASONS |
| | JURY TRIAL - CRIMINAL | 03/27/2012 | 8:30 am | 5:00 pm | BUTH, HONORABLE GEORGE | HELD - TO BE CONTINUED |
| | JURY TRIAL - CRIMINAL | 03/29/2012 | 9:00 am | 5:00 pm | BUTH, HONORABLE GEORGE | HELD |
| | SENTENCE DATE | 04/25/2012 | 2:00 pm | 5:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO OTHER REASONS |
| | SENTENCE DATE | 05/02/2012 | 2:00 pm | 5:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO DEFENSE COUNSEL'S TIME CONFLICT |
| | SENTENCE DATE | 05/09/2012 | 2:00 pm | 5:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO DEFENSE COUNSEL'S TIME CONFLICT |
| | SENTENCE DATE | 05/16/2012 | 2:00 pm | 5:00 pm | BUTH, HONORABLE GEORGE | HELD |

Original - Court; 1st copy - Corrections; 2nd copy - Corrections (for return)
3rd copy - State Police CJIC; 4th copy - Defendant; 5th copy - Prosecutor

| STATE OF MICHIGAN 17TH JUDICIAL CIRCUIT KENT COUNTY | JUDGMENT OF SENTENCE COMMITMENT TO DEPARTMENT OF CORRECTIONS | CASE NO. 11-11911-FH |
|---|---|---|

| ORI MI - 410025J | Court address: Kent County Courthouse 180 Ottawa NW, Grand Rapids, MI 49503 | Court telephone number 616-632-5480 |
|---|---|---|

Police Report No.

| THE PEOPLE OF THE STATE OF MICHIGAN | v | Defendant name, address, and telephone no. KELVIN WAYNE HEATH |
|---|---|---|

| | | CTN/TCN 41 11 014632 99 | SID 1021182T | DOB 03/28/1961 |
|---|---|---|---|---|

| Prosecuting attorney's name William A. Forsyth | Bar no. P23770 | Defendant's attorney name PUBLIC DEFENDER | Bar no. |
|---|---|---|---|

1. The defendant was found guilty on ___03/29/2012___ of the crime(s) stated below.
Date

| Count | CONVICTED BY | | | DISMISSED BY* | CRIME | CHARGE CODE(S) MCL citation/PACC Code |
|---|---|---|---|---|---|---|
| | Plea* | Court | Jury | | | |
| 1 | | | G | | ROBBERY - UNARMED | 750.530 |
| 3 | | | G | | FALSE PERSONATION OF PUBLIC OFFICER | 750.215 |
| | | | | | | |
| | | | | | | |

*For Plea: insert "G" for guilty plea; "NC" for nolo contendere; or "MI" for guilty but mentally ill. *For dismissal: insert "D" for dismissed by court or "NP" for dismissed by prosecutor/plaintiff

☐ 2. The conviction is reportable to the Secretary of State under MCL 257.625(21)(b). ___H300465866247___
☐ 3. HIV testing and sex offender registration is completed.              Defendant's driver's license number
☒ 4. The defendant has been fingerprinted according to MCL 28.243.
IT IS ORDERED:
☐ 5. Probation is revoked
6. Participating in a special alternative incarceration unit is ☐ prohibited. ☐ permitted.
7. Defendant is sentenced to custody of the Michigan Department of Corrections. This sentence shall be executed immediately.

| Count | SENTENCE DATE | MINIMUM | | | MAXIMUM | | DATE SENTENCE BEGINS | JAIL CREDIT | | OTHER INFORMATION |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Years | Mos. | Days | Years | Mos. | | Mos. | Days | |
| 1 | 05/16/2012 | 8 | | | 20 | | 11-29- | | | |
| 3 | 05/16/2012 | | | | | | | | | CT. 3 – TIME SERVED |

RCVD & FILED
MAY 16 2012
JUDGE BUTH
17th...

☐ 8. Sentence(s) to be served consecutively to (if this item is not checked, the sentence is concurrent.)
    ☐ each other. ☒ case numbers ___11-11910-FH___
9. Defendant shall pay:

| State Minimum | Crime Victim | Restitution | Court Costs | Fine | Other Costs |
|---|---|---|---|---|---|
| $121.00 | $130.00 | $300.00 | $ | $ | $ |

The due date for payment is **Date of Sentence.** Fine, costs, and fees not paid within 56 days of the due date are subject to a 20% late penalty on the amount owed.
☐ 10. The concealed weapon board shall ☐ suspend for ___ days ☐ permanently revoke   the concealed weapon license, permit number ___, issued by ___ County.
☐ 11. The defendant is subject to lifetime monitoring pursuant to MCL 780.520n.
☐ 12. Court recommendation:

___5-16-12___
Date                                    Judge HONORABLE GEORGE BUTH   Bar. no. P11479

I certify that this is a correct and complete abstract from the original court records. The sheriff shall, without needless delay, deliver defendant to the Michigan Department of Corrections at a place designated by the department.

(SEAL)                                    Deputy court clerk

MCL 765.15(2); MCL 769.1k; MCL 769.16a; MCL 775.22, MCL 780.766
MCR 6.427
CC 219b (3/10) JUDGMENT OF SENTENCE, COMMITMENT TO DEPARTMENT OF CORRECTIONS

Close

Prosecutor BRAMBLE, KEVIN M   >   Felony               DC Case #11FY4743
r

%Open        Defendant
             State/DLN/MI    H300465866247
             Val.

%Save        Full Name HEATH, KELVIN WAYNE   >   S.S.364-78-48 Address   EGELER REC & GUIDANCE #199603
                                                 N. 90

             D.O.B    03/28/1961    S.I.D.1021182T              3855 COOPER ST
             .

%Print       Gender    Male          Race BLACK
                                      Code

             Height    5'7"          Weigh175              City/ST/Z JACKSON        MI  49201   >
                                     t                     ip
                                                           Address  1833 PRARIE PKWY APT G

             ,                                             City/ST/Z WYOMING       MI  49509   >
                                                           ip
                                                           Primary
                                                           Str.

1  Case          Full Name DEFENDER, PUBLIC      >         Secndry
   Maintenance                                             Str.
2  Docket Entries
3  Parties       Charge(s)                                                   1 of 4
4  No Notes      Charge On      (to   Offense Tm City/Twp/Vi   County        Report
                 #              )              ll.                            Number
5  Ticklers      1        11/14/20            WYOMING                         WY11109498
                          11
6  Costs         Charge ROBBERY - UNARMED      >  Officer   WYOMING POLICE DEPARTMENT> ...
                                                  Agency
7  Events
8  Case          2        11/14/20            WYOMING                         WY11109498
   Disposition            11
9  File Request  Charge UNLAWFUL IMPRISONMENT   >  Officer   WYOMING POLICE DEPARTMENT> ...
   (Interface)                                    Agency

                 3        11/14/20            WYOMING                         WY11109498
                          11
                 Charge FALSE PERSONATION OF PUBLIC  >  Officer   WYOMING POLICE DEPARTMENT> ...
                        OFFICER                         Agency

                 4                                                            WY11109498
                 Charge HABITUAL OFFENDER - FOURTH  >  Officer   WYOMING POLICE DEPARTMENT> ...
                        OFFENSE NOTICE                  Agency

                 Other Parties
                 Party Type              Full Name                    1 of 7
                 COMPLAINING WITNESS     SWIERCZ, OFFICER PHILIP        > ...
                 SUPPLEMENTAL WITNESS    AGENT, SW KENT CO CIRCUIT COURT  > ...
                 SUPPLEMENTAL WITNESS    AGENT, SW FINGERPRINT          > ...
                 VICTIM                  GRAY, BRIAN JAMES              > ...
                 WITNESS                 ISAACSON, BARRY                > ...
                 WITNESS                 AUNGST, OFFICER ROBERT         > ...

                 Case Comments                    Case Attributes                  ...

                                    11-11911-FH              Filed      12/19/201
                                                                        1
                            Status CLOSED       IncmpF  Bound Over 12/14/201
                                                                   1

Close     Search Criteria

Open

Save

Print

| | | | | | |
|---|---|---|---|---|---|
| 11-11911-FH | | PEOPLE vs. HEATH, KELVIN WAYNE | | | |
| Docket Entry | | > | Begin Date | > | SortDescending |
| Images | All Dockets | | End Date | > | |
| Participant | | > | | | |
| Display | Exclude Non Display Dockets | | | | |
| Option | | | | | |

1 Add Record
2 Long Display
3 In Custody

4 Parties
5 Events
6 System
  Notification
7 Docket ID
  Display
8 View Docket
  Images for the
  Case
9 Reorder Dockets

10 Print Docket
11 File Request
  (Interface)

**Search Results**

| Docket Date | Reference | Description | Amt Owed/ Amt Dism/Credit | Amount Due |
|---|---|---|---|---|
| 5/24/2012 | | ORDER TO REMIT PRISONER FUNDS & POM($251) | | |
| 5/16/2012 | | RESTITUTION FOR: B. GRAY | 300.00 | 300.00 |
| 5/16/2012 | | CVR FELONY | 130.00 | 130.00 |
| 5/16/2012 | | STATE MINIMUM COSTS | 121.00 | 121.00 |
| 5/16/2012 | | WARRANT FOR REMOVAL OF PRISONER ISSUED | | |
| 5/16/2012 2283-824- | | JUDGMENT OF SENTENCE(JUDGE BUTH)(MDOC-MIN. 8 YRS. & MAX. 20 YRS. ON CT. #1 COMM. 11-29-11, CREDIT TIME SERVED ON CT. #3, $121 SMC, $130 CVR, $300 REST.) | | |
| 5/16/2012 | | SENTENCING INFORMATION REPORT | | |
| 5/16/2012 | | HELD; L. Rydahl, CSR 4078 The following event: SENTENCE DATE scheduled for 05/16/2012 at 2:00 pm has been resulted as follows: | | |
| | | Result: HELD Judge: BUTH, HONORABLE GEORGE    Location: 17TH CIRCUIT COURT- COURTROOM #12A | | |
| 5/10/2012 | | ADJOURNED DUE TO DEFENSE COUNSEL'S TIME CONFLICT The following event: SENTENCE DATE scheduled for 05/09/2012 at 2:00 pm has been resulted as follows: | | |
| | | Result: ADJOURNED DUE TO DEFENSE COUNSEL'S TIME CONFLICT Judge: BUTH, HONORABLE GEORGE    Location: 17TH CIRCUIT COURT- COURTROOM #12A | | |
| 5/9/2012 | | JURY VERDICT FORM The following event: JURY TRIAL - CRIMINAL scheduled for 03/29/2012 at 9:00 am has been resulted as follows: | | |
| | | Result: JURY VERDICT; L. RYDAHL, CSR 4078 Judge: BUTH, HONORABLE GEORGE    Location: 17TH CIRCUIT COURT- COURTROOM #12A | | |
| 5/9/2012 | | SCHEDULED Event: SENTENCE DATE Date: 05/16/2012   Time: 2:00 pm Judge: BUTH, HONORABLE GEORGE    Location: 17TH CIRCUIT COURT- COURTROOM #12A | | |
| | | Result: HELD | | |
| 4/30/2012 | | SCHEDULED | | |
| | | The following event: SENTENCE DATE scheduled for 05/02/2012 at 2:00 pm has been rescheduled as follows: | | |
| | | Event: SENTENCE DATE Date: 05/09/2012   Time: 2:00 pm Judge: BUTH, HONORABLE GEORGE    Location: 17TH CIRCUIT COURT- COURTROOM #12A | | |

|  |  |
|---|---|
|  | Result: ADJOURNED DUE TO DEFENSE COUNSEL'S TIME CONFLICT |
| 4/30/2012 | ADJOURNED DUE TO DEFENSE COUNSEL'S TIME CONFLICT |
|  | The following event: SENTENCE DATE scheduled for 05/02/2012 at 2:00 pm has been resulted as follows: |
|  | Result: ADJOURNED DUE TO DEFENSE COUNSEL'S TIME CONFLICT |
|  | Judge: BUTH, HONORABLE GEORGE      Location: 17TH CIRCUIT COURT- COURTROOM #12A |
| 4/25/2012 | SCHEDULED |
|  | The following event: SENTENCE DATE scheduled for 04/25/2012 at 2:00 pm has been rescheduled as follows: |
|  | Event: SENTENCE DATE |
|  | Date: 05/02/2012    Time: 2:00 pm |
|  | Judge: BUTH, HONORABLE GEORGE      Location: 17TH CIRCUIT COURT- COURTROOM #12A |
|  | Result: ADJOURNED DUE TO DEFENSE COUNSEL'S TIME CONFLICT |
| 3/29/2012 | ORDER OF ACQUITTAL BY JURY ON CT. #2 ONLY (JUDGE BUTH) |
| 2269-1202- |  |
| 3/29/2012 | RECORD OF SECOND &  FINAL DAY OF JURY TRIAL (GUILTY: CT.#1; NOT GUILTY; CT. #2; GUILTY: CT. #3) (JUDGE BUTH) |
| 2269-529- |  |
| 3/29/2012 | VERDICT (GUILTY: OF CT. 1 -  UNARM ROBB; NOT GUILTY CT. #2; GUILTY: CT. #3 FALSE PERSONATION) |
| 3/29/2012 | JURY NOTES (SEE 11-11910-FH FOR DOC.) |
| 3/29/2012 | SCHEDULED |
|  | Event: SENTENCE DATE |
|  | Date: 04/25/2012    Time: 2:00 pm |
|  | Judge: BUTH, HONORABLE GEORGE      Location: 17TH CIRCUIT COURT- COURTROOM #12A |
|  | Result: HELD |
|  | Result: ADJOURNED DUE TO OTHER REASONS |
| 3/28/2012 | TRANSCRIPT OF JURY TRIAL (EXCERPT OF PROCEEDINGS-WITNESS BRIAN JAMES GRAY; 3-27-12) (REPORTED BY LESLIE RYDAHL #4078) (31 PGS CONDENSED, 11 ACTUAL) |
| 3/28/2012 | TRANSCRIPT OF JURY TRIAL (EXCERPT OF PROCEEDINGS-WITNESS KELVIN WAYNE HEATH) (3-27-12) (REPORTED BY LESLIE RYDAHL #4078) (33 PGS CONDENSED, 12 ACTUAL) |
| 3/28/2012 | ORDER GRANTING JURY -REQUESTED TRANSCRIPT |
| 3/28/2012 | JURY TRIAL - CRIMINAL |
|  | Event: JURY TRIAL - CRIMINAL |
|  | Date: 03/29/2012    Time: 9:00 am |
|  | Judge: BUTH, HONORABLE GEORGE      Location: 17TH CIRCUIT COURT- COURTROOM #12A |
|  | Result: JURY VERDICT |
| 3/27/2012 | FINAL INSTRUCTIONS (SEE 11-11910-FH FOR DOC.) |
| 3/27/2012 | PRELIMINARY INSTRUCTIONS (SEE 11-11910-FH FOR DOC.) |
| 3/27/2012 | HELD-TO BE CONTINUED |
|  | The following event: JURY TRIAL - CRIMINAL scheduled for 03/27/2012 at 8:30 am has been resulted as follows: |
|  | Result: HELD - TO BE CONTINUED |
|  | Judge: BUTH, HONORABLE GEORGE      Location: 17TH CIRCUIT COURT- COURTROOM #12A |
| 3/26/2012 | SCHEDULED |
|  | The following event: JURY TRIAL - CRIMINAL scheduled for 03/26/2012 at 8:30 am has been rescheduled as follows: |
|  | Event: JURY TRIAL - CRIMINAL |

Date: 03/27/2012      Time: 8:39 am
Judge: BUTH, HONORABLE GEORGE      Location: 17TH
CIRCUIT COURT- COURTROOM #12A

Result: HELD - TO BE CONTINUED

3/26/2012          ADJOURNED DUE TO OTHER REASONS
                   The following event: JURY TRIAL - CRIMINAL
                   scheduled for 03/26/2012 at 8:30 am has been
                   resulted as follows:

                   Result: ADJOURNED DUE TO OTHER REASONS
                   Judge: BUTH, HONORABLE GEORGE      Location: 17TH
                   CIRCUIT COURT- COURTROOM #12A
3/20/2012          NOTICE OF JURY TRIAL & POS


3/19/2012          SCHEDULED

                   The following event: JURY TRIAL - CRIMINAL
                   scheduled for 03/19/2012 at 8:30 am has been
                   rescheduled as follows:

                   Event: JURY TRIAL - CRIMINAL
                   Date: 03/26/2012      Time: 8:30 am
                   Judge: BUTH, HONORABLE GEORGE      Location: 17TH
                   CIRCUIT COURT- COURTROOM #12A

                   Result: ADJOURNED DUE TO OTHER REASONS
3/19/2012          ADJOURNED DUE TO OTHER REASONS
                   The following event: JURY TRIAL - CRIMINAL
                   scheduled for 03/19/2012 at 8:30 am has been
                   resulted as follows:

                   Result: ADJOURNED DUE TO OTHER REASONS
                   Judge: BUTH, HONORABLE GEORGE      Location: 17TH
                   CIRCUIT COURT- COURTROOM #12A
3/6/2012           NOTICE OF JURY TRIAL & POS(3-19-12)


3/6/2012           MOTION DENIED; L. RYDAHL, CSR 4078
                   The following event: MOTION TO OBJECT scheduled
                   for 03/06/2012 at 8:30 am has been resulted as
                   follows:

                   Result: MOTION DENIED
                   Judge: BUTH, HONORABLE GEORGE      Location: 17TH
                   CIRCUIT COURT- COURTROOM #12A
3/6/2012           SCHEDULED
                   Event: MOTION TO OBJECT
                   Date: 03/06/2012      Time: 8:30 am
                   Judge: BUTH, HONORABLE GEORGE      Location: 17TH
                   CIRCUIT COURT- COURTROOM #12A

                   Result: MOTION DENIED
3/6/2012           SCHEDULED

                   The following event: JURY TRIAL - CRIMINAL
                   scheduled for 03/06/2012 at 8:30 am has been
                   rescheduled as follows:

                   Event: JURY TRIAL - CRIMINAL
                   Date: 03/19/2012      Time: 8:30 am
                   Judge: BUTH, HONORABLE GEORGE      Location: 17TH
                   CIRCUIT COURT- COURTROOM #12A

                   Result: ADJOURNED DUE TO OTHER REASONS
3/6/2012           ADJOURNED DUE TO OTHER REASONS; L. Rydahl, CSR
                   4078
                   The following event: JURY TRIAL - CRIMINAL
                   scheduled for 03/06/2012 at 8:30 am has been
                   resulted as follows:

                   Result: ADJOURNED DUE TO OTHER REASONS
                   Judge: BUTH, HONORABLE GEORGE      Location: 17TH
                   CIRCUIT COURT- COURTROOM #12A
3/5/2012           SCHEDULED

                   The following event: JURY TRIAL - CRIMINAL
                   scheduled for 03/05/2012 at 8:30 am has been
                   rescheduled as follows:

                   Event: JURY TRIAL - CRIMINAL
                   Date: 03/06/2012      Time: 8:30 am
                   Judge: BUTH, HONORABLE GEORGE      Location: 17TH
                   CIRCUIT COURT- COURTROOM #12A

                   Result: ADJOURNED DUE TO OTHER REASONS
3/5/2012           ADJOURNED DUE TO OTHER REASONS
                   The following event: JURY TRIAL - CRIMINAL
                   scheduled for 03/05/2012 at 8:30 am has been

|  |  |
|---|---|
|  | Result: ADJOURNED DUE TO OTHER REASONS |
|  | Judge: BUTH, HONORABLE GEORGE    Location: 17TH |
|  | CIRCUIT COURT- COURTROOM #12A |
| 2/22/2012 | DEF'S OBJECTION TO THE CONSOLIDATION OF CASES |
|  | AND MEMORANDUM IN SUPPORT OF THE OBJECTION & |
|  | NOTICE OF HEARING (3/9/12) |
|  |  |
| 2/21/2012 | NOTICE OF JURY TRIAL & POS(3-5-12) |
|  |  |
| 2/13/2012 | SCHEDULED |
|  | Event: JURY TRIAL - CRIMINAL |
|  | Date: 03/05/2012    Time: 8:30 am |
|  | Judge: BUTH, HONORABLE GEORGE    Location: 17TH |
|  | CIRCUIT COURT- COURTROOM #12A |
|  | Result: ADJOURNED DUE TO OTHER REASONS |
| 2/13/2012 | NO PLEA TAKEN SET FOR TRIAL |
|  | The following event: STATUS CONFERENCE scheduled |
|  | for 02/13/2012 at 2:00 pm has been resulted as |
|  | follows: |
|  |  |
|  | Result: NO PLEA TAKEN SET FOR TRIAL |
|  | Judge: BUTH, HONORABLE GEORGE    Location: 17TH |
|  | CIRCUIT COURT- COURTROOM #12A |
| 2/10/2012 | ORDER DENYING MOTION TO REDUCE BOND |
|  |  |
| 2/10/2012 | HELD & DENIED/SIGNED |
|  | The following event: MOTION TO REDUCE BOND |
|  | scheduled for 02/10/2012 at 1:30 pm has been |
|  | resulted as follows: |
|  |  |
|  | Result: HELD & DENIED/SIGNED & FILED -- BOND |
|  | REVOKED ON THIS CASE |
|  | Judge: BUTH, HONORABLE GEORGE    Location: 17TH |
|  | CIRCUIT COURT- COURTROOM #12A |
| 1/26/2012 | SCHEDULED |
|  | Event: MOTION TO REDUCE BOND |
|  | Date: 02/10/2012    Time: 1:30 pm |
|  | Judge: BUTH, HONORABLE GEORGE    Location: 17TH |
|  | CIRCUIT COURT- COURTROOM #12A |
|  | Result: HELD & DENIED/SIGNED & FILED |
| 1/25/2012 | MOTION TO REDUCE BOND, NOTICE OF HEARING AND POS |
|  | (2/10/12) |
|  |  |
| 12/29/2011 | INFORMATION |
|  |  |
| 12/29/2011 | REQUEST FOR DISCOVERY |
|  |  |
| 12/29/2011 | PRE-TRIAL NOTICE LETTER |
|  |  |
| 12/28/2011 | REQUEST FOR DISCOVERY & POS |
|  |  |
| 12/27/2011 | STATUS CONFERENCE NOTICE TO APPEAR AND POS |
|  |  |
| 12/27/2011 | SCHEDULED |
|  | Event: STATUS CONFERENCE |
|  | Date: 02/13/2012    Time: 2:00 pm |
|  | Judge: BUTH, HONORABLE GEORGE    Location: 17TH |
|  | CIRCUIT COURT- COURTROOM #12A |
|  | Result: NO PLEA TAKEN SET FOR TRIAL |
| 12/19/2011 | DNA SAMPLE IDENTIFIED AS BEING ON FILE WITH MSP |
|  |  |
| 12/19/2011 | EXAM WAIVED, CRIMINAL PRE-TRIAL ORDER AND POS |
|  |  |
| 12/19/2011 | WAIVER OF CIRCUIT COURT ARRAIGNMENT ON |
|  | INFORMATION (NOT GUILTY) |
|  |  |
| 12/19/2011 | BOND SET ($50,000 C/S) |



12/19/2011          RETURN OF THE DISTRICT COURT OF KENT COUNTY

**Close**

**Open**

**Save**

**Print**

Search Criteria

| 11-11911-FH | PEOPLE vs. HEATH, KELVIN WAYNE |
| --- | --- |

| Event Type | > | Begin Date | > |
| Event Group | > | End Date | > |
| Code | | | |

Search Results

| | Event Type | Block Date | Start Time | End Time | Judge | Result Code |
| --- | --- | --- | --- | --- | --- | --- |
| 1 Add Record | | | | | | |
| 2 Forms | MOTION TO REDUCE BOND | 02/10/2012 | 1:30 pm | 5:00 pm | BUTH, HONORABLE GEORGE | HELD & DENIED/SIGNED & FILED |
| 3 No Notes | STATUS CONFERENCE | 02/13/2012 | 2:00 pm | 5:00 pm | BUTH, HONORABLE GEORGE | NO PLEA TAKEN SET FOR TRIAL |
| 4 No Event Staff | JURY TRIAL - CRIMINAL | 03/05/2012 | 8:30 am | 12:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO OTHER REASONS |
| 5 No Event Notes | JURY TRIAL - CRIMINAL | 03/06/2012 | 8:30 am | 5:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO OTHER REASONS |
| 6 Ticklers | MOTION TO OBJECT | 03/06/2012 | 8:30 am | 8:35 am | BUTH, HONORABLE GEORGE | MOTION DENIED |
| 7 No Evidence Track | JURY TRIAL - CRIMINAL | 03/19/2012 | 8:30 am | 12:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO OTHER REASONS |
| | JURY TRIAL - CRIMINAL | 03/26/2012 | 8:30 am | 12:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO OTHER REASONS |
| | JURY TRIAL - CRIMINAL | 03/27/2012 | 8:30 am | 5:00 pm | BUTH, HONORABLE GEORGE | HELD - TO BE CONTINUED |
| | JURY TRIAL - CRIMINAL | 03/29/2012 | 9:00 am | 5:00 pm | BUTH, HONORABLE GEORGE | JURY VERDICT |
| | SENTENCE DATE | 04/25/2012 | 2:00 pm | 5:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO OTHER REASONS |
| | SENTENCE DATE | 05/02/2012 | 2:00 pm | 5:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO DEFENSE COUNSEL'S TIME CONFLICT |
| | SENTENCE DATE | 05/09/2012 | 2:00 pm | 5:00 pm | BUTH, HONORABLE GEORGE | ADJOURNED DUE TO DEFENSE COUNSEL'S TIME CONFLICT |
| | SENTENCE DATE | 05/16/2012 | 2:00 pm | 5:00 pm | BUTH, HONORABLE GEORGE | HELD |

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Cover Sheet** | **CASE NO.** | | |
|---|---|---|---|---|
| KENT CIRCUIT COURT | | CIRCUIT: | Year: 11 Number: 011910 | Case Type: FH |
| | | COURT OF APPEALS: | 310897 | |

<div align="center">

*Filing Party*

</div>

| Filing Party Last Name or Business/Entity/Agency Name | Attorney Last Name |
|---|---|
| HEATH KELVIN WAYNE | Bremer |

| Filing Party First Name | M.I. | Attorney First Name | M.I. | P Number |
|---|---|---|---|---|
| | | Daniel | D. | 23554 |

Address (Street 1, Street 2, City, State, and ZIP Code)

Address(Street 1, Street 2, City, State, and ZIP Code)

1133 E. Bristol Road

Burton    MI    48529

Attorney Telephone Number

(810)232-6231

<div align="center">

*Summary of Items Filed*

</div>

| Type | Filename/Description | Filing Fee | Doc Fee | Total This Filing |
|---|---|---|---|---|
| Brief | Defendant-Appellant's Brief | $5.00 | ---- | $5.00 |
| Motion - Regular | Motion to Remand | $5.00 | ---- | $5.00 |
| Other | transcript of preliminary examination | $5.00 | ---- | $5.00 |
| PSIR | Presentence Report | $5.00 | ---- | $5.00 |
| | | **3% Service Fee:** | | $00.60 |
| | | **Total All Filings:** | | $20.60 |

Fee Substitute/Alternate Payment

Reason:

- [X] **Appointed Counsel**
- [ ] **Motion To Waive Fee**
- [ ] **Fees Waived in this Case**
- [ ] **MI InterAgency Transfer**
- [ ] **No Fee per MCR 7.203(F)(2)**

Filer Office Use Only:    30897

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin. As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

310897 - 300868

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

| Lower Court or Tribunal | **STATE OF MICHIGAN** **IN THE COURT OF APPEALS** **Proof of Service** | *CASE NO.* |
|---|---|---|

KENT CIRCUIT COURT

| | Year | Number | Case Type |
|---|---|---|---|
| CIRCUIT: | 11 | 011910 | FH |
| COURT OF APPEALS: | | 310897 | |

Case Name: ___PEOPLE OF MI V KELVIN WAYNE HEATH___

On __1/4/2013__ , one copy of the following documents:

| Brief | Defendant-Appellant's Brief |
|---|---|
| Motion - Regular | Motion to Remand |
| Other | transcript of preliminary examination |
| PSIR | Presentence Report |

was delivered to the persons listed below:

Date
__1/4/2013__

Signature
/s/Daniel D. Bremer

| Bar Number | Name | Delivery Method | Service Address |
|---|---|---|---|
| P- 23770 | Forsyth, William A. | Mail | 82 Ionia Avenue NW; Suite 450; Grand Rapids, MI 49503 |

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin. As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

Approved, Michigan Court of Appeals

| LOWER COURT | Electronically Filed | CASE NO. | |
|---|---|---|---|
| **Kent Circuit Court** | **BRIEF COVER PAGE** | Lower Court | 11-11910-FH 11-11911-FH |
| | | Court of Appeals | 310897 |

(Short title of case)

Case Name: **People v Kelvin Wayne Heath**

1. Brief Type (select one): ☑ APPELLANT(S)    ☐ APPELLEE(S)    ☐ REPLY
   ☐ CROSS-APPELLANT(S)    ☐ CROSS-APPELLEE(S)    ☐ AMICUS
   ☐ OTHER [identify]:

2. This brief is filed by or on behalf of [insert party name(s)]: **Defendant, Kelvin Wayne Heath**

3. ☐ This brief is in response to a brief filed on _____ by _____.

4. ORAL ARGUMENT: ☑ REQUESTED    ☐ NOT REQUESTED

5. ☐ THE APPEAL INVOLVES A RULING THAT A PROVISION OF THE CONSTITUTION, A STATUTE, RULE OR REGULATION, OR OTHER STATE GOVERNMENTAL ACTION IS INVALID.
   [See MCR 7.212(C)(1) to determine if this applies.]

6. As required by MCR 7.212(C), this brief contains, in the following order: [check applicable boxes to verify]

   ☑ Table of Contents [MCR 7.212(C)(2)]
   ☑ Index of Authorities [MCR 7.212(C)(3)]
   ☑ Jurisdictional Statement [MCR 7.212(C)(4)]
   ☑ Statement of Questions [MCR 7.212(C)(5)]
   ☑ Statement of Facts (with citation to the record) [MCR 7.212(C)(6)]
   ☑ Arguments (with applicable standard of review) [MCR 7.212(C)(7)]
   ☑ Relief Requested [MCR 7.212(C)(9)]
   ☑ Signature [MCR 7.212(C)(9)]

7. This brief is signed by [type name]: /s/ **Daniel D. Bremer**

   Signing Attorney's Bar No. [if any]: **P-23554**

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

## TABLE OF CONTENTS

Index of Authorities..................................................................................................i

Jurisdictional Statement........................................................................................iv

Statement of Questions Presented for Review.....................................................iv

Statement of Applicable Standards of Review......................................................iv

Statement of Facts..................................................................................................1

Argument

   I.   THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE THE PRE-
      LIMINARY EXAMINATION TESTIMONY OF BARRY ISAACSON BECAUSE
      THE PROSECUTOR FAILED TO SHOW DUE DILIGENCE IN ATTEMPTING
      TO PRODUCED THIS WITNESS..............................................................8

  II.  THE TRIAL COURT ERRED IN SCORING OV 10 AND OV 19 AND RESEN-
      TENCING IS REQUIRED BECAUSE THE RECOMMENDED MINIMUM
      SENTENCE RANGE WAS AFFECTED.....................................................13

Relief Requested....................................................................................................17

## INDEX OF AUTHORITIES

### Cases

*Barber v Page*, 390 US 719; 88 S Ct 1318; 20 L Ed 2d 255 (1968)..............................8

*Lisenba v California*, 314 US 219; 62 S Ct 280; 86 L Ed 166 (1941).........................9

*People v Adams*, 430 Mich 679; 425 NW2d 437(1988).............................................16

*People v Babcock*, 469 Mich 247; 666 NW2d 231 (2003)...........................................8

*People v Baiz*, unpublished opinion per curiam of the Court of Appeals, issued January 9, 2007
  (Docket No. 262912)...............................................................................................15

*People v Barbee*, 470 Mich 384; 681 NW2d 348 (2004).........................................15

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

**Cases**

(Continued)

*People v Bean*, 457 Mich 677; 580 NW2d 390 (1998)................................................8, 10, 11

*People v Cannon*, 481 Mich 152; 749 NW2d 257 (2008)......................................................14, 15

*People v Ewing*, 435 Mich 443; 458 NW2d 880 (1990)............................................................13

*People v Francisco*, 474 Mich 82; 711 NW2d 44 (2006)..................................................13, 17

*People v Howay*, 222 Mich App 104; 564 NW2d 72 (1997)..................................................11

*People v Howay*, 455 Mich 865; 567 NW2d 251 (1997).........................................................12

*People v Huston*, 489 Mich 451; 802 NW2d 261 (2011).................................................14, 15

*People v James*, 192 Mich App 568; 481 NW2d 715 (1992)................................................10

*People v Jenkins*, 244 Mich App 1; 624 NW2d 457 (2000).................................................15

*People v Katt*, 468 Mich 272; 662 NW2d 12 (2003)..............................................................8

*People v Lechleitner*, 291 Mich App 56; 804 NW2d 345 (2010).......................................13

*People v Malkowski*, 385 Mich 244; 188 NW2d 559 (1971)..............................................13

*People v Morson*, 471 Mich 248; 685 NW2d 203 (2004)....................................................13

*People v Steele*, 283 Mich App 472; 769 NW2d 256 (2009).............................................13

*People v Unger*,  278 Mich App 210; 749 NW2d 272 (2008).............................................8

*People v Walker*, 428 Mich 261; 407 NW2d 367 (1987).....................................................13

*People v Wiggins*, 289 Mich App 126; 795 NW2d 232 (2010)...........................................13

*People v Williams*, 483 Mich 226; 769 NW2d 605 (2009).................................................13

*Pointer v Texas*, 380 US 400; 85 S Ct 1065; 13 L Ed 2d 923 (1965)..............................8

*Townsend v Burke*, 334 US 736; 68 S Ct 1252; 92 L Ed 2d 1690 (1948)....................13

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

## <u>United States and Michigan Constitutions</u>

Const 1963, art1, § 20. ...................................................................................8

US Const, Am VI ..........................................................................................8

US Const, Am XIV .........................................................................................8

## <u>Michigan Rules of Evidence</u>

MRE 804(a)(5)..............................................................................................10

MRE 804(b)(1).............................................................................................10

## <u>Michigan Sentencing Guidelines Manual</u><br><u>2011 Edition</u>

OV 10............................................................................................14, 15, 16

OV 19............................................................................................15, 16

## <u>Statutes</u>

725 ILCS 220/1 – 220/5.................................................................................11

MCL 750.215................................................................................................1

MCL 767.91 – 95..........................................................................................11

MCL 768.26..................................................................................................9

MCL 769.12..................................................................................................1

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

## JURISDICTIONAL STATEMENT

The Court of Appeals has jurisdiction under MCL 600.308 and MCL 600.309 and MCR 7.302(A)(1)(b).  This is an appeal by right from a final judgment of conviction that occurred on May 16, 2012.  Defendant filed a timely request for appointment of counsel and declaration of indigency on June 1, 2012, and a timely claim of appeal was filed within 42 days of the judgment of conviction, pursuant to MCR 6.425(F)(1)(b) and MCR 7.203(A)(1) by means of an order appointing counsel on or about June 19, 2012.

## STATEMENT OF QUESTIONS PRESENTED FOR REVIEW

1.  Did the trial court err in admitting into evidence the preliminary examination testimony of Barry Isaacson because the prosecutor failed to show due diligence in attempting to produce this witness?

Defendant-Appellant would answer "yes."

The trial court would answer "no."

2.  Did the trial court err in scoring OV 10 and OV 19 and is resentencing required because the recommended minimum sentence range was affected?

Defendant-Appellant would answer "yes."

The trial court would answer "no."

## STATEMENT OF APPLICABLE STANDARDS OF REVIEW

The applicable standards are set forth in the argument portion of this brief.

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

## STATEMENT OF FACTS

This case is on appeal from the convictions of the Defendant, Kelvin Wayne Heath, in two cases that were consolidated for trial and appeal, File No. 11-11910-FH and File No. 11-11911-FH.  In each case Mr. Heath was convicted of two counts, unarmed robbery, MCL 750.530, and impersonating a police officer, MCL 750.215.  Mr. Heath was also sentenced in each case as an habitual offender, fourth offense, MCL 769.12.  Mr. Heath was convicted of these offenses as a result of a jury trial that took place in the Kent County Circuit Court on March 27, and March 29, 2012.  The jury acquitted Mr. Heath of unlawful imprisonment in each case.

On May 16, 2012, the trial court sentenced Mr. Heath to concurrent terms in each case of 8 years to 20 years for unarmed robbery, and 148 days in jail, with credit for 148 days, in each for impersonating a police officer.

### Trial

Brian Gray said that on November 14, 2011 he responded to an ad on a website called www.backpage.com that offered massages.  (tr., Vol. 1, 103).  He called the phone number provided and received back a text message.  This was supposedly from a female from Northern Michigan.  (tr., Vol. 1, 103-104).  Through sending text messages back and forth he agreed to meet the female at Apartment D-1 at the Swiss Valley Apartments in Wyoming.  (tr., Vol. 1, 104).

When Mr. Gray walked into the building a man whom he later identified as Kelvin Heath approached him and said that there was a sting operation.  (tr., Vol. 1, 105).  The man wore a long sleeved black t-shirt with some yellow lettering on it.  (tr., Vol. 1, 125; 127).  The man said that there was a rapist in the area and asked Mr. Gray for his wallet.  The man said that he was a police officer and patted Mr. Gray down.  He told Mr. Gray that he did not fit the description of

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

the rapist and that he was free to go. (tr., Vol. 1, 105; 113). When Mr. Gray got back to his car he looked through his wallet and noticed that his money, $300, was missing. (tr., Vol. 1, 106).

Later that night and the next morning Mr. Gray received voicemail messages from the phone number in the ad. The male voice in the message said that the police had his license number and that he should turn himself in at the police department. (tr., Vol. 1, 106-107). He then contacted the police. He did not at first tell the police why he was at the apartment complex because he was embarrassed, but he did later. (tr., Vol. 1, 107). He described the man to a sketch artist who drew the sketch on a computer screen. (tr., Vol. 1, 107; 122-123). A few weeks Mr. Gray later attended a physical lineup. He picked Mr. Heath from the lineup and identified him as the person whom he had encountered at the apartment complex. (tr., Vol. 1, 107; 113).

The testimony of Barry Isaacson from a preliminary examination was read into the record. The only explanation offered for his absence was that Mr. Isaacson lived in Illinois. (tr., Vol. 1, 129-130).

Barry Isaacson said that he lived in Illinois. He was in Grand Rapids on November 29, 2011 for business. The day before he came to Grand Rapids he responded to an ad on www.backpage.com for an adult service. (tr., PE, 6). The telephone number in the ad was 616-477-1333. (tr., PE, 16). A girl answered the phone and said that the fee would be $150. She told Mr. Isaacson to text her when he came to Grand Rapids. (tr., PE, 10). He was given a different number to text when he arrived in Grand Rapids. He was directed by a text message to the Swiss Valley Apartments complex in Wyoming and given a building and unit number. He went there at about 12:00 p.m. to 1:00 p.m. after he concluded his business. (tr., PE, 6-7).

The unit was on the lower level of the building, 1-D, toward the back of the building. (tr., PE, 7). Mr. Isaacson walked into the building and knocked on the door of the apartment. At this point a man came up to him from the back door of the building and said that he was a police

officer.  He wore a Wyoming Police t-shirt.  (tr., PE, 8).  It was a yellow t-shirt with blue or black

lettering on the front over a light blue long sleeved shirt.  (tr., PE, 18-19).  The man shoved Mr.

Isaacson against the wall and said "sting operation."  He asked Mr. Isaacson if he had any

weapons or sharp objects in his pockets.  The man took Mr. Isaacson's wallet and the cash that

was attached to it.  Mr. Isaacson asked for his identification.  The man called someone on a cell

phone and said "He's not 5'8" or Hispanic.  Bring the girl down."  (tr., PE, 8).

The man told Mr. Isaacson that he would be used to identify someone who had roughed

someone up.  As the man was holding Mr. Isaacson's money, about $475 to $525 in cash, Mr.

Isaacson asked for his identification.  (tr., PE, 8; 25).  The man said "wait right here" and walked

out of the building.  (tr., PE, 9).

Mr. Isaacson followed the man outside and got into his car.  He found the man in the

parking lot and asked for his money.  As the man drove away, Mr. Isaacson called him on the

number that he had used for texting.  (tr., PE, 9; 21).  The man called back and said that he would

bring the girl down to identify him.  Mr. Isaacson told him to return his money or he would call

the police.  Mr. Isaacson was able to take a photograph of the man as he was parked next to the

man and he remembered part of his license number.  (tr., PE, 9; 14).  The man drove a black four-

door car with no front license plate.  (tr., PE, 14).

Mr. Isaacson identified Kelvin Heath as the man whom he had encountered.  (tr., PE, 19).

Donald VerHage, a Wyoming police officer, said that on November 29, 2011 he was

dispatched to the Swiss Valley Apartments.  He met Barry Isaacson there.  Mr. Isaacson told

Officer VerHage what had happened and that man who had robbed him drove a black four-door

car.  He said that the first three letters of the license plate were BDR.  (tr., Vol. 1, 134; 136).  Mr.

Isaacson showed Officer VerHage a photograph of the man who robbed him with his cell phone.

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

(tr., Vol. 1, 138-139).  Officer VerHage had Mr. Isaacson e-mail the photograph to Detective Philip Swiercz.  (tr., Vol. 1, 139).

Later Detective Swiercz provided Officer VerHage with the name Kelvin Heath and directed him to Apartment G at 1833 Prairie Parkway.  In front of this apartment was a black four-door Mercury with a license plate bearing the letters BDR.  (tr., Vol. 1, 135-137).

Officer VerHage went to the front door of the apartment and Officer * Ferguson went to the back door.  Officer VerHage called for backup units.  Hearing commotion at the back door, Officer VerHage went there and saw Officer Ferguson attempting to handcuff Kelvin Heath.  (tr., Vol. 1, 137-138).  There were four or five other people going in and out of the back door whom various officers attempted to detain.  (tr., Vol. 1, 138).

Philip Swiercz, a Wyoming detective, had been assigned the investigation of the Brian Gray incident.  (tr., Vol. 1, 141).  On November 29, 2011, Detective Swiercz heard by radio traffic that Officer VerHage was sent to the Swiss Valley Apartments regarding a robbery.  He then called Officer VerHage and told him that he was investigating a similar incident from the same location.  (tr., Vol. 1, 142).  Officer VerHage called him later and provided a phone number for the suspect, 616-477-1333.  He was then able to get the name of owner of the telephone number, Kelvin Heath.  (tr., Vol. 1, 143).  When Detective received the photograph of the alleged robber, he printed it out and compared it to a Secretary of State photograph and jail photograph. (tr., Vol. 1, 144).

Detective Swiercz went to 1833 Prairie Parkway.  At this address Eleanor Griffin, who said that she was Kelvin Heath's mother, let him in.  Detective Swiercz took a light blue t-shirt that was similar to the t-shirt worn by the man in the photograph.  (tr., Vol. 1, 144-145).

In the parking lot Detective Swiercz was told by Officer Dennis Ferguson that he had read Miranda rights to Mr. Heath.  (tr., Vol. 1, 146).  Detective Swiercz told Mr. Heath, who was

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

-4-

in Officer Ferguson's cruiser, that he was under arrest for robbery and impersonating a police officer.  He asked Mr. Heath why he was at the Swiss Valley Apartments.  Mr. Heath said that he was just driving through.  An unknown male told Mr. Heath to "f*** off."  (tr., Vol. 1, 147; 153).  Mr. Heath said that he did drive the Mercury but that he did not know anything about the blue t-shirt from his mother's apartment.  (tr., Vol. 1, 147-148).  He did not know why someone had taken his picture and had his telephone number.  (tr., Vol. 1, 148).  Detective Swiercz asked Mr. Heath about Brian Gray and Mr. Heath denied having any contact with him.  (tr., Vol. 1, 150).

Dennis Ferguson, a Wyoming police officer, went to the back door of the apartment building at 1833 Prairie Parkway on November 29, 2011.  (tr., Vol. 1, 157-158).  He saw a person resembling the person in the photograph on Mr. Isaacson's telephone leaving through a sliding glass door.  (tr., Vol. 1, 158).  He placed person, identified as Kelvin Heath, in handcuffs and emptied out the man's pockets.  (tr., Vol. 1, 159).  In the left front pocket was a white and silver Boost Mobile Qualcomm cell phone, a black cell phone and a set of keys.  In the right front pocket were lottery tickets, $497 in cash, a Michigan ID card and other cards.  (tr., Vol. 1, 159-160).  The white and silver cell phone was identical to the one shown in the photograph on Mr. Isaacson's cell phone and had Mr. Isaacson's telephone number in it.  (tr., Vol. 1, 161).

Officer Ferguson read Miranda rights to Mr. Heath.  Mr. Heath said that he had pulled into the parking lot of the Swiss Valley Apartments to turn around and went back out.  He first denied encountering anyone in the parking lot.  (tr., Vol. 1, 162).  He said that the two cell phones were his and first denied that anyone else had access to them.  (tr., Vol. 1, 163).  He later said that a friend named Sheila was with him at about 1:30 p.m. and might have used one of his phones.  He did not say where she came from or where she went.  (tr., Vol. 1, 163).

Later Mr. Heath said that when he was turning around in the parking lot a white or Hispanic man had yelled "mother f*****" something at him but that he did not get out of his car.

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

(tr., Vol. 1, 164). Mr. Heath said that Sheila must have called Mr. Isaacson's number. He did not know how Sheila would have had the number. (tr., Vol. 1, 165).

Kelvin Heath said that he was born on March 28, 1961. He resided at 1833 Prairie Parkway with his sister and her son. His mother did not live there but was at this location on November 29, 2011 because she was sick. (tr., Vol. 1, 177). The gray and white cell phone that was found on him was his. The black cell phone belonged to Kelly Carpenter, who also went by the name Sheila. (tr., Vol. 1, 178).

On November 29 Mr. Heath gave Sheila a ride and dropped her off at her car, a black Honda. (tr., Vol. 1, 178). Later that day, at about 2:00 p.m. she contacted Mr. Heath and said that she was having problems with one of her clients, Barry Isaacson. Sheila was a call girl. She charged $200 per hour. Mr. Isaacson had ejaculated before his hour was up and was dissatisfied. He was acting in a belligerent way so Sheila asked Mr. Heath to pick her up. (tr., Vol. 1, 179). Mr. Isaacson said that he did not get his full hour. (tr., Vol. 1, 189). Sheila told Mr. Heath where to pick her up. (tr., Vol. 1, 180).

Mr. Heath drove through the parking lot and saw a man whom he thought might be asking for directions. Mr. Heath rolled down his window and the man said "MF" something and then "You guys" something. (tr., Vol. 1, 180). Mr. Heath did not see Sheila. He was arrested before he saw her again. (tr., Vol. 1, 181).

Mr. Heath could not remember what he was doing on November 14. He would have had no reason to be in the Swiss Valley Apartments complex. (tr., Vol. 1, 181-182). He never met Brian Gray. (tr., Vol. 1, 182). He did not know whether Mr. Gray was one of Sheila's clients. (tr., Vol. 1, 182).

Mr. Isaacson's telephone number was on Mr. Heath's telephone because Sheila had used Mr. Heath's telephone to contact Mr. Isaacson. Her phone was dead. (tr., Vol. 1, 182). Sheila

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

had used Mr. Heath's phone at about 10:30 a.m. to 11:00 a.m., before he picked up his daughter and her cousin. (tr., Vol. 1, 183).

Mr. Heath had picked up Sheila that morning at about 9:30 a.m. in the parking lot at 1833 Prairie Parkway where she had parked her black Honda. She had several call girl appointments that morning. (tr., Vol. 1, 185). Mr. Heath returned home from picking up his daughter at about 12:45 p.m. to 1:00 p.m. Sheila returned at about 1:10 p.m. (tr., Vol. 1, 188).

Later that day Mr. Heath picked up Sheila again and dropped her off at the Swiss Valley Apartments complex. He picked her up at a parking lot across the street from the complex. (tr., Vol. 1, 183-184).

Mr. Heath said that he was an associate of Sheila who, along with other people, received part of her money. (tr., Vol. 1, 192-193). He said that the money found on him when he was arrested was money that he had won at a casino the previous night. (tr., Vol. 1, 198).

Detective Swiercz said that he did a secondary interview of Barry Isaacson after Officer VerHage had interviewed at the scene. He did the secondary interview by telephone because Mr. Isaacson lived in Illinois. (tr., Vol. 2, 17). Mr. Isaacson did not at first tell Detective Swiercz that he had engaged the services of a call girl, but he did later when Detective Swiercz pressed him on this issue. (tr., Vol. 2, 18). When asked why Mr. Isaacson did not appear for trial, Detective Swiercz knew from his discussion with Mr. Isaacson that he was "a high-end businessman and very busy." (tr., Vol. 2, 19). Mr. Isaacson had said to Detective Swiercz, "I already gave you my sworn testimony under oath, and if I can make it, I'll make it." (tr., Vol. 2, 19). Mr. Isaacson had been subpoenaed for trial by mail. (tr., Vol. 2, 19). Someone in the victim/witness office told Detective Swiercz that Mr. Isaacson couldn't make it to the trial. (tr., Vol. 2, 20).

Detective Swiercz had no experience with securing witnesses through material witness warrants. (tr., Vol. 2, 20-21). He had no information that the defense had anything to do with Mr. Isaacson's non-appearance. (tr., Vol. 2, 21).

Officer VerHage said that Mr. Isaacson told him that he was missing approximately $470. He had three $100 bills in the $470, and the rest were twenties, tens and fives. (tr., Vol. 2, 26).

## ARGUMENT

I. THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE THE PRELIMINARY EXAMINATION TESTIMONY OF BARRY ISAACSON BECAUSE THE PROSECUTOR FAILED TO SHOW DUE DILIGENCE IN ATTEMPTING TO PRODUCE THIS WITNESS.

**Standard of Review**: Preserved evidentiary rulings are reviewed for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). Preliminary questions of law relating to evidentiary issues such as whether a rule of evidence or statute precludes the admission of the evidence are reviewed de novo. *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). A trial court's determination as to whether a witness is unavailable such that the witness' prior recorded testimony is admissible is reviewed for abuse of discretion. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Criminal defendants have the right to confront the witnesses against them. US Const, Am VI, XIV; Const 1963, art1, § 20. Denial of the right of cross examination can be a denial of due process as guaranteed by the Fourteenth Amendment to the United States Constitution. *Pointer v Texas*, 380 US 400, 405; 85 S Ct 1065; 13 L Ed 2d 923 (1965). *Barber v Page*, 390 US 719, 724-725; 88 S Ct 1318; 20 L Ed 2d 255 (1968) holds that a witness is not unavailable for the

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

purposes of a criminal defendant's right of confrontation unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial.  Criminal defendants are guaranteed due process of law.  *Lisenba v California*, 314 US 219, 236; 62 S Ct 280; 86 L Ed 166 (1941).

The complaining witness in File No. 11-11910-FH, Barry Isaacson, did not appear for trial and his preliminary examination testimony was read into the record in lieu of his appearance.  There was no explanation for his non-appearance except that he lived in Illinois (tr., 1, 129-130):

> THE COURT:  You can be seated, ladies and gentlemen of the jury.  Correct me if I'm wrong here, Mr. Bramble [prosecutor], but you propose to read in the sworn testimony taken at a previous proceeding of the alleged victim in the other case, Mr. Isaacson?
>
> MR. BRAMBLE:  Yes, your Honor.
>
> THE COURT:  It's my understanding he's a resident of the State of Illinois and he's just simply not here today.
>
> MR. BRAMBLE:  Correct, your Honor.
>
> THE COURT:  All right.  I'm going to allow, ladies and gentlemen of the jury, his sworn testimony to be read in.

The Defendant moved for a mistrial at the conclusion of the prosecutor's case, on the ground that the prosecutor had not shown due diligence in securing the presence of Mr. Isaacson. (tr., Vol. 1, 169-170).  The prosecutor said that Mr. Isaacson was "less than cooperative" but that he did receive a subpoena.  (tr., Vol. 1, 170-171).  Mr. Isaacson had been called "numerous" times.  He called the victim advocate in the prosecutor's office and said that he would not appear. (tr., Vol. 1, 171).

MCL 768.26 allows the prosecutor to use testimony taken at an examination, preliminary hearing, or at a former trial of the case, or taken by deposition at the instance of the defendant whenever the witness giving such testimony can not, for any reason, be produced at the trial, or

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

whenever the witness has, since giving such testimony, become insane or otherwise mentally incapacitated to testify.

MRE 804(b)(1) allows the use of prior recorded testimony of an unavailable witness as an exception to the hearsay rule under certain conditions:

> Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

MRE 804(a)(5) says that a witness is unavailable for purposes of the hearsay exception for prior recorded testimony when the witness:

> is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision [MRE 804] (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means, and in a criminal case, due diligence is shown.

The test for whether a witness is "unavailable" as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial. The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it. *People v Bean*, supra, 457 Mich 677, 684.  See also *People v James*, 192 Mich App 568, 571-573; 481 NW2d 715 (1992).  In the latter case the Court of Appeals said that the prosecutor had not shown due diligence where the prosecutor mailed a subpoena to the witness by certified mail three weeks before the trial and then tried to located him on the first day of the trial.

In *People v Bean*, the police began looking for the witness in question, Pryor, twelve days before the trial.  The Supreme Court held that the prosecutor had not shown due diligence in

-10-

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

locating Mr. Pryor and gave a number of reasons for its decision [*People v Bean*, supra, 457 Mich 677, 687-688]:

> For instance, although the police tried to telephone Mr. Pryor's grandmother, they never went to her address after learning that her phone was disconnected. Neither did they inquire with regard to her whereabouts, after learning that Mr. Pryor and his mother had moved. The police had a telephone number in Detroit for Mr. Pryor's mother, but never sought the assistance of the telephone company in matching the number to an address; neither did they ask the phone company for access to information provided by Mr. Pryor's mother or grandmother at the time they obtained telephone service. No contacts of any kind were attempted with police departments or other agencies in the Washington D.C. area. The police never checked with the Postal Service to see whether change-of-address forms had been filed. The police did not check with the Michigan Department of Corrections to see whether Mr. Pryor was incarcerated there, and the police did not contact the Department of Social Services (Family Independence Agency) to learn whether there was a current address for receiving public assistance benefits.

There is a uniform act that is used to secure the presence of out-of-state witnesses, MCL 767.91 – 95, and known as the "Uniform Act to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings." This act is also effective in Illinois, 725 ILCS 220/1 – 220/5. Under that act, a Michigan prosecutor can seek to have an out-of-state witness appear before a judge in the other state, who may or may not hold the witness in custody if necessary.

In a slightly different context, *People v Howay*, 222 Mich App 104, 109; 564 NW2d 72 (1997) holds that a prosecutor has not exercised due diligence in securing the presence of an endorsed out-of-state witness if the prosecutor has not either used the uniform act or taken other reasonable measures to secure the presence of the witness. In that case, the prosecutor had mailed a subpoena to an out-of-state witness but had not further contact with him. There is no reason that "due diligence" would not have the same meaning in the context of showing the unavailability of a witness as in the present case. The Supreme Court has directed that this case

shall have no precedential force or effect, but it did not overrule it.  *People v Howay*, 455 Mich 865; 567 NW2d 251 (1997).

Mr. Isaacson was in fact under no legal compulsion to attend the trial since the uniform act had not been used.  Whether the subpoena was mailed to him or served personally, the Kent County Circuit Court had no jurisdiction to compel his presence.  The prosecutor was well aware that Mr. Isaacson was "less than cooperative" because he was a married man from Illinois seeking at the minimum a "massage" in Kent County.  The record does not show when the subpoena was given to Mr. Isaacson, whether it was mailed or personally served, or how many times he was called.  The record also does not anywhere, including Mr. Isaacson's preliminary examination testimony, disclose where in Illinois he lived, but it is obvious that the prosecutor had an address and telephone for him.

It appears in fact, that the prosecutor expected that Mr. Isaacson would not appear.  Since both cases were joined for trial, over the Defendant's objection, the absence of Mr. Isaacson affected not only the case in which he was the complainant, but the case in which Mr. Gray was the complainant.  There was a very strong similarity between the two incidents, such that Mr. Isaacson's testimony corroborated the testimony of Mr. Gray.  The admission of Mr. Isaacson's preliminary examination testimony was not harmless error and should lead to a new trial for both cases.

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

II. THE TRIAL COURT ERRED IN SCORING OV 10 AND OV 19 AND RESENTENCING
IS REQUIRED BECAUSE THE RECOMMENDED MINIMUM SENTENCE RANGE
WAS AFFECTED.

**<u>Standard of Review</u>**:  Preserved scoring issues are reviewed to determine if the sentencing court

"properly exercised its discretion and whether the evidence adequately supports a particular

score." *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009).  Questions of statutory

interpretation are reviewed de novo and factual findings are reviewed for clear error.  *People v*

*Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009).  The proper interpretation and application

of the legislative sentencing guidelines are legal questions that are reviewed de novo.  *People v*

*Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).  A trial court's scoring under the sentencing

guidelines is reviewed to determine whether the court properly exercised its discretion and

whether the record evidence adequately supports a particular score.  *People v Lechleitner,* 291

Mich App 56, 62; 804 NW2d 345 (2010).  When challenged, a sentencing factor need only be

proven by a preponderance of the evidence.  *People v Wiggins,* 289 Mich App 126, 128; 795

NW2d 232 (2010).

A defendant has a constitutional right to a sentencing based upon accurate information.

*Townsend v Burke*, 334 US 736; 68 S Ct 1252; 92 L Ed 2d 1690 (1948); *People v Malkowski*,

385 Mich 244, 249; 188 NW2d 559 (1971); *People v Francisco*, 474 Mich 82, 88-92; 711 NW2d

44 (2006).  If a defendant challenges the facts relied upon in scoring the guidelines, the trial

court may not consider them unless it first permits the defendant a reasonable opportunity to

challenge the scoring of the guidelines and the trial court must find that the scoring is supported

by a preponderance of the evidence.  *People v Walker*, 428 Mich 261, 267-268; 407 NW2d 367

(1987); *People v Ewing*, 435 Mich 443; 458 NW2d 880 (1990).

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

The sentencing guidelines were scored only for the most serious offenses, the two unarmed robbery convictions. They were scored identically. Unarmed robbery is a Class C offense against the person. The Defendant did not object to the scoring of the guidelines at the time of sentencing, but the Defendant is filing a Motion to Remand with this brief.

**OV 10 – Exploitation of a Victim's Vulnerability**

OV 10 was scored at 15 points. A score of 15 points is appropriate where "Predatory conduct was involved." The explanation for this score is given on page 2 of the CFJ-284 part of the presentence report, that Mr. Heath had used an internet ad to attract potential victims.

*People v Cannon,* 481 Mich 152, 158-159; 749 NW2d 257 (2008) holds that vulnerability is a prerequisite of any score under OV 10:

> . . . we conclude that points should be assessed under OV 10 only when it is readily apparent that a victim was 'vulnerable, i.e., was susceptible to injury, physical restraint, persuasion, or temptation. Factors to be considered in deciding whether a victim was vulnerable include (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. The mere existence of one of these factors does not automatically render the victim vulnerable.

*People v Huston,* 489 Mich 451, 463; 802 NW2d 261 (2011) does not disagree with *People v Cannon* but holds that pre-offense conduct does not have to be directed at a specific victim. Also, it holds that vulnerability is not limited to a victim's personal characteristics, but can include a victim's "relationships or circumstances." *Id.,* 464.

Presumably the purpose of the internet ad was "temptation or persuasion." However, *People v Huston* does not hold that any form of preoffense planning amounts to predatory conduct, nor does it overrule *People v Cannon*. In fact, *People v Huston* specifically holds that predatory conduct does not encompass *any* preoffense conduct, but rather only those forms of

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

preoffense conduct that are commonly understood as being predatory in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.  *People v Huston*, supra, 489 Mich 451, 462.

In *People v Huston*, the defendants lay in wait in a mall parking lot after dark and robbed a woman who parked her car.  They were looking not only for a victim but for a vulnerable victim.  Mr. Heath was allegedly looking for any man who responded to the backpage ad.  None of the *Cannon* factors apply to either Mr. Gray or to Mr. Isascson.  Mr. Heath's alleged conduct was indeed run-of-mill planning, not lying in wait or seeking out a particularly vulnerable victim.  The score for OV 10 should be zero.

**OV 19 – Threat to Security or Interference with the Administration of Justice**

OV 19 was scored at 10 points.  A score of 10 points is appropriate where "The offender otherwise interfered with or attempted to interfere with the administration of justice."  The explanation for this score is given on page 2 of the CFJ-284 part of the presentence report, that the Defendant denied any involvement in the charged offenses and that he was just passing through the parking lot of the Swiss Valley apartments.  He first denied encountering anyone in the parking lot.

It is well settled that providing false information to the police or committing perjury can justify a score of 10 points under OV 19.  See *People v Barbee*, 470 Mich 384, 386-387; 681 NW2d 348 (2004) and *People v Jenkins*, 244 Mich App 1, 15 n 6; 624 NW2d 457 (2000).  On the other hand, as recognized by the majority in *People v Baiz*, unpublished opinion per curiam of the Court of Appeals, issued January 9, 2007 (Docket No. 262912), when a jury finds the testimony of a victim to be more credible that than of the defendant, this does not equate with a

-15-

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

finding that the defendant did in fact lie when he testified.  A copy of this opinion is submitted

with this brief in a separate appendix.  As the majority points out in that opinion, assessing 10

points under OV 19 based on a defendant maintaining his innocence raises constitutional

concerns.

According to Officer Dennis Ferguson, Mr. Heath first denied encountering anyone in the

parking lot but then said that he encountered another motorist who called him a "m****f*****,"

which was consistent with his trial testimony.  He denied any contact at all with Brian Gray.  The

jury found Mr. Gray and Mr. Isaacson to be more credible, but this does not mean that the jury

decided that Mr. Heath committed perjury.  In *People v Adams*, 430 Mich 679, 693; 425 NW2d

437(1988) the Michigan Supreme Court held that while a sentencing court can consider a

defendant's perjury in assessing his potential for rehabilitation:

> We do not suggest that the trial judge has uncontrolled discretion in
> this area, or that there could not be circumstances in which the record would
> support a claim that the defendant's testimony did not display a flagrant
> willingness to lie under oath, that the trial court gave improper weight to
> false testimony on an irrelevant matter, or that the trial court improperly
> concluded that the perjury in question was wilful, that is, that although
> material the evidence could not rationally be attributed to the defendant and
> was therefore not relevant to the prospects for rehabilitation.
>
> However, when the record contains a rational basis for the trial
> court's conclusion that the defendant's testimony amounted to wilful,
> material, and flagrant perjury, and that such misstatements have a logical
> bearing on the question of the defendant's prospects for rehabilitation, the
> trial court properly may consider this circumstance in imposing sentence.

The same standard should apply to the scoring of OV 19, and in the present case the score

should be zero.

If OV 10 and OV 19 are scored at zero, the total offense variable points will be reduced

from 55 to 30.  That would change the recommended minimum sentence range from the present

one, 58 months to 228 months, to 43 months to 172 months.  The actual minimum sentence for unarmed robbery in each case was 8 years, or 96 months.

The actual minimum sentence of 96 months falls within the range of 43 months to 172 months.  However, *People v Francisco*, supra, 474 Mich 82, 91-92 requires resentencing when the minimum sentence range is miscalculated, even if the sentence falls with the minimum sentence range as corrected.

## **RELIEF REQUESTED**

For the above reasons, Defendant asks that the Court of Appeals reverse his convictions of two counts of unarmed robbery and two counts of impersonating a police officer and remand this case to the Kent County Circuit Court for a new trial.  In the alternative, Defendant asks that the the Court of Appeals remand this case to the Kent County Circuit Court for resentencing.

Respectfully submitted,


Dated:  January 3, 2013                              /s/ Daniel D. Bremer
                                                     Daniel D. Bremer (P-23554)
                                                     Attorney for Defendant-Appellant
                                                     1133 East Bristol Road
                                                     Burton, Michigan 48529
                                                     (810) 232-6231

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

## **<u>APPENDIX</u>**

*PEOPLE v BAIZ*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

PEOPLE OF THE STATE OF MICHIGAN,

                Plaintiff-Appellee,

V

CEDRIC E. BAIZ

                Defendant-Appellant.

UNPUBLISHED
January 9, 2007

No.  262912
Livingston Circuit Court
04-014504

---

Before:  Servitto, P.J., and Fitzgerald and Talbot, JJ.

PER CURIAM.

    Defendant appeals as of right his sentence of 18 month to 15 years' imprisonment following a jury trial conviction for second-degree criminal sexual conduct, MCL 750.520c(1)(a).  We affirm the trial court's scoring of OV 10 but, because the trial court failed to make an independent determination that defendant's testimony amounted to willful, material, and flagrant perjury, we remand this case for an articulation of the reasons supporting the scoring of OV 19.

    Defendant's charge stems from an incident wherein he allegedly touched the breasts of his stepdaughter's twelve-year-old friend.  While the victim testified at trial as to the details of the incident, defendant's stepdaughter and defendant both testified that the incident never occurred.  The jury nevertheless found defendant guilty as charged.

    On appeal, defendant challenges the scoring of offense variables (OV) 10 for his offense under the sentencing guidelines.  We find that this OV was correctly scored.

    A sentencing court's scoring of points under the sentencing guidelines is reviewed for an abuse of discretion.  *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002).  As long as there is some evidence of record in support, a scoring decision will be upheld.  *Id*.  The trial court's factual findings at sentencing are reviewed for clear error.  *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

    Offense variable 10 concerns exploitation of a vulnerable victim.  MCL 777.40.  Defendant was assessed 15 points for OV 10 because predatory conduct was involved.  Predatory conduct for purposes of this variable is defined as "preoffense conduct directed at a victim for the primary purpose of victimization."  MCL 770.40(3)(a).

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

In this case, evidence was presented at trial that defendant approached the victim and his stepdaughter early in the morning and began rubbing their legs and asking them to smoke marijuana with him.  The victim testified that defendant then yelled at his stepdaughter to take a shower, thus securing time alone with the victim.  When alone with the victim, defendant initiated conversation of a sexual nature with her, complimented her physical attributes, and touched her.  This evidence permits an inference that defendant was attempting to secure privacy with the victim and to create an atmosphere that would relax her and lessen her inhibitions. *People v Witherspoon*, 257 Mich App 329, 336; 670 NW2d 434 (2003).  Viewing the evidence in its totality, defendant engaged in "preoffense conduct directed at a victim for the primary purpose of victimization.  MCL 777.40(3)(a).  Thus, the trial court did not err in finding that defendant engaged in predatory conduct, and did not abuse its discretion in approving a score of 15 points on OV 10.

Defendant next asserts that OV 19 was incorrectly scored.[1]  OV 19 provides that 10 points shall be scored if the defendant "interfered with or attempted to interfere with the administration of justice." MCL 777.49(c).  In *People v Barbee*, 470 Mich 283, 286-287; 681 NW2d 348 (2004), our Supreme Court rejected the notion that the language "interfered with or attempted to interfere with the administration of justice" was equivalent to the term of art "obstruction of justice."  The Court determined that an act need not "necessarily rise to the level of a chargeable offense" to constitute an interference with the administration of justice. *Id.* at 287.

Here, defendant does not challenge the trial court's conclusion that perjury constituted an attempt to interfere with the administration of justice.  In fact, there is no question that perjury provides a basis for scoring OV 19, as a willful assertion of facts, opinions, or beliefs known by a testifying witness to, in fact, be false, interferes with the administration of justice.  See *People v Jenkins*, 244 Mich App 1, 15 n 6; 624 NW2d 457 (2000).  Instead, defendant asserts as error the trial court's assessment of points on OV 19 based upon its conclusion that because defendant testified that the incident never occurred and the jury nevertheless found him guilty of the offense charged, he must have committed perjury.

The jury in this case was presented with two differing versions of the event that led to defendant's arrest.  By finding defendant guilty, the jury presumably found the testimony of the victim to be more credible than that of defendant and his stepdaughter.  This does not necessarily equate, though, with a finding that defendant did, in fact, lie, when he testified at trial.  We have no way of knowing the jury's thought process or reasoning behind finding defendant guilty, and that the jury chose to believe one version does not necessarily make that version the truth—it simply makes that version more believable.  Moreover, the assessment of ten points under OV 19 for perjury based upon the mere fact that a defendant testified as to his innocence, but was ultimately found guilty, raises constitutional concerns.

---

[1] Although defendant also challenged the scoring of OV 12 at his sentencing, he has not alleged error regarding the scoring of this offense variable on appeal.

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

Most importantly, the trial judge here made no specific finding regarding what portions of defendant's testimony it considered perjured.  Due process requires that a defendant's sentence be based on accurate information and that the defendant have a reasonable opportunity at sentencing to challenge that information.  *People v Miles*, 454 Mich 90, 100; 559 NW2d 299 (1997).  When a trial court simply bases a sentencing enhancement on the fact that the defendant has testified to his innocence, but the jury has found him guilty, the sentence may not be based on accurate information.  Requiring the sentencing court to make specific findings concerning how the defendant has perjured himself would ensure that the sentence is based on findings that the defendant has the opportunity to challenge at sentencing.  This conclusion is supported by *People v Adams*, 430 Mich 679, 693; 425 NW2d 437 (1988), in which our Supreme Court indicated that the trial court itself must have concluded that the defendant's alleged perjury was willful, material, and flagrant.  See also *People v Marchese*, 608 NYS2d 776, 781-782; 160 Misc 2d 212 (1994) (concluding due process is ensured by requirements that a sentencing enhancement based on perjury is permitted only when the perjury was committed in the presence of the sentencing judge, the perjury concerned basic adjudicative facts,[2] the evidence of perjury was material to the issues in the case, and the perjured testimony was only one factor considered in light of the goals of sentencing).

In this case, the trial court failed to make a finding that defendant perjured himself or that any perjury was willful, material, and flagrant.  Rather, the trial court stated that it was the jury who made the finding that defendant had perjured himself.  Consistent with *Adams*, *supra*, this case must be remanded to the sentencing court "to permit the sentencing judge to supply his reasoning."  *People v Triplett*, 432 Mich 568, 573; 442 NW2d 622 (1989).[3]

Affirmed in part, remanded in part.  We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ E. Thomas Fitzgerald

---

[2]  *Marchese* cited *People v Longuemire*, 87 Mich App 395, 398; 275 NW2d 12 (1978) to demonstrate the difference between adjudicative facts and issues of ultimate fact.  *Marchese*, *supra*, 608 NYS2d 782-783.

[3]  Based upon our determination, defendant's argument concerning proportionality need not be addressed at this time.

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

CEDRIC E. BAIZ,

          Defendant-Appellant.

UNPUBLISHED
January 9, 2007

No. 262912
Livingston Circuit Court
LC No. 04-014504-FH

---

Before:  Servitto, P.J., and Fitzgerald and Talbot, JJ.

Talbot, J. (*concurring in part, dissenting in part*).

     I concur with the majority's conclusion regarding the scoring of OV 10, but respectfully dissent regarding the majority's determination that OV 19 was improperly scored by the trial court based on defendant's perjury. As such, I would affirm the trial court's scoring of the statutory guidelines and defendant's sentence of 18 months to 15 years' imprisonment for second-degree criminal sexual conduct.

     Notably, defendant does not challenge the trial court's conclusion that perjury constitutes an attempt to interfere with the administration of justice, which is consistent with this Court's prior determination that perjury rises to the level of obstruction of justice. *People v Jenkins*, 244 Mich App 1, 15 n 6; 624 NW2d 457 (2000) (citation omitted). However, "[a] court in passing sentence may not consider factors that violate a defendant's constitutional rights." *People v Godbold*, 230 Mich App 508, 512; 585 NW2d 13 (1998). A statutory provision such as MCL 777.49(c) cannot authorize an unconstitutional action. *People v Conley*, 270 Mich App 301, 316; 715 NW2d 377 (2006). Accordingly, defendant asserts, and the majority apparently concurs, that it was error to score OV 19 on the basis of his alleged perjury because doing so interferes with his constitutional rights to testify, to refuse to admit guilt, to have a trial, and to due process of law.

     In *People v Adams*, 430 Mich 679; 425 NW2d 437 (1988), our Supreme Court held that a defendant's perjury can be considered in determining his sentence because the perjury reflects on his prospects for rehabilitation. The *Adams* Court stated, "[i]n the sentencing process, the trial judge is required to presume guilt in fact and should be allowed to infer that a defendant's willful material perjury under oath circumstantially indicates the absence of a character trait for being law-abiding that bears on the appropriate sentence." *Id.* at 693-694. The Court rejected the claim that such an inference would "chill the exercise of the defendant's right to trial[,]" noting that "there is no right, constitutional or otherwise, to testify falsely[.]" *Id.* at 694.

-1-

In reaching its holding in *Adams*, our Supreme Court relied on *United States v Grayson*, 438 US 41; 98 S Ct 2610; 57 L Ed 2d 582 (1978). *Grayson* rejected the defendant's argument that enhancing his sentence based on his perjury during trial chilled his right to testify and constituted punishment for a crime of which he had not been convicted by due process. *Id*. at 53-55. Recently, in *United States v Dunnigan*, 507 US 87, 97-98; 113 S Ct 1111; 122 L Ed 2d 445 (1993), the United States Supreme Court rejected a challenge to a sentence enhancement concerning obstructing or impeding the administration of justice.

In *Dunnigan*, the Court stated that the commission of perjury was relevant to the determination of the appropriate type and extent of punishment "because it reflects on a defendant's criminal history, on her willingness to accept the commands of the law and the authority of the court, and on her character in general." *Dunnigan*, *supra* at 94. The Court further stated:

> It is rational for a sentencing authority to conclude that a defendant who commits a crime and then perjures herself in an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency than a defendant who does not so defy the trial process. The perjuring defendant's willingness to frustrate judicial proceedings to avoid criminal liability suggests that the need for incapacitation and retribution is heightened as compared with the defendant charged with the same crime who allows judicial proceedings to progress without resorting to perjury. [*Id*. at 97-98.]

The Court rejected the argument that an enhanced sentence based on a willful presentation of false testimony undermines a defendant's right to testify, noting that the right to testify does not encompass the right to commit perjury and that "[o]ur authorities do not impose a categorical ban on every governmental action affecting the strategic decisions of an accused, including decisions whether or not to exercise constitutional rights." *Id*. at 96.

The *Dunnigan* Court rejected the argument that the enhancement would be automatic whenever a defendant testified, but was found guilty. The Court noted that inaccurate testimony might be presented because of mistake and that an accused might truthfully testify regarding matters such as lack of capacity or self-defense, which a jury could find insufficient to excuse criminal liability, and, thus, further held:

> [I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition [set out by the Court.] [*Dunnigan*, *supra* at 95.]

This conclusion is consistent with the Michigan Supreme Court's ruling in *Adams* that a trial court must have concluded that the defendant's alleged perjury was willful, material, and flagrant. *Adams*, *supra* at 693. The trial court made this finding when it acknowledged that the jury's verdict, as the result of the wholesale rejection of defendant's testimony, necessarily

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

determined that defendant had perjured himself at trial and where no evidence was presented that defendant's testimony was the result of mistake or confusion.

The record in this case is replete with defendant's false testimony.  At trial, defendant testified in direct contradiction to the victim, denying not only every allegation of wrongdoing but also asserting her recollection of most details of the event and circumstances to be erroneous. In addition, during the police investigation, defendant not only denied any wrongdoing regarding the victim, but also falsely asserted that he had never been arrested before this incident and had worked as a confidential informant for federal law enforcement.  See *People v Barbee*, 470 Mich 283, 288; 681 NW2d 348 (2004) (holding that "[c]onduct that occurs before criminal charges are filed can form the basis for interference, or attempted interference with the administration of justice, and OV 19 may be scored for this conduct where applicable.")  This assertion was again reiterated at trial, despite evidence of defendant having been arrested in other jurisdictions. Hence, not only does the jury's verdict, through acceptance of the victim's version of events and commensurate rejection of defendant's testimony support the scoring of this variable based on perjury, defendant's false statements to police and during trial regarding his history of prior police involvement serves to substantiate the scoring of 10 points on OV 19.  In accordance with this Court's holding in *Adams*:

> [W]hen the record contains a rational basis for the trial court's conclusion that the defendant's testimony amounted to wilful [sic], material, and flagrant perjury, and that such misstatements have a logical bearing on the question of the defendant's prospects for rehabilitation, the trial court properly may consider this circumstance in imposing sentence.  [*Adams, supra* at 693.]

Therefore, I would reject defendant's claim that his sentencing enhancement for perjury constituted error, which infringed on his rights to trial and to testify and "uphold the trial court's guidelines scoring" based on the existence of "evidence in the record to support it."  *People v Houston*, 261 Mich App 463, 471; 683 NW2d 192 (2004) (citations omitted).

Additionally, defendant contends that a sentencing enhancement based on perjury infringes on his right to refuse to admit guilt.  *Conley, supra* at 314.  However, there is no evidence that the trial court asked the defendant to admit guilt or offered to lower his sentence in return for an admission of guilt.  *Id*.  More importantly, defendant elected to testify and not to remain silent.  Having giving up this right, defendant was required to speak truthfully.  *Adams, supra* at 689.

/s/ Michael J. Talbot

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Cover Sheet** | ***CASE NO.*** | | | |
|---|---|---|---|---|---|
| KENT CIRCUIT COURT | | CIRCUIT: | Year<br>11 | Number<br>011910 | Case Type<br>FH |
| | | COURT OF APPEALS: | 310897 | | |

<div align="center">Filing Party</div>

| Filing Party Last Name or Business/Entity/Agency Name | | Attorney Last Name | | |
|---|---|---|---|---|
| HEATH KELVIN WAYNE | | Bremer | | |
| Filing Party First Name | M.I. | Attorney First Name | M.I. | P Number |
| | | Daniel | D. | 23554 |
| Address (Street 1, Street 2, City, State, and ZIP Code) | | Address(Street 1, Street 2, City, State, and ZIP Code) | | |
| | | 1133 E. Bristol Road | | |
| | | | | |
| | | Burton | MI | 48529 |
| | | Attorney Telephone Number | | |
| | | (810)232-6231 | | |

<div align="center">Summary of Items Filed</div>

| Type | Filename/Description | Filing<br>Fee | Doc<br>Fee | Total<br>This Filing |
|---|---|---|---|---|
| Brief | Defendant-Appellant's Brief | $5.00 | ---- | $5.00 |
| Motion - Regular | Motion to Remand | $5.00 | ---- | $5.00 |
| Other | transcript of preliminary examination | $5.00 | ---- | $5.00 |
| PSIR | Presentence Report | $5.00 | ---- | $5.00 |
| | | **3% Service Fee:** | | $00.60 |
| **Fee Substitute/Alternate Payment** | | **Total All Filings:** | | $20.60 |

**Reason:**

| | |
|---|---|
| X | **Appointed Counsel** |
| | **Motion To Waive Fee** |
| | **Fees Waived in this Case** |
| | **MI InterAgency Transfer** |
| | **No Fee per MCR 7.203(F)(2)** |

**Filer Office Use Only:**   30897

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

310897 - 300868

| Lower Court or Tribunal | STATE OF MICHIGAN<br>IN THE COURT OF APPEALS<br>**Proof of Service** | *CASE NO.* | | |
|---|---|---|---|---|
| KENT CIRCUIT COURT | | CIRCUIT: | Year<br>11 | Number<br>011910 | Case Type<br>FH |
| | | COURT OF APPEALS: | 310897 | |

Case Name:   PEOPLE OF MI V KELVIN WAYNE HEATH

On   1/4/2013   , one copy of the following documents:

| | |
|---|---|
| Brief | Defendant-Appellant's Brief |
| Motion - Regular | Motion to Remand |
| Other | transcript of preliminary examination |
| PSIR | Presentence Report |

was delivered to the persons listed below:

Date
1/4/2013

Signature
/s/Daniel D. Bremer

| | Bar Number | Name | Delivery Method | Service Address |
|---|---|---|---|---|
| P- | 23770 | Forsyth, William A. | Mail | 82 Ionia Avenue NW; Suite 450; Grand Rapids, MI 49503 |

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

STATE OF MICHIGAN

IN THE COURT OF APPEALS

PEOPLE OF THE STATE
OF MICHIGAN,

                  Plaintiff-Appellee,          Docket No. 310897

vs                                 Lower Court Nos.  11-11910-FH and
                                                      11-11911-FH

KELVIN WAYNE HEATH,

                  Defendant-Appellant.

_____/

William A. Forsyth (P-23770)         Daniel D. Bremer (P-23554)
Prosecuting Attorney                Attorney for Defendant-Appellant
82 Ionia Avenue NW, Ste 450       1133 East Bristol Road
Grand Rapids, Michigan 49503      Burton, Michigan 48529
(616) 632-6710                    (810) 232-6231

_____

## **MOTION TO REMAND**

      Defendant-Appellant moves to remand this case to the Kent County Circuit Court for the following reasons:

      1.  The Defendant was been convicted by a jury of  unarmed robbery, MCL 750.530, and impersonating a police officer, MCL 750.215.  The guidelines were scored only on the unarmed robbery charge.

      2.  The Defendant was given 15 points under OV 10.  A score of 15 points is appropriate where "Predatory conduct was involved."  The explanation for this score is given on page 2 of the CFJ-284 part of the presentence report, that Mr. Heath had used an internet ad to attract potential victims.  The alleged victims were not vulnerable within the meaning of *People v Cannon,* 481 Mich 152, 158-159; 749 NW2d 257 (2008).

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

3.  The Defendant was given 10 points under OV 19.  A score of 10 points is appropriate where "The offender otherwise interfered with or attempted to interfere with the administration of justice." The explanation for this score is given on page 2 of the CFJ-284 part of the presentence report, that the Defendant denied any involvement in the charged offenses and that he was just passing through the parking lot of the Swiss Valley apartments.  The jury in convicting the Defendant did not necessarily believe that he committed perjury.

4.  The reasons for scoring  both OV 10 and OV 19 at zero are discussed in detail in the Defendant-Appellant's brief.

5.  If scored properly the guidelines range for unarmed robbery would be 43 months to 172 months rather than 58 months to 228 months.  The actual minimum sentence was 8 years or 96 months.  *People v Francisco*, 474 Mich 82, 91-92; 711 NW2d 44 (2006) requires resentencing even if the actual minimum sentence falls within the corrected range.

WHEREFORE, Defendant-Appellant asks that the Court of Appeals remand this case to the Kent County Circuit Court to correct the sentencing guidelines unarmed robbery and for resentencing on that charge.

Respectfully submitted,

Dated:  January 3, 2013                                   /s/ Daniel D. Bremer
                                                         Daniel D. Bremer (P-23554)
                                                         Attorney for Defendant-Appellant
                                                         1133 East Bristol Road
                                                         Burton, Michigan 48529
                                                         (810) 232-6231

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Cover Sheet** | **CASE NO.** | | | |
|---|---|---|---|---|---|
| | | | Year | Number | Case Type |
| KENT CIRCUIT COURT | | CIRCUIT: | 11 | 011910 | FH |
| | | COURT OF APPEALS: | 310897 | | |

### Filing Party

| Filing Party Last Name or Business/Entity/Agency Name | Attorney Last Name |
|---|---|
| HEATH KELVIN WAYNE | Bremer |

| Filing Party First Name | M.I. | Attorney First Name | M.I. | P Number |
|---|---|---|---|---|
| | | Daniel | D. | 23554 |

Address (Street 1, Street 2, City, State, and ZIP Code)

Address (Street 1, Street 2, City, State, and ZIP Code)

1133 E. Bristol Road

Burton    MI   48529

Attorney Telephone Number

(810)232-6231

### Summary of Items Filed

| Type | Filename/Description | Filing Fee | Doc Fee | Total This Filing |
|---|---|---|---|---|
| Brief | Defendant-Appellant's Brief | $5.00 | ---- | $5.00 |
| Motion - Regular | Motion to Remand | $5.00 | ---- | $5.00 |
| Other | transcript of preliminary examination | $5.00 | ---- | $5.00 |
| PSIR | Presentence Report | $5.00 | ---- | $5.00 |
| | | **3% Service Fee:** | | $00.60 |
| **Fee Substitute/Alternate Payment** | | **Total All Filings:** | | $20.60 |

**Reason:**

- [X] **Appointed Counsel**
- [ ] **Motion To Waive Fee**
- [ ] **Fees Waived in this Case**
- [ ] **MI InterAgency Transfer**
- [ ] **No Fee per MCR 7.203(F)(2)**

| Filer Office Use Only: | 30897 |
|---|---|

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

310897 - 300868

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br><br>**Proof of Service** | *CASE NO.* | | |
|---|---|---|---|---|
| | | CIRCUIT: | Year **11** | Number **011910** | Case Type **FH** |
| KENT CIRCUIT COURT | | COURT OF APPEALS: | **310897** | |

Case Name:   PEOPLE OF MI V KELVIN WAYNE HEATH

On   1/4/2013   , one copy of the following documents:

| | |
|---|---|
| Brief | Defendant-Appellant's Brief |
| Motion - Regular | Motion to Remand |
| Other | transcript of preliminary examination |
| PSIR | Presentence Report |

was delivered to the persons listed below:

Date

1/4/2013

Signature

/s/Daniel D. Bremer

| Bar Number | Name | Delivery Method | Service Address |
|---|---|---|---|
| P- 23770 | Forsyth, William A. | Mail | 82 Ionia Avenue NW; Suite 450; Grand Rapids, MI 49503 |

*(left margin, vertical)* RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

STATE OF MICHIGAN

IN THE DISTRICT COURT, 62-A JUDICIAL DISTRICT

THE PEOPLE OF THE STATE OF MICHIGAN,        Case No. 11FY-4668

vs.

KELVIN WAYNE HEATH,

        Defendant.

PRELIMINARY EXAMINATION

BEFORE THE HONORABLE STEVEN M. TIMMERS, DISTRICT JUDGE

Wyoming, Michigan - Wednesday, December 14, 2011

APPEARANCES:

For the People:          MR. TRAVIS J. EARLEY  P-68745
                         Assistant Prosecuting Attorney
                         82 Ionia NW   Suite 450
                         Grand Rapids, Michigan  49503
                         (616) 632-6710

For the Defendant        MS. VALERIE FOSTER  P-44459
                         Office of the Defender
                         920 McKay Tower
                         Grand Rapids, Michigan 49503
                         (616) 774-8181

RECORDED BY: REC"D & FILED

JAN 25 2012

CIRCUIT COURT ADMINISTRATION

Lori Hinueber - CER 8269
Certified Electronic Recorder
(616) 530-7378

1

ORIGINAL

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

TABLE OF CONTENTS

WITNESSES:   PEOPLE:                                    PAGE

        Barry Isaacson

        Direct Examination by Mr. Earley            5
        Cross-Examination by Ms. Foster            21




EXHIBITS:  PEOPLE                    IDENTIFIED      RECEIVED

PX 1 - Ad                                15              16
PX 2 - Photograph                        16              17

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1    Wyoming, Michigan

2    Wednesday, December 14, 2011 - 1:52 p.m.

3    THE COURT:  Ms. Foster, what else are you ready on?

4    MS. FOSTER: Mr. Heath.

5    THE COURT:  Okay.

6    MR. EARLEY:  We're ready.

7    MS. FOSTER:  And just for the record, Mr. Heath--

8    yeah, we're going to run his.  I talked with Mr. Earley about

9    Mr. Heath's case.  He's got two unarmed robbery cases.  The

10   prosecutor had extended an offer--come over here and have a

11   seat--the prosecutor had extended an offer of a package with

12   his pending case, and my understanding is that part of the

13   reason why we're taking testimony is to lock in one of the

14   victims, alleged victims, because the guy lives out of state.

15   But in talking with Mr. Heath, I was under the impression that

16   he's not inclined to waive these prelims anyway.  So I've

17   advised Mr. Earley that we're probably just going to need to

18   take testimony from both the alleged victims of both cases.

19   THE COURT:  That's fine.  Are you ready to proceed,

20   Mr. Earley?

21   MR. EARLEY:  I am, Your Honor.

22   THE COURT:  Ms. Foster, what are you going to do on

23   the Krombeen matter?  Ms. Foster?

24   MS. FOSTER:  Yes, sir.

25   THE COURT:  What are we going to do on the Krombeen

3

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1    matter?

2            MS. FOSTER:  I'm sorry.  I didn't hear.

3            THE COURT:  Krombeen?

4            MS. FOSTER:  Krombeen?  That's not mine.

5            MR. EARLEY:  Your Honor, that matter is being--

6            MS. FOSTER:  Oh, it is mine.  That's going to be

7    dismissed--oh sorry.  The prosecution--

8            MR. EARLEY:  That's all right.  That matter is being

9    dismissed, Your Honor.

10           THE COURT:  Oh, it is?  By the prosecution?

11           MR. EARLEY:  Yeah, there'll be a Nolle Pros filed

12   probably tomorrow, only because our support person was out

13   today.

14           COURT CLERK:  She'll be back Friday.

15           MR. EARLEY:  I hope somebody is covering for her so

16   that it gets done.

17           COURT CLERK:  Denise will be back Friday.  If you

18   want I'll prepare it if you want to sign it.

19           MR. EARLEY:  Um, sure.

20           COURT CLERK:  Or do you need it to go through your

21   office?

22           MR. EARLEY:  It doesn't matter.  Thank you.

23           COURT CLERK:  I'll get one.

24           THE COURT:  All right.  If you want to call your

25   first witness?

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1        MR. EARLEY:  And for the record, Your Honor, I'd

2  like to start with the November 29th incident.  Due to the

3  witness that I have, I'd like him to get back to Illinois

4  today.

5        THE COURT:  Sure.

6        MR. EARLEY:  The people call Barry Isaacson.

7        MS. FOSTER:  This is the guy from Illinois?

8        MR. EARLEY:  Yes.

9        THE COURT:  Mr. Issaacson, could you have a seat

10  right over here.  And you said your name is Barry--

11        MR. ISAACSON:  Isaacson.

12        THE COURT:  Isaacson.  Can you spell that for us

13  please?

14        MR. ISAACSON:  I-s-a-a-c-s-o-n.

15        THE COURT:  All right.  Can you raise your right

16  hand?  Do you swear or affirm the testimony you're about to

17  give will be the truth, so help you God?

18        MR. ISAACSON:  Yes.

19        THE COURT:  Thank you.  Go ahead.

20        MR. EARLEY:  Thank you.

21               BARRY ISAACSON

22      (At 1:54 p.m., witness sworn)

23            DIRECT EXAMINATION

24  BY MR. EARLEY:

25  Q.  Mr. Isaacson, without giving us a street address, can you tell

<div align="center">5</div>

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1          us where you came into town from today?

2     A.   Illinois.

3     Q.   And back on November 29th of this year, were you in Grand

4          Rapids at that time?

5     A.   Yes.

6     Q.   And what brought you to Grand Rapids on the 29th?

7     A.   I had uh--business.

8     Q.   Okay.  You were in town--in town for business?

9     A.   In town for business.

10    Q.   All right.  Specifically then after or during the time you

11         were in town for business, did you end up going to the Swiss

12         Valley Apartments here in Wyoming, the city of Wyoming?

13    A.   Yes.

14    Q.   Okay, and what--what drew your attention to the Swiss Valley

15         Apartments on that particular day?

16    A.   I had responded to an ad on backpage for an adult service.

17    Q.   Okay.

18    A.   Actually, the day before I came into town.  The person that I

19         responded to gave me a different phone number to text when I

20         was in town.  I concluded my business.  I texted that person,

21         then they directed me to the apartment complex and then

22         specifically a specific unit in her building and unit number

23         in the complex.

24    Q.   Okay, and do you happen to recall the address at all or the

25         apartment number or anything like that?

                              6

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1    A.    It was the--one of the front buildings, the furthest to the

2          right if you were facing the complex.

3    Q.    Okay, and--

4    A.    The unit was the lower level.  I want to say 1-D, toward the

5          backside of the building.

6    Q.    Okay, and how did you get to the apartments that day?

7    A.    I drove.

8    Q.    And were you by yourself or with somebody else?

9    A.    I was by myself.

10    Q.    And did you attempt to look for that specific apartment

11          number?

12    A.    Yes.  I walked into the apartment building, went and knocked

13          on the door that I was instructed, you know, to go to.

14    Q.    Do you happen to recall the--either the number that you

15          initially contacted or the phone number that contacted you

16          back?

17    A.    I gave both the phone numbers to the police that day.  The one

18          that I had texted and then also one that I had called the

19          previous day that instructed me to then text the following

20          day.

21    Q.    Okay.  But you don't have those numbers memorized?

22    A.    No.

23    Q.    Okay, and about what time of day was that that you went to the

24          apartments?

25    A.    Um--around the middle of the day, maybe around 12 or 1

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1    o'clock.

2 Q. And you physically got out of your car to look for that

3    apartment number?

4 A. Correct.

5 Q. And what happened when you didn't find it?

6 A. Well, I did find the apartment.

7 Q. Okay.  I'm sorry.

8 A. I walked into the building.  I knocked on the door and a

9    gentleman came up to me from the backdoor and identified

10    himself as a police officer.  He was wearing a Wyoming Police

11    tee shirt.  He put me--or shoved me against the wall, said

12    "sting operation", started searching me, asked me if I had any

13    weapons or sharp instruments in my pockets.  He grabbed my

14    billfold which holds my credit cards and then also cash that I

15    had attached to it, got on his telephone after he took the

16    cash, and really at that point I said, let me see some

17    identification.  Because it kind of felt like something was a

18    little, you know, going--something didn't seem, you know,

19    appropriate as far as, you know, someone being a police

20    officer.  And he got on the telephone and said, okay--suspect,

21    you know, he's not 5'8" or Hispanic and, you know, bring the

22    girl down.  Like, you know, this was--I was going to be used

23    to identify someone that roughed someone up was part of his

24    B-S I was told at the time.  And I said, you know, let me see

25    your ID, and, you know, he had my money in his hands.  I had

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1    about $500 in cash.  I had my bill--my clip with my driver's

2    license and my other information and he made this, you know,

3    phone call supposedly.  He said wait right here, and then he

4    walked out, and you know, it seemed like complete bullshit at

5    that point.  I got in my car; I followed and found him in the

6    parking lot, you know.  I said, just give me my money back,

7    you know.  You're full of it, of course.  And he drove away.

8    I had called him; I had his number.  He called me back.  He

9    said, okay, we're coming down.  I'll bring the girl down right

10   now to identify, and I said, you know, enough.  Give me my

11   money back and I'll be on my way or I'm calling the police.

12   And you know, he's like, oh you're, you know, a tough guy,

13   whatever.   I said, you know what?  It's easy.  Just give me

14   my money back.  I'll be on my way and you'll be done or I'm

15   calling the police and that's exactly what I did.  When I

16   backed my car up or actually pulled forward as he was trying

17   to pull away, I took a picture of him.  I backed up; I tried

18   to reach around and take a picture of his license plate, and I

19   had told the officer I remembered, I think it was GR, you

20   know, 1211.  I had the majority of the numbers on his license

21   plate.  The police came about 10 or 15 minutes later.  During

22   that time I had circled around to see if his car was parked or

23   if he was in the area.  I gave all the information to the

24   officer and I was on my way back home.

25   Q.    Mr. Isaacson, you gave us a lot of information right there,

9

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1   which I appreciate, but I'm just going to ask you for a few

2   more details--

3   A.   Okay.

4   Q.   --through the middle of some of that.  When you had the

5   initial contact with the number of what you believed to be

6   this service--

7   A.   Yes.

8   Q.   --did you ever speak to anybody on the phone?

9   A.   The first--the night before I came to town, a girl answered

10   the phone.

11   Q.   Okay, and what was her--what was discussed?

12   A.   Just, you know, a rate and, you know, text me this--I'm going

13   to send you a text with the number tomorrow.  Just text me

14   when you get in town.

15   Q.   Okay, and what was the amount of money that you were to bring?

16   A.   Um--I think it was $150.

17   Q.   And then you said the following day you received a text from a

18   different number?

19   A.   Well, I texted the number I got from the previous day.

20   Q.   Okay.

21   A.   No, the second number was the number I was instructed to text

22   when I was in town and that was the number that I texted.

23   Q.   And in return for that, did they send the address in a text

24   message?

25   A.   The address--the address, the building number, directions.

10

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1    Q.   And when you went to make contact with that specific

2          apartment, did you knock on the door or--

3    A.   I knocked on the door.  No one answered.

4    Q.   Okay.

5    A.   I believe I sent a text.  I'm here, you know, standing outside

6          the door.  No one was answering.  A minute or so later the

7          gentleman walked up and--

8    Q.   Okay.  When the man approached you then, were you standing

9          just outside the apartment door?

10   A.   Yes.

11   Q.   And in the hallway then of the complex?

12   A.   Yes.

13   Q.   And that's where the initial conversation about him being a

14         police officer took place?

15   A.   Yes.

16   Q.   And is that where the--where he removed your wallet?

17   A.   Yes.

18   Q.   And what--where was your wallet located when he took it from

19         you?

20   A.   Front, right pocket.

21   Q.   And he walked up and identified himself as a police officer?

22   A.   Yes, and he said, "sting operation."

23   Q.   Did he have--did he give a name?

24   A.   No.

25   Q.   And you said you were pushed up against the wall?

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1  A.  Yes.

2  Q.  Was that instantaneous to him saying, I'm a police officer

3      or--

4  A.  Yes.

5  Q.  Okay.

6  A.  That sting operation, pushed--you know, started to frisk me,

7      asked me if I had any weapons or sharp objects and, you know,

8      stuck his hand in my pocket and took out--it's not a regular

9      wallet, it's a little clip that, you know, has a magnetic

10     thing to hold money and a little slot for my credit cards.

11     And he separated the two.

12 Q.  And when he pushed you up against the wall, were you face

13     against the wall or back against the wall?

14 A.  Face against the wall.

15 Q.  And then did he--did he pat you down or did he go right for a

16     pocket or--

17 A.  He patted from--you know, it's against the law--he patted me

18     down, he stuck his hands in my pocket and took out my clip,

19     separated the money, you know, gave it back.  Let me see your

20     driver's license.  I pull it out and then he got on the phone

21     and, you know, he was off.

22 Q.  Okay.  So you saw him separate the money from your credit

23     cards and other information?

24 A.  Well, that's what he--yes.

25 Q.  Okay, and did he hand you the clip back or did he put it back

                                    12

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

```
 1        in your pocket?

 2   A.   Um--he handed it back to me.

 3   Q.   Okay, and when you got it back from him, the money was gone?

 4   A.   Yeah. I mean he--absolutely.

 5   Q.   Okay.  You--and you indicated that you asked him for

 6        identification multiple times.

 7   A.   Yes.  Yes.

 8   Q.   Okay.  He gets on the phone, acts like he's talking to other

 9        officers; is that the impression you were getting?

10   A.   Yes.

11   Q.   And--

12   A.   I mean at that point I realized it was bullshit.

13   Q.   --right.  But I mean--that was the action, the drama--

14   A.   Yeah, like bring down the subject, you know, victim for

15        identification.

16   Q.   --and then at some point he walked into the parking lot? Or

17        did you walk out?

18   A.   He walked out the door; this unit was a half a flight down.

19        It was the lower.  He walked up and out the back door.  I went

20        out the front of the building where my car was, and then I

21        chased him down in the parking lot.

22   Q.   Okay, and then so you were, again, on foot when you confronted

23        him again about getting your money back?

24   A.   No, I was in my car.

25   Q.   Was he in a vehicle at that point?
```

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

```
 1    A.    Yes.

 2    Q.    Can you describe the vehicle he was in?

 3    A.    Um--black four door, you know, mid-sized, no front license

 4          plate.  The front area by the license plate was scraped up but

 5          not dented.  And I have a picture of it which I then, you

 6          know, forwarded to the police officer that came on the scene.

 7    Q.    Right.  Okay, and that was what I was going to get at, too.

 8          You said that you were able to get partial--a partial plate

 9          that you memorized.

10    A.    Yes.

11    Q.    And you gave that information to the police?

12    A.    That is correct.

13    Q.    And at some point you were able to take a picture of the man.

14    A.    Yes.  My car was next to him.

15    Q.    Okay.

16    A.    I took, you know, my window was down.  We were exchanging, you

17          know, not such nice words.  His window was down and then I

18          went to back up to try and get a picture of his license plate

19          as well, which I was unsuccessful.

20    Q.    Okay, and what did you take the photo with?

21    A.    My iPhone.  I have both the first picture and the unsuccessful

22          picture on my phone right now if you're interested in seeing

23          it.

24    Q.    Sure.  I have a copy of these.

25    A.    Okay.
```

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1      MR. EARLEY:  Thank you.  Can I have these marked, please?

2      MS. FOSTER:  This is what I have.  You don't have

3  anything better than that?  Except what's on his phone?

4      DETECTIVE:  The original colored ones are in evidence.

5      MR. EARLEY:  Okay.  We do, but not here.

6      MS. FOSTER:  Okay.  If I can at some point get a copy of

7  the original?

8      MR. EARLEY:  Sure.

9      MS. FOSTER:  The colored version of that.  That one's

10  kind of grainy.

11  BY MR. EARLEY:

12  Q.  Mr. Isaacson, I'm going to show you what's been marked

13     proposed Exhibits 1 and 2.  If you wouldn't mind just looking

14     at each of those, please.

15  A.  Okay.

16  Q.  Exhibit 1 there, do you see which one is Exhibit 1?

17  A.  Yes.

18  Q.  What does that appear to you?  Do you know what that is?

19  A.  That is the ad that I responded to.

20  Q.  Okay, and is there a phone number on that?

21  A.  Yes.

22  Q.  Um--and the ad is for some sort of--

23  A.  Adult service.

24  Q.  --right.  And there's a photograph.

25  A.  Correct.

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1    Q.    Can you describe what the person looks like in the photo

2         there?

3    A.    Um, you know, a young girl.

4    Q.    Okay, a female.

5    A.    Female.

6    Q.    Okay, and is that the--is that a copy at least of what the ad

7         looked like?

8    A.    Yes.

9    Q.    And is that an ad that you found online?

10    A.    Yes.

11         MR. EARLEY:  Your Honor, I'd ask for the admission of

12    Exhibit 1.

13         THE COURT:  Ms. Foster?

14         MS. FOSTER:  No objection.

15         THE COURT:  It'll be received.

16         MR. EARLEY:  Thank you.

17    BY MR. EARLEY:

18    Q.    The phone number there, sir, is that the number you initially

19         called and spoke to a female?

20    A.    Yes.

21    Q.    And could you tell us what number that is?

22    A.    616-477-1333.

23    Q.    Okay, and could you take a look at Exhibit 2 now please?  Do

24         you recognize that exhibit?

25    A.    Yes.

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1   Q.   And what is that?

2   A.   That's the picture I took of him.

3   Q.   Other than being a copy, is that how the photograph looked on

4        your phone the day that you took it?

5   A.   Yes.

6                MR. EARLEY:  Okay.  Your Honor, I'd ask for the

7        admission of Exhibit 2.

8                MS. FOSTER:  I won't object at this point of

9        preliminary exam, but I did indicate on the record that--or do

10       indicate to the detective who is in the courtroom, that I

11       would like a better copy of that if possible.

12               THE COURT:  It's so noted.

13               MS. FOSTER:  That one's pretty grainy.

14               THE COURT:  It's noted, and can I have the pictures?

15       They'll be admitted for the record.

16               MR. EARLEY:  Thank you.

17  BY MR. EARLEY:

18  Q.   And then when you were in Grand Rapids, you got information

19       from another phone number; is that correct?  One different

20       from the one on Exhibit 1?

21  A.   Yes.

22  Q.   Okay, and that's the one you were texting back and forth with?

23  A.   That's correct.

24  Q.   And that information was all given to the police as well?

25  A.   Correct.

17

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1 Q. How long would you say you were pushed up against the wall

2   when you were being frisked and your wallet was being taken

3   out, or your clip?

4 A. Ten, fifteen seconds.  It all happened fairly fast.

5 Q. Sure, and although it happened fairly quickly, did you feel

6   like you were free to leave at that point, when initial

7   contact was made by this person?

8 A. Initially, no.

9 Q. Okay.  Did you believe that he was a police officer at first?

10 A. Initially, yes.  Absolutely.

11 Q. You recall seeing a Wyoming Police tee shirt that he was

12   wearing.

13 A. Yes.  A yellow shirt with--I think it was blue writing on it.

14   Blue or black.

15 Q. Okay.  Was there any insignia or badge?

16 A. The badge type insignia.  I mean, it looked like, you know, a

17   police tee shirt.

18 Q. Okay, and was that writing on the front or on the back of the

19   shirt.

20 A. It was on the front.  I don't recall if it was on the back but

21   it was on the front, definitely.

22 Q. Do you remember anything else about the person that they were

23   wearing?

24 A. Uh, I believe underneath he had a light blue shirt underneath.

25 Q. Okay.

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1   A.    It was a tee shirt over I think it was a long-sleeved shirt.

2   Q.    Okay, and do you think if you saw that person again that you'd

3         be able to recognize him?

4   A.    Of course.

5   Q.    And do you see that person in the courtroom today?

6   A.    Yes.

7   Q.    Can you identify him by something he's wearing, please?

8   A.    He's wearing a pair of nice bracelets over there.

9   Q.    And what color?  What color is the clothing?

10  A.    Dark green.

11          MR. EARLEY:  Thank you.  Your Honor, may the record

12  reflect he's identified the defendant?

13          THE COURT:  It shall.

14          MR. EARLEY:  Thank you.

15  BY MR. EARLEY:

16  Q.    Had you ever seen the defendant before in your life?

17  A.    Never.  I've never been to Grand Rapids before in my life.

18  Q.    Okay.  When--in the photograph here, you're obviously taking

19         it out of your car window and through his car window.

20  A.    Correct.

21  Q.    Was the conversation still at that point you saying hey, just

22         give me my money back and I'll leave kind of thing?

23  A.    Yes.

24  Q.    All right, and in the photograph you see that he's on the

25         phone as well.

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1   A.   Yeah.

2   Q.   Was he talking out loud so you could hear what he was saying

3        or acting like he was saying?

4   A.   Yeah, like he was talking to, you know, his--someone else to

5        bring down to, you know, to bring this girl who the story--

6        like someone assaulted her.

7   Q.   Okay.  So, you're still going on with the act of being a

8        police offer.

9   A.   Yes.

10  Q.   Okay.  At some point--and is this photograph taken in the

11       apartment complex driveway or parking lot?

12  A.   No.  It's just in the middle of the parking lot.  If you look

13       at the complex it was on the right side so the unit was all

14       the way to the right and this was in the middle right side

15       kind of towards the dumpster.

16  Q.   Okay, and you might have already covered this when you were

17       initially telling us the narrative, but what--did he leave in

18       the vehicle or did you pull away in the vehicle when you

19       finally said this was enough.

20  A.   Well, he left, you know, when I backed up to try and get a

21       picture of his license plate; he pulled away.  I called the

22       police.  Actually, I called him, you know, I had his number.

23       He answers the phone, I said, you know, bring me my money

24       down, and you know, or I was going to call the police and

25       that's exactly what I did.

                                    20

1    Q.   Okay, and the number that you called and said, hey, I'm going

2         to call the police, was that the one that you'd been texting?

3    A.   That was the--yes, the number I texted.  Yes.

4    Q.   Okay.  So from the same number you were getting directions

5         from the address--I'm sorry--from is the number that you

6         called and spoke with the person who still acted like a police

7         officer.

8    A.   Correct.

9              MR. EARLEY:  All right.  I don't believe I have any

10        additional questions at this time.

11             THE COURT:  Ms. Foster?

12             MS. FOSTER:  Yes, Your Honor.  Thank you.

13                     CROSS-EXAMINATION

14   BY MS. FOSTER:

15   Q.   Good afternoon, Mr. Isaacson.  You indicated that you were in

16        this area in--looking for some woman that you had found in an

17        ad, correct?

18   A.   Correct.

19   Q.   And isn't it true that initially you had told a story when you

20        were interviewed by the police that you were in the area

21        because you were lost and you were trying to find your way out

22        through a GPS unit, correct?

23   A.   Yes.

24   Q.   And part of that is because you knew you were doing something

25        illegal initially, correct?

                              21

1 A. No.

2 Q. You didn't know that you were doing anything illegally?

3 A. No.

4 Q. You didn't think going to an apartment building looking for a

5   booty call is illegal.

6 A. Well, that would be your opinion of what I was looking for, so

7   no.

8 Q. What were you looking for then?

9 A. I answered an ad for a massage.  So, I don't think this is

10   about me.

11 Q. Well, yeah.  It kind of is about you, too.

12 A. Is it?  Okay, why don't you explain to me how?

13 Q. You know, I know you're from out of state, but---

14 A. Right.

15 Q. --I ask the questions, you answer.  In your prospective, this

16   wasn't--what you were doing--there was nothing wrong with what

17   you were doing?

18 A. Well--

19 Q. --initially.

20 A. --I didn't say--so--state your question again.

21 Q. Initially, you were there in response to an ad for a massage,

22   correct?

23 A. Yes.

24 Q. And I saw the ad; it's been admitted into evidence.

25 A. Okay.

22

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1    Q.    Does that look--is that, in your opinion, an ad for a

2          legitimate massage?

3    A.    Yes.

4    Q.    They don't have massage parlors out in Illinois?

5    A.    Um--sure they do.

6    Q.    Okay.  But you were looking for a specific type of massage,

7          correct?

8    A.    No.

9    Q.    Oh, so the $150 was for somebody just to bang on your back and

10         do one of these little things with the karate chops on your

11         back; is that what you were looking for?

12   A.    Um--yes.

13   Q.    Okay, and when this guy first approached you and indicated

14         that he was the police, you initially believed him, right?

15   A.    I did.

16   Q.    And you initially believed him because you were actually there

17         looking to score with a prostitute and you knew you were doing

18         something wrong, isn't that true?

19   A.    No.  It was embarrassing for me going for a massage.  I'm

20         married and that's pretty much the end of the story.  So--

21   Q.    Well, there's nothing wrong with a married man going for a

22         massage if they're going for a legitimate massage.

23   A.    Okay.

24   Q.    All right, but let's be real.  You weren't going for a

25         legitimate massage here, were you?

                                    23

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1    A.    Uh, actually, I was but--

2              MR. EARLEY:  I'm going to object to the

3    argumentative nature at this point, Your Honor.

4              THE COURT:  Well, it's already been asked.  So,

5    let's move on.

6              MS. FOSTER:  Okay.  All right.

7    BY MS. FOSTER:

8    Q.    So, you initially thought this gentleman was a police officer

9          and it only became evident to you that you didn't believe him

10         to be a police officer when he took your money, correct?  Is

11         that a fair statement?

12   A.    No.

13   Q.    So when did you start to suspect he wasn't a real police

14         officer?

15   A.    When I asked for his identification and his badge.

16   Q.    And he didn't present something.

17   A.    That's correct.

18   Q.    Okay, and why did you lie to the police about why you were

19         here in Michigan in the first place, if what you did wasn't

20         wrong?

21   A.    I didn't lie to the police about why I was in Michigan.

22   Q.    Okay.  You said that you were here on business.

23   A.    Correct.

24   Q.    You said that the reason why you were in that parking lot was

25         because you had lost your way and you were trying to figure

24

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1        out where you were with your GPS?

2    A.   Okay, you're asking two different questions.  As far as I

3         didn't lie to anyone about being there.  It was embarrassing

4         for me--

5    Q.   Okay.

6    A.   --going for a massage and I felt uncomfortable and when I

7         talked to the detectives later, I, you know, told them

8         exactly, you know, the truth as far as what my reason for

9         being there.

10   Q.   Well, did you tell him or did he ask you?  You know, did he

11        say to you something along the lines of Mr. Isaacson, we

12        don't--don't be embarrassed about why you're here.  We're not

13        here to bust you for soliciting.  We're here--

14   A.   No, I told them.

15   Q.   --to bust the guy who robbed you.

16   A.   I told them.

17   Q.   Okay.

18   A.   I volunteered the information.

19   Q.   Okay, and how much money did you say was taken from you?

20   A.   I had probably between 475 and 5 and a quarter in my pocket.

21   Q.   Okay, and you had that much money in cash because that's what

22        you normally do?  You normally carry that much money in cash?

23   A.   I usually carry much more.

24             MS. FOSTER:  Okay.  A lot of lucky massage people in

25        Michigan and Illinois.  Thank you.

                              25

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1    THE COURT:  Anything else, Mr. Earley?

2    MR. EARLEY:  No, not from this witness, Your Honor.

3    THE COURT:  Thank you, sir.  You're free to go.

4    THE WITNESS:  Sure.

5    (At 2:16 p.m., witness excused)

6    MS. FOSTER:  Your Honor, may we approach?

7    THE COURT:  Sure.

8    (At 2:16, conference at bench)

9    MS. FOSTER:  Your Honor, I think we're going to go

10   ahead and waive the second.  Since the other gentleman, I

11   believe, lives in state and he could be available for

12   testimony at a later date pretty easily anyway, we'll waive

13   the preliminary examination.

14   THE COURT:  All right.

15   MS. FOSTER:  I think the main reason for taking this

16   other gentleman's testimony was to preserve it because he

17   doesn't live in state.

18   THE COURT:  I understand that.  Ms. Foster, if you

19   want to retrieve this form.

20   MS. FOSTER:  Yes, sir.

21   THE COURT:  Sir, you have a right to a preliminary

22   examination where it must be shown that there's probable cause

23   to believe you committed the crimes contained in the warrant.

24   Do you understand that?

25   THE DEFENDANT:  What did he say?

26

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1          MS. FOSTER:  He's saying that--

2          THE COURT:  I said you have a right to a preliminary

3    examination.

4          THE DEFENDANT:  I can't hear what you're saying.

5    You're not speaking loud enough, sir.

6          THE COURT:  Why don't you come up to the podium?

7          MS. FOSTER:  All right.

8          THE COURT:  What I'm telling you, sir, is that you

9    have a right to a preliminary examination.

10          THE DEFENDANT:  Oh, yeah.  I'm aware of that.

11          THE COURT:  Like we just did.

12          THE DEFENDANT:  Yeah.

13          THE COURT:  And your attorney is saying now that you

14    wish to waive the second one to continue negotiations in that

15    case.

16          THE DEFENDANT:  I understand.

17          THE COURT:  Is that your understanding?

18          THE DEFENDANT:  Yeah.

19          THE COURT:  Okay.  I find your waiver to be

20    knowingly and intelligently made.  I'll sign it after you.

21          MS. FOSTER:  We'll have him waive both circuit court

22    arraignments, Your Honor.  He's going to enter a plea of not

23    guilty for both, Your Honor.

24          THE COURT:  We will make that part of the record

25    when I receive it.

                              27

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1      MS. FOSTER:  And at the appropriate time--at the

2  appropriate time I'd like to address bond?

3      THE COURT:  Sure.  Go ahead.

4      MS. FOSTER:  The bond, I believe, is currently set

5  at--

6      THE COURT:  25,000 cash and $50,000 cash.

7      MS. FOSTER:  --okay.  Different bonds, different

8  cases.  We would ask the Court if it would consider a

9  modification of both of these bonds.  Mr. Heath has ties to

10  the community.  Are any of these people relatives of yours?

11      THE DEFENDANT:  Yeah

12      MS. FOSTER:  Are these your family members here?

13      THE DEFENDANT:  Yeah.

14      MS. FOSTER:  Okay, there are a lot of family in the

15  courtroom.  He's got a lot of family support.  I don't think

16  he poses any kind of a flight risk.  I'm going to have to

17  finish filling these out but I'll sign this at least.  Um--and

18  based on those factors, Your Honor, we would ask the Court to

19  consider reduction of bond.  Thank you.

20      THE COURT:  All right.  Thank you.  I'm going to

21  respectfully deny that motion because there's a long criminal

22  history, five felony convictions, three bench warrants,

23  probation violations, eleven misdemeanors, and has another

24  case pending for aggravated stalking.  So, I think the bonds

25  are appropriate as set and I'll continue them.  Thank you.

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

1   MS. FOSTER:  Okay.

2   MR. EARLEY:  Your Honor, can I get some

3   clarification, I guess, on what was waived and what was not?

4   THE COURT:  Case number 11FY-4743 was waived.

5   MR. EARLEY:  Okay.

6   THE COURT:  And we ran the 4668.

7   MR. EARLEY:  All right.  Do you want argument on

8   that case--on that file number then or--

9   THE COURT:  If you'd like.  Do you have a motion?

10   MR. EARLEY:  Well, I do.  It--assuming that that

11   file number was not waived and we took testimony for each

12   party's benefit, I'm going to ask for an added count of

13   impersonating a police officer on that file as well.

14   MS. FOSTER:  I thought there was already an

15   impersonating a police officer on that file.

16   MR. EARLEY:  Not on that file.  Not on that file

17   number.

18   MS. FOSTER:  Well, if I--if he waives that one,

19   because I believe we were just taking testimony to preserve,

20   if he waives that one, will you--are you going to seek a bind

21   over on that or is that just--

22   MR. EARLEY:  No.  If he's waiving, I won't seek to

23   add it.  If he's not waiving it, then I believe the

24   testimony--I believe the information should conform to the

25   proofs taken.

STATE OF MICHIGAN)
                 )
COUNTY OF KENT    )

      I certify that this transcript, consisting of 31 pages, is a complete, true, and correct transcript of the preliminary examination and testimony taken in this case on December 14, 2011.


Lori Hinueber - CER 8269
Certified Electronic Recorder
      (616) 530-7378

RECEIVED by Michigan Court of Appeals 1/4/2013 11:59:44 AM

## Court of Appeals, State of Michigan

## ORDER

People of MI v Kelvin Wayne Heath

Docket No.     310897

LC No.          11-011910-FH; 11-011911-FH

Jane M. Beckering
Presiding Judge

Jane E. Markey

Mark T. Boonstra
Judges

The Court orders that the motion to remand is DENIED for failure to persuade the Court of the need for a remand at this time.



A true copy entered and certified by Larry S. Royster, Chief Clerk, on

**FEB 1 2 2013**
_____
Date


Chief Clerk

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Cover Sheet** | *CASE NO.* | | |
|---|---|---|---|---|
| | | | Year | Number | Case Type |
| KENT CIRCUIT COURT | | CIRCUIT: | 11 | 011910 | FH |
| | | COURT OF APPEALS: | 310897 | | |

### Filing Party

| Filing Party Last Name or Business/Entity/Agency Name | Attorney Last Name |
|---|---|
| HEATH KELVIN WAYNE | Bremer |

| Filing Party First Name | M.I. | Attorney First Name | M.I. | P Number |
|---|---|---|---|---|
| | | Daniel | D. | 23554 |

Address (Street 1, Street 2, City, State, and ZIP Code)

Address (Street 1, Street 2, City, State, and ZIP Code)

1133 E. Bristol Road

Burton   MI   48529

Attorney Telephone Number

(810)232-6231

### Summary of Items Filed

| Type | Filename/Description | Filing Fee | Doc Fee | Total This Filing |
|---|---|---|---|---|
| Assessed Costs | Defendant-Appellant's Standard 4 Brief | $5.00 | ---- | $5.00 |
| | | **3% Service Fee:** | | $0.15 |
| | | **Total All Filings:** | | $5.15 |

**Fee Substitute/Alternate Payment**

**Reason:**

| X | **Appointed Counsel** |
|---|---|
| | **Motion To Waive Fee** |
| | **Fees Waived in this Case** |
| | **MI InterAgency Transfer** |
| | **No Fee per MCR 7.203(F)(2)** |

**Filer Office Use Only:**   310897

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.
310897 - 310493

RECEIVED by Michigan Court of Appeals 3/2/2013 7:09:14 PM

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Proof of Service** | *CASE NO.* | | |
|---|---|---|---|---|
| | | CIRCUIT: | Year **11** | Number **011910** | Case Type **FH** |
| KENT CIRCUIT COURT | | COURT OF APPEALS: | **310897** | |

Case Name:  PEOPLE OF MI V KELVIN WAYNE HEATH

On   3/2/2013   , one copy of the following documents:

Assessed Costs                    Defendant-Appellant's Standard 4 Brief

was delivered to the persons listed below:

Date
  3/2/2013

Signature
  /s/Daniel D. Bremer

| Bar Number | Name | Delivery Method | Service Address |
|---|---|---|---|
| P- 23770 | Forsyth, William A. | Mail | 82 Ionia Avenue NW; Suite 450; Grand Rapids, MI 49503 |

*RECEIVED by Michigan Court of Appeals 3/2/2013 7:09:14 PM*

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

STATE OF MICHIGAN

IN THE COURT OF APPEALS

PEOPLE OF THE STATE
OF MICHIGAN,

                 Plaintiff-Appellee,           Docket No. 310897

vs                                 Lower Court File Nos.  11-011910-FH
                                                      11-011911-FH

KELVIN WAYNE HEATH,

                 Defendant-Appellant.

_____/

William A. Forsyth (P-23770)          Kelvin Heath
Prosecuting Attorney                In Pro Per
82 Ionia Avenue, NW, Ste. 450       # 199603
Grand Rapids, Michigan 49503      Saginaw Correctional Facility
(616) 632-6710                     9625 Pierce Road
                                 Freeland, Michigan 48623

**<u>SUPPLEMENTAL STANDARD 4 BRIEF</u>**

Kelvin Wayne Heath
in pro per
# 199603
Saginaw Correctional Facility
9625 Pierce Road
Freeland, Michigan 48623

RECEIVED by Michigan Court of Appeals 3/2/2013 7:09:14 PM

## TABLE OF CONTENTS

Index of Authorities....................................................................................................i

Argument

      INEFFECTIVE COUNSEL..............................................................................1

Relief Requested........................................................................................................3

## INDEX OF AUTHORITIES

### Cases

*Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986)............................3

*Booker v Jabe*, 775 F2d 762 (CA 6, 1985).......................................................................3

*Strauder v West Virginia*, 100 US 303; 25 L Ed 664 (1880)...........................................3

*Swain v Alabama*, 380 UA 202; 85 S Ct 824; 13 L Ed 759 (1965)................................3

*United States v Koblitz*, 803 F2d 1523 (CA 11, 1986)...................................................2

*United States v Perez*, 325 F3d 115 (CA 2, 2003).........................................................2

*United States v Schwarz*, 283 F3d 76 (CA 2, 2002)......................................................2

### **Michigan Rules of Professional Conduct**

MRPC 1.1(b).....................................................................................................................2

MRPC 1.1(c).....................................................................................................................2

MRPC 1.3..........................................................................................................................2

MRPC 1.4..........................................................................................................................2

RECEIVED by Michigan Court of Appeals 3/2/2013 7:09:14 PM

**<u>West Digest</u>**

Crim. Law 641.5(.5)............................................................................................2

Crim. Law 641.5(5).............................................................................................2

Crim. Law 641.5(7).............................................................................................2

Crim. Law 641.10(1)...........................................................................................2

Crim. Law 641.13(1)...........................................................................................2

## <u>STATEMENT OF QUESTION PRESENTED FOR REVIEW</u>

Was the Defendant-Appellant's counsel ineffective?

Defendant-Appellant would answer "yes."

The trial court would answer "no."

## <u>STATEMENT OF APPLICABLE STANDARDS OF REVIEW</u>

The applicable standards are set forth in the argument portion of this brief.

RECEIVED by Michigan Court of Appeals 3/2/2013 7:09:14 PM

## ARGUMENT

**INEFFECTIVE COUNSEL**

Trial attorney Ms. Valerie Foster failed to adequately investigate my case. 1) Counsel never interviewed, or called, my witnesses as I instructed to refute Prosecutor's argument. 2) Counsel never contacted the casino as I instructed. My family members called the public defender's office and informed said counsel's office that the casino would not release information. unless it was petitioned by the court or an attorney. This information was passed on three months before my trial. 3) Never discussed a strategy, or even sat down to go over my case other than to bring my three different plea bargains at court appearances – which were our only meetings. Attorney Valerie Foster was disappointed and highly upset that I refused to take a plea bargain to the point that it reflected in her comments throughout my two day trial. I am alleging that I was prejudiced by my trial attorney's performance due to her conflicting interest, coupled with expediting trials, forceful pleas, committing misconduct simply to meet her constitutional obligation. Under color of state law she had a duty to make reasonable investigations and representation. There was no dedication or commitment acts done in my interest (other than asking for a directed verdict!). The guiding principle is that a lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interest and consistent with the client's overall requirements as to the character of representation. I appellant further state that I wrote several letters to trial attorney Foster three, four months before the trial date instructing her to contact those witnesses and the casino. I also wrote Judge Buth on five different occasions, one being to make sure that the arguments that I and my attorney had in his courtroom were preserved on record. Michigan Rules of Court states that a trial attorney shall maintain and keep a file of client's notation, communications, etc for up

RECEIVED by Michigan Court of Appeals 3/2/2013 7:09:14 PM

to five years. I ask the Michigan Court of Appeals to request that trial attorney Valerie Foster

turn over her file to the appellate office along with my letters of communication to her to re-

enforce my claim. Although it is clear in the transcripts that my attorney and I are having

problems the judge never investigated to determine the problem. I cite *United States v Perez*,

325 F3d 115 (CA 2, 2003); Crim. Law 641.5(.5); 641.10(1) and 641.5(7), 641.10(1); *United*

*States v Schwarz*, 283 F3d 76 (CA 2, 2002); Crim. Law 641.13(1) and 641.5(5); *United States v*

*Koblitz*, 803 F2d 1523 (CA 11, 1986) 32(14) specifically footnote 2, # 13.

    MRPC 1.4, also MRPC 1.1(b) and MRPC 1.1(c) as well as MRPC 1.3. Attorney Valerie

Foster violated all three named rules.

    I Kelvin Heath further that I instructed trial attorney Valerie Foster to inform the jury that

I have three prior drug convictions which are my only felony convictions. I have no history of

violence. To demonstrate robbery is out of character. I also instructed her to put on record I was

against how the jury process was done. I am alleging attorney Valerie Foster engaged in

misconduct due to my writing to the judge complaining about her representation, coupled with

my accusing her of conspiring with the prosecutor – the transcripts reflect her snide comments

very unbecoming and re-enforce my claim of ineffective performance. The jury had a question

that I was told my by attorney it was important nor did the judge enlighten me to what this

question was ??? Nor did they feel the need to put it on record this is why I asked Judge Buth

who is here to make sure I received a fair trial. I wrote Honorable Judge Buth on March 17,

2012 letting him know I had seven questions for trial attorney Foster. He only allowed me to ask

two of them before he cut me off while I'm going on record for appeal purposes.

    I challenge the procedure conducted to panel my jury and the prosecutor's selective

method of excluding the four Blacks on the panel simply because of race. I'm alleging Sixth

Amendment violations as well as Fourteenth due to purposeful discrimination in the selection of

-2-

the venire also substantially underrepresented on the venire from which my jury was drawn. the

venire was selected under a practice providing the opportunity for discrimination. This

combination of factors raises the necessary inferences of purposeful discrimination.

    I cite the following: *Booker v Jabe*, 775 F2d 762 (CA 6, 1985); *Swain v Alabama*, 380

UA 202; 85 S Ct 824; 13 L Ed 759 (1965); *Strauder v West Virginia*, 100 US 303; 25 L Ed 664

(1880); *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

    In 1994 a professor at Grand Valley State University brought to the attention the

systematic way in which Kent County selected its jurors. As a result a new system was

instituted. I'm alleging said system has resurfaced.

    Although my attorney did not preserve these issues I raise I ask this Court of Appeals to

intervene to to I am alleging ineffective assistance of counsel.

    I request a stay of judgment to release my on bail or on my own recognizance.

              Respectfully submitted,

Dated: 2-27-13

              Kelvin Heath
              Kelvin Heath
              # 199603
              Saginaw Correctional Facility
              9625 Pierce Road
              Freeland, Michigan 48623

RECEIVED by Michigan Court of Appeals 3/2/2013 7:09:14 PM

-3-

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Cover Sheet** | *CASE NO.* | |
|---|---|---|---|
| KENT CIRCUIT COURT | | CIRCUIT: | Year **11** Number **011910** Case Type **FH** |
| | | COURT OF APPEALS: | **310897** |

<div align="center"><i>Filing Party</i></div>

| Filing Party Last Name or Business/Entity/Agency Name | Attorney Last Name |
|---|---|
| PEOPLE OF MI | Manns |

| Filing Party First Name | M.I. | Attorney First Name | M.I. | P Number |
|---|---|---|---|---|
| | | Kimberly | M | 67127 |

Address (Street 1, Street 2, City, State, and ZIP Code)

Address(Street 1, Street 2, City, State, and ZIP Code)
82 Ionia Ave NW
Suite 450
Grand Rapids   MI   49503

Attorney Telephone Number
(616)632-6672

<div align="center"><i>Summary of Items Filed</i></div>

| Type | Filename/Description | Filing<br>Fee | Doc<br>Fee | Total<br>This Filing |
|---|---|---|---|---|
| Brief | Plaintiff-Appellee's Brief on Appeal | $5.00 | $0.00 | $5.00 |

| | | | |
|---|---|---|---|
| | | **3% Service Fee:** | $0.15 |
| **Fee Substitute/Alternate Payment** | | **Total All Filings:** | $5.15 |

**Reason:**

- [ ] **Appointed Counsel**
- [ ] **Motion To Waive Fee**
- [ ] **Fees Waived in this Case**
- [ ] **MI InterAgency Transfer**
- [ ] **No Fee per MCR 7.203(F)(2)**

**Filer Office Use Only:**   11-11910-FH 11-11911-FH

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.
310897 - 337756

| Lower Court or Tribunal | **STATE OF MICHIGAN**<br>**IN THE COURT OF APPEALS**<br>**Proof of Service** | *CASE NO.* | | |
|---|---|---|---|---|
| KENT CIRCUIT COURT | | CIRCUIT: | Year: 11 | Number: 011910 | Case Type: FH |
| | | COURT OF APPEALS: | 310897 | |

Case Name:   PEOPLE OF MI V KELVIN WAYNE HEATH

On   7/29/2013   , one copy of the following documents:

Brief                              Plaintiff-Appellee's Brief on Appeal

was delivered to the persons listed below:

Date
7/28/2013

Signature
/s/Kimberly M. Manns

| | Bar Number | Name | Delivery Method | Service Address |
|---|---|---|---|---|
| P- | 23554 | Bremer, Daniel D. | E-Serve | dbremer@toast.net |
| P- | | Heath, Kelvin Wayne | Mail | Saginaw Correctional Facility #199603; 9625 Pierce Road; Freeland, MI 48623 |

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

The documents listed above were electronically filed with the Michigan Court of Appeals at the date/time stated in the left margin.  As a recipient of service of these documents, you may wish to go to https://wiznet.wiznet.com/appealsmi to register as a user of the electronic filing system.

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

S T A T E   O F   M I C H I G A N

IN THE COURT OF APPEALS

PEOPLE OF THE STATE
OF MICHIGAN,

                    Plaintiff-Appellee,                          Court of Appeals
                                                                 No. 310897

v

KELVIN WAYNE HEATH                                Kent County Circuit
                                                  Court Nos. 11-11910-FH
                                                                   11-11911-FH

                    Defendant-Appellant.

_____/

**PLAINTIFF-APPELLEE'S BRIEF ON APPEAL**

**ORAL ARGUMENT REQUESTED**

William A. Forsyth (P 23770)
Kent County Prosecuting Attorney

Timothy K. McMorrow (P 25386)
Chief Appellate Attorney

Kimberly M. Manns (P 67127)
Assistant Prosecuting Attorney

Business Address:
82 Ionia NW
Suite 450
Grand Rapids, Mi 49503
(616) 632-6710

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ....................................................................................... ii

STATEMENT OF APPELLATE JURISDICTION .................................................... iv

COUNTER-STATEMENT OF QUESTIONS PRESENTED ...................................... v

COUNTER-STATEMENT OF FACTS ......................................................................1

ARGUMENT ..............................................................................................................2

    I ...............................................................................................................................2

        Defendant has waived this issue.  Defense counsel did not object to the admission of a witness's prior testimony until after the prosecution had rested its case.  Instead, counsel played an active role in the introduction of the testimony and stated that she had no objection to exhibits admitted during that testimony.

    II .............................................................................................................................9

        Defendant used an advertisement to lure potential victims to an apartment complex for what they believed would be a sensual massage and then, by impersonating a police officer, used that false authority to rob them. During the investigation, defendant provided false information to the police.  This pre-offense conduct and use of authority constitute predatory conduct supporting the scoring of OV 10 at 15 points, and defendant's false information to police supports a scoring of OV 19 at 10 points.

    III...........................................................................................................................13

        Defendant's general claims of ineffective assistance of counsel are unsupported by the record.  Defendant's trial counsel moved the court for a reduction of bond, objection to the consolidation at trial of the two cases, moved for a directed verdict, extensively cross-examined the witnesses, and made what closing argument she could given the evidence against defendant.  Defendant has failed to demonstrate any ineffective assistance of counsel.

RELIEF REQUESTED ..............................................................................................18

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

# INDEX OF AUTHORITIES

**Cases**

*Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L.Ed.2d 177 (2004) .................5

*People v Babcock*, 469 Mich 247; 666 NW2d 231 (2003) ................................2

*People v Barbee*, 470 Mich 283; 681 NW2d 348 (2004) .........................11, 12

*People v Bean,* 457 Mich 677; 580 NW2d 390 (1998)..............................2, 5

*People v Carter,* 462 Mich 206; 612 NW2d 144 (2000) ..............................3, 6

*People v Dixon*, 263 Mich App 393; 688 NW2d 308 (2004) ...........................14

*People v Dye*, 431 Mich 58; 427 NW2d 501 (1988) ......................................5

*People v Fackelman*, 489 Mich 515; 802 NW2d 502 (2011) ...............................5

*People v Grant,* 455 Mich 221; 565 NW2d 389 (1997) .....................................9

*People v Horn*, 279 Mich App 31; 755 NW2d 212 (2008) ..............................14

*People v Hornsby*, 251 Mich App 462; 650 NW2d 700 (2002) ...........................9

*People v Huston,* 489 Mich 451; 802 NW2d 261 (2011) ..............................10

*People v Katt*, 468 Mich 272; 662 NW2d 12 (2003).........................................2

*People v Kelly,* 231 Mich App 627; 588 NW2d 480 (1998) ..............................17

*People v LeBlanc,* 465 Mich 575; 640 NW2d 246 (2002) ..............................13

*People v Matuszak*, 263 Mich App 42; 687 NW2d 342 (2004)..........................14

*People v Nash*, 244 Mich App 93; 625 NW2d 87 (2000)..................................4

*People v Passage*, 277 Mich App 175; 743 NW2d 746 (2007)..........................12

*People v Pollick*, 448 Mich 376; 531 NW2d 159 (1995) ..............................3, 6

*People v Portellos,* 298 Mich App 431; 827 NW2d 725 (2012) ........................12

*People v Rodgers,* 248 Mich App 702; 645 NW2d 294 (2001)..........................13

*People v Smith*, 488 Mich 193; 793 NW2d 666 (2010)......................................................11

*People v Steele*, 283 Mich App 472; 769 NW2d 256 (2009) ............................................11

*People v Uphaus (On Remand),* 278 Mich App 174; 748 NW2d 899 (2008) ....................9

*People v Wilson*, 242 Mich App 350; 619 NW2d 413 (2000) ...........................................13

**Statutes**

MCL 777.40 ...............................................................................................................10

MCL 777.49 ...........................................................................................................11, 12

**Rules**

MRE 609 ...................................................................................................................17

MRE 804(a)(5) ............................................................................................................5

MRE 804(b)(1) .........................................................................................................2, 5

**Treatises**

1 Cooley, Constitutional Limitations (8th ed) ................................................................5

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

**STATEMENT OF APPELLATE JURISDICTION**

  The People accept Defendant-Appellant's Statement of Appellate Jurisdiction, and accept that this matter is before the Court as an appeal of right.

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

## COUNTER-STATEMENT OF QUESTIONS PRESENTED

I. **DEFENSE COUNSEL DID NOT OBJECT TO THE ADMISSION OF A WITNESS'S PRIOR TESTIMONY UNTIL AFTER THE PROSECUTION HAD RESTED ITS CASE. INSTEAD, COUNSEL PLAYED AN ACTIVE ROLE IN THE INTRODUCTION OF THE TESTIMONY AND STATED THAT SHE HAD NO OBJECTION TO EXHIBITS ADMITTED DURING THAT TESTIMONY. DO THESE ACTIONS CONSTITUTE WAIVER OF THIS ISSUE?**

> The Trial Court was not presented with this question.
> Defendant-Appellant answers, "No."
> Plaintiff-Appellee answers, "Yes."

II. **DEFENDANT USED AN ADVERTISEMENT TO LURE POTENTIAL VICTIMS TO AN APARTMENT COMPLEX FOR WHAT THEY BELIEVED WOULD BE A SENSUAL MASSAGE AND THEN, BY IMPERSONATING A POLICE OFFICER, USED THAT FALSE AUTHORITY TO ROB THEM. DURING THE INVESTIGATION, DEFENDANT PROVIDED FALSE INFORMATION TO THE POLICE. DID THIS PRE-OFFENSE CONDUCT AND USE OF AUTHORITY CONSTITUTE PREDATORY CONDUCT SUPPORTING THE SCORING OF OV 10 AT 15 POINTS, AND DID DEFENDANT'S FALSE INFORMATION TO POLICE SUPPORT A SCORING OF OV 19 AT 10 POINTS?**

> The Trial Court was not presented with this question.
> Defendant-Appellant answers, "No."
> Plaintiff-Appellee answers, "Yes."

III. **DEFENDANT'S TRIAL COUNSEL MOVED THE COURT FOR A REDUCTION OF BOND, OBJECTION TO THE CONSOLIDATION AT TRIAL OF THE TWO CASES, MOVED FOR A DIRECTED VERDICT, EXTENSIVELY CROSS-EXAMINED THE WITNESSES, AND MADE WHAT CLOSING ARGUMENT SHE COULD GIVEN THE EVIDENCE AGAINST DEFENDANT. HAS DEFENDANT FAILED TO DEMONSTRATE ANY INEFFECTIVE ASSISTANCE OF COUNSEL?**

> The Trial Court answered, "Yes."
> Defendant-Appellant answers, "No."
> Plaintiff-Appellee answers, "Yes."

**COUNTER-STATEMENT OF FACTS**

The People generally accept Defendant-Appellant's Statement of Facts and will discuss any necessary additions/corrections within the argument sections.

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

## ARGUMENT

**I.** **Defendant has waived this issue.  Defense counsel did not object to the admission of a witness's prior testimony until after the prosecution had rested its case.  Instead, counsel played an active role in the introduction of the testimony and stated that she had no objection to exhibits admitted during that testimony.**

**Standard of Review:**  As noted by defendant, *preserved* evidentiary issues are reviewed for an abuse of discretion.  *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003).  And, specifically, a trial court's determination that a witness is "unavailable" for purposes of allowing prior testimony under MRE 804(b)(1) is typically reviewed for an abuse of discretion.  *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998).  A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes.  *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

However, in the present case, defendant did not properly preserve this issue for review.  At the time that the trial court decided to admit the testimony, the prosecution confirmed that the witness lived out-of-state and was not present before the court indicated that it would allow his prior sworn testimony to be read into the record (Tr I, 129-130).  At no point prior to the admission of that evidence did defense counsel object (Tr I, 130-131).  Instead, defense counsel confirmed that she was present at the prior hearing and agreed with the prosecution that the trial court should take judicial notice of the date and court in which the hearing was conducted (Tr I, 130).  Defense counsel then played her part during the reading of the testimony (Tr I, 130).  In the midst of the reading, the prosecution sought to admit two exhibits, one of which is the picture of defendant taken by the witness/victim Barry Isaacson just after the offense (Tr I, 131).  When asked whether she was objecting to the admission of either exhibit, defense counsel replied, "I

2

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

want the record to accurately reflect that we are obviously reading a transcript from an earlier proceeding.  At the time when the prosecutor asked if these two exhibits could be admitted, I did not object to them because the actual witness was on the stand and could testify to their veracity.  Since we don't have that actual witness today, but it's an exact rendition of what was said on that - - during that earlier proceeding under oath, I will not object to the admission of these two documents" (Tr I, 131).  Defense counsel did not object before the admission of the testimony and exhibits and, instead, was an active participant in that admission.  It wasn't until after the prosecutor had rested his case that defense counsel moved for a mistrial based upon the admission of Mr. Isaacson's prior testimony.

Given defense counsel's actions – not objecting to the admission, confirming her presence at the original hearing, actively participating in the testimony's introduction and agreeing with the further admission of two photographs during the reading – the People first maintain that defendant has waived this issue.  Counsel may not harbor error as an appellate parachute.  *People v Carter,* 462 Mich 206, 214; 612 NW2d 144 (2000), citing *People v Pollick*, 448 Mich 376, 387; 531 NW2d 159 (1995).  The proper time to preserve this issue would have been when the court and prosecutor first discussed admitting the evidence.  Had defense counsel objected at that time, the trial court could have obtained further information concerning Mr. Isaacson's unavailability and the prosecution's efforts to secure his presence.  Instead, defense counsel said nothing against the admission of Mr. Isaacson's prior testimony and, in fact, participated in its introduction into evidence.

If this Court disagrees and does not find that the issue has been waived, it is nevertheless unpreserved where there was no objection at the time of the admission of the evidence.  Defense counsel's late action of moving for a mistrial does not preserve the issue for review because she

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

did not request the mistrial at the time of the alleged error but, rather, waited until the prosecution had rested its case; thus, this issue is unpreserved and this Court reviews such unpreserved issues for plain error affecting substantial rights. *People v Nash*, 244 Mich App 93, 96; 625 NW2d 87 (2000).  Under that standard of review, reversal is only warranted when plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence.  *Id.*

**Discussion:**  Defendant argues that the trial court erred in admitting the prior testimony of unavailable witness Barry Isaacson because the prosecution failed to show due diligence in attempting to produce the witness (Defendant's brief, 8-12).  This argument lacks merit.  First, as noted above, the People maintain that this issue has been waived.  Regardless, defendant is unable to demonstrate plain error in the present case.  Isaacson, an out-of-state traveling salesman, was subpoenaed for trial; he received the subpoena, but informed the Victim/Witness contact on the day of trial that he was not going to be there.  Furthermore, defense counsel cross-examined Isaacson extensively during the preliminary hearing and used his absence from trial to argue to the jury that his prior testimony was not credible.  Evidence of defendant's actual guilt was substantial.  Victim Brian Gray identified defendant during a physical lineup and again at trial as the individual who impersonated an officer to rob him and victim Isaacson's photo taken of defendant immediately following defendant's impersonation of an officer to rob him was admitted without objection from the defense even when given the specific opportunity to do so.  Defendant has not demonstrated plain error affecting his substantial rights under these circumstances.

4

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

Under MRE 804(b) and the Sixth Amendment Confrontation Clause, former testimony is admissible at trial if the declarant is unavailable and the defendant had a prior opportunity and similar motive to cross-examine the declarant.  MRE 804(b)(1); See *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L.Ed.2d 177 (2004).  A declarant is unavailable when the declarant "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means, and in a criminal case, due diligence is shown."  MRE 804(a)(5).  Our Supreme Court has given examples of unavailable witnesses, including when "the witness has since deceased, or *has left the State*, or is insane, or sick and unable to testify...."  *People v Fackelman*, 489 Mich 515, 528–529; 802 NW2d 502 (2011) (emphasis added), quoting 1 Cooley, Constitutional Limitations (8th ed), p 664.  Where the prosecution used due diligence in attempting to produce the absent witness, the use of their preliminary examination testimony as substantive evidence at trial does not violate the defendant's right to confront the witness.  *People v Bean*, 457 Mich 677, 682–683; 580 NW2d 390 (1998).  "The test for due diligence is one of reasonableness, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it."  *Bean, supra,* at 684.  The reasonableness of the prosecution's efforts is determined by the facts and circumstances of each case.  *People v Dye*, 431 Mich 58, 67; 427 NW2d 501 (1988), cert den sub nom *Michigan v Dye*, 488 US 985; 109 S Ct 541; 102 L Ed 2d 571 (1988).

First and foremost, the People maintain that this issue has been waived.  As noted above, defense counsel not only did not object to the admission of these evidence when it was offered, she actively participated in its introduction and, further, specifically stated that she did not object to the admission of exhibits – one of which is the picture of defendant taken by witness Isaacson immediately after defendant robbed him – during the admission of the preliminary examination

testimony (Tr I, 129-131).  Counsel may not harbor error as an appellate parachute.  *Carter,*

*supra,* 462 Mich at 214, citing *Pollick*, *supra,* 448 Mich at 387.  Under the circumstances of this

case, defense counsel's actions demonstrate her approval of the trial court's handling of the

testimony despite her belated motion for a mistrial based upon the same.

Regardless, defense counsel's late motion does not serve to properly preserve this issue

for appellate review; therefore, even if this Court disagrees with the People's waiver argument,

this issue should be reviewed for plain error.  While the People took the precaution of securing

Mr. Isaacson's testimony during the preliminary examination because he lives out-of-state and

had been less than cooperative (PE Tr, 3, 26; Tr I, 170), it was not until the day of trial that the

People were made aware that the witness was not going to show up for trial (Tr I, 171).  Isaacson

was aware of the trial date, having received a subpoena (Tr I, 171), and had indicated during an

earlier phone interview with Officer Phillip Swiercz that, regarding the trial, "if I can make it, I'll

make it…."  (Tr II, 19).

Furthermore, the record demonstrates that defense counsel was aware that the witness

lived out-of-state and extensively cross-examined him during the preliminary examination (PE

Tr, 3, 26).  Indeed, in her opening and closing statements, defense counsel used Isaacson's

absence as a main reason for the jury to disbelieve his testimony.  In her opening, defense

counsel noted Isaacson's prior testimony and that he was not believable then urged the jury to

consider the fact that he did not show up to testify when considering that testimony, stating in

part, "The reason why he is not here is because he refuses to answer to a subpoena by the

prosecution to be here.  Consider that, too, folks.  You have every right to do so" (Tr I, 101).

During her closing, defense counsel argued, "if you were a victim of an - - of what somebody is

accusing to be an unarmed robbery, if somebody threw you - - supposedly threw you up against a

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

wall and took money from you, almost $400 from you of hard-earned money …. Wouldn't you show up to testify at the trial?  Consider that, folks" (Tr II, 45-46).  She later added, "The fact that one of the individuals who is the supposed victim of this case, the reason why we're all here, couldn't take a day out of his life to make sure that justice is done is telling" (Tr II, 46).  Isaacson's absence was used repeatedly as a way to diminish the value of his testimony.

Yet the evidence of defendant's actual guilt was overwhelming even without Isaacson's testimony.  Officer Donald VerHage testified that he took information from Barry Isaacson back on November 29, 2011, concerning a robbery and, after receiving further information from Detective Philip Swiercz, who recognized the details of the robbery as being the same in his separate case involving victim Brian Gray, VerHage found defendant and then identified defendant as matching the picture Isaacson had taken of the individual who had just robbed him (Tr I, 133-134; 136, 138).  The phone number used to contact Isaacson was found to be defendant's phone number (Tr I, 143).  Detective Swiercz testified that a physical lineup was viewed by victim Gray in which he picked defendant out as his assailant and, after obtaining defendant's phone records, it was confirmed that defendant's phone had communicated with both victims' phones (Tr I, 154-155).  Gray testified that he had responded on November 14th to an advertisement on backpage.com for a massage and was supposed to meet a female at an apartment complex for the massage (Tr I, 103-104).  As Gray walked to the apartment, a man he later identified as defendant walked from the other direction and told him there was a "sting" operation looking for a rapist in the area, asked Gray for ID, took Gray's wallet, patted him down, then later told Gray he did not fit the description of the rapist and gave him his wallet back (Tr I, 105).  When Gray got back to his car, he checked his wallet and found his money missing – $300 (Tr I, 106).  Gray admitted that he did not initially tell the police the truth of what had

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

happened because he was embarrassed but he helped with a sketch of his assailant and later observed a physical lineup and identified defendant during the lineup (Tr I, 107-109).  At trial, Gray identified defendant as the person who did this to him (Tr I, 113).

Officer Dennis Ferguson testified that defendant's statement constantly changed during his interview with police concerning Isaacson's robbery (Tr I, 161).  Defendant claimed he was home all day of  November 29th with an exception of driving his daughter to Mel Trotter, then stated he had pulled into the parking lot of the apartment complex [where the robbery took place] to turn around and did not encounter anyone (Tr I, 162).  He later said he did encounter someone – that a white or Hispanic male yelled an obscenity at him (Tr I, 164).  Defendant admitted that the phones found on his person were his phones and said no one else had access to them but then later changed his story and said a friend named Sheila was with him around 1:30 p.m. and may have used one of his phones (Tr I, 163).  This conflicted with his statement that he had been with his daughter that day from 12:45 - 1:45 p.m. (Tr I, 163).  When asked by the officer where Sheila came from and where she went, defendant had no answer (Tr I, 163).  Defendant added a third person to his story named Booter (Tr I, 163).  Officers never located defendant's daughter or the female called Booter (Tr I, 164).  At trial, defendant admitted that he had lied to police then characterized his statement as a "fib" stating, "We gonna say a 'fib.' We ain't gonna say a 'lie,' we're gonna say a 'fib'" (Tr I, 194, 196).

Under the above circumstances, even if this Court determines that the trial court erred in finding that due diligence was used in attempting to secure Barry Isaacson's appearance, defendant has failed to demonstrate that any error affected his substantial rights.  The evidence against defendant in both cases was overwhelming even without Isaacson's specific testimony.  Again, the People argue that this issue has been waived; however, even if this Court disagrees

with our waiver argument, in the end, this is simply not a case in which an error "resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." Defendant is not entitled to a new trial.

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

II.    **Defendant used an advertisement to lure potential victims to an apartment complex for what they believed would be a sensual massage and then, by impersonating a police officer, used that false authority to rob them. During the investigation, defendant provided false information to the police. This pre-offense conduct and use of authority constitute predatory conduct supporting the scoring of OV 10 at 15 points, and defendant's false information to police supports a scoring of OV 19 at 10 points.**

**Standard of Review:** The Circuit Court has discretion in determining the number of points to be scored for a particular sentencing variable provided that there is evidence on the record which adequately supports a particular score. *People v Endres,* 269 Mich App 414, 417; 711 NW2d 398 (2006), citing *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002). The Court is entitled to rely on the information in the presentence report, which is presumed to be accurate unless the defendant effectively challenges the accuracy of the factual information, *People v Grant,* 455 Mich 221, 233-234; 565 NW2d 389 (1997), and the rules of evidence do not apply, *People v Uphaus (On Remand),* 278 Mich App 174, 183-184; 748 NW2d 899 (2008).

**Discussion:** Defendant argues that the trial court abused its discretion in scoring offense variables 10 and 19. This argument lacks merit. Defendant placed an advertisement to lure individuals wanting a "massage" to an apartment complex then posed as a police officer in order to use that false authority to rob his victims. This pre-offense conduct targeted individuals who

1) would be vulnerable and less likely to report the offense due to their intended conduct, i.e., receiving what they believed would be a sensual massage if not sexual favor in exchange for money and 2) defendant then used his "authority" by impersonating a police officer in order to subdue his victims. Such conduct supports the scoring of OV 10. Furthermore, defendant admitted to lying to the police officers attempting to investigate the crime thereby supporting the scoring of OV 19. The trial court did not abuse its discretion in scoring either of these offense variables.

Defendant first argues that the trial court abused its discretion in scoring 15 points under OV 10 for predatory conduct (Defendant's brief, 14-15). MCL 777.40 concerns the exploitation of vulnerable victims and provides for a score of 15 points where predatory conduct was involved in an offense. MCL 777.40(1)(a). "Predatory conduct" is defined as "preoffense conduct directed at a victim for the primary purpose of victimization. MCL 777.40(3)(a). In *People v Huston,* 489 Mich 451, 458-461; 802 NW2d 261 (2011), our Supreme Court noted that such preoffense conduct need not be directed at a specific victim and, further, that a defendant's conduct can itself create or enhance a victim's vulnerability – that such vulnerability need not be "already-existing vulnerabilities." The Court found that not all but "only those forms of 'preoffense conduct' that are commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection'" would support the scoring of OV 10 for predatory conduct. *Huston, supra,* at 461-462. Furthermore, "'preoffense conduct' must be read in context." *Huston, supra,* at 463 (citation omitted).

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

In the present case, defendant's preoffense conduct included both the placing of an advertisement on a website to lure individuals willing to pay money for a sensual massage – likely to include sexual favors – as well as lying in wait for those individuals dressed and playing the part of a police officer in order to use that false authority to subdue them.  The victims' vulnerability in the present case was created by defendant's actions.  Defendant targeted individuals unlikely to notify the police of the crime and, further, impersonated an officer and using that authority to rob victims who put up no fight because they believed him to be a police officer.  Defendant was lying in wait for victims he lured to that specific spot for the primary purpose of victimization.  Under the circumstances of this case, the trial court correctly scored OV 10 at 15 points.

Defendant further argues that the trial court abused its discretion by scoring OV 19 at 10 points for interference or attempted interference with the administration of justice (Defendant's brief, 15-16).  MCL 777.49(c) provides for the scoring of 10 points where a defendant "otherwise interfered with or attempted to interfere with the administration of justice."   Interfering or attempting to interfere with the administration of justice is broadly interpreted when assessing OV 19.  *People v Barbee*, 470 Mich 283, 286–287; 681 NW2d 348 (2004); *People v Steele*, 283 Mich App 472, 492; 769 NW2d 256 (2009).  Any acts by a defendant that interfere or attempt to interfere with the judicial process or law enforcement officers and their investigation of a crime may support a score for OV 19.  *Id*.  In scoring OV 19, the trial court may consider "conduct that occurred after the sentencing offense was completed."  *People v Smith*, 488 Mich 193, 202; 793 NW2d 666 (2010).

In the present case, defendant lied to police officers during their investigation.  Defendant claimed he was home all day of  November 29th with an exception of driving his daughter to Mel

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

Trotter, then stated he had pulled into the parking lot of the apartment complex [where the robbery took place] to turn around and did not encounter anyone (Tr I, 162).  He later said he did encounter someone – that a white or Hispanic male yelled an obscenity at him (Tr I, 164).  Defendant admitted that the phones found on his person were his phones and said no one else had access to them but then later changed his story and said a friend named Sheila was with him around 1:30 p.m. and may have used one of his phones (Tr I, 163).  This conflicted with his statement that he had been with his daughter that day from 12:45 - 1:45 p.m. (Tr I, 163).  Finally, defendant admitted at trial that he lied to officers who were investigating the offenses.  Specifically, after admitting that he had lied, defendant testified, "We gonna say a 'fib.' We ain't gonna say a 'lie,' we're gonna say a 'fib'" (Tr I, 194, 196).  "Lying to law enforcement officers or private persons who are authorized to investigate a crime may constitute interference with their investigatory function, which is interference with the administration of justice under MCL 777.49(c)." *People v Portellos,* 298 Mich App 431, 450; 827 NW2d 725 (2012), citing *Barbee, supra,* 470 Mich at 287–288, and *People v Passage*, 277 Mich App 175, 180; 743 NW2d 746 (2007).  Although defendant recognizes that providing false information to police can justify the scoring of OV 19 (Defendant's brief, 15), he thereafter focuses his argument on whether the People can prove he committed perjury during his trial testimony.  While the People certainly believe defendant did commit perjury, the scoring of OV 19 in the present case is based on *his admitted actions* of lying to police officers during their investigation of these offenses.  OV 19 is appropriately scored at 10 points.

**III.** **Defendant's general claims of ineffective assistance of counsel are unsupported by the record. Defendant's trial counsel moved the court for a reduction of bond, objection to the consolidation at trial of the two cases, moved for a directed verdict, extensively cross-examined the witnesses, and made what closing argument she could given the evidence against defendant. Defendant has failed to demonstrate any ineffective assistance of counsel.**

**Standard of Review:** A claim of ineffective assistance of counsel involves a mixed question of fact and constitutional law. *People v LeBlanc,* 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error, and its constitutional determinations are reviewed de novo. *Id.* Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *Id.* at 578. No evidentiary hearing regarding the ineffective assistance of counsel claim was held; therefore, review is limited to mistakes apparent on the record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000), lv den 463 Mich 975 (2001).

**Discussion:** In a separate Standard 4 brief, defendant argues that his trial counsel was ineffective for a variety of reasons. Defendant's argument is generally based upon claims unsupported by the record and without citations to the record; his argument lacks merit.

In Michigan, to establish ineffective assistance of counsel, a defendant must show: (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms"; (2) that there is "a reasonable probability that, but for counsel's error, the result of the proceedings would have been different"; and (3) that the resultant "proceedings were fundamentally unfair or unreliable." *People v Rodgers,* 248 Mich App 702, 714; 645 NW2d 294 (2001), lv den 467 Mich 852 (2002) (internal citations omitted). Furthermore, a defendant "must

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

First, defendant argues that his counsel did not interview or call "my witnesses as I instructed to refute Prosecutor's argument" (Defendant's Standard 4 brief, 1). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Outside the hearing the jury, defense counsel noted that defendant had indicated he had a potential witness; however, defendant never gave her the individual's full name (Tr II, 3). Defense counsel stated that this "Sheila" or Sheilia" was the only witness defendant ever represented by name to counsel as a potential witness (Tr II, 4). It was only on the Tuesday of trial that defense counsel got a full name out of defendant and defense counsel contacted her; Sheila returned the call but refused to give her full name, referred to defendant as a friend of a friend, indicated that she had not seen defendant since the day after Thanksgiving in 2011, and reported that on November 29, 2011, she was at home with her husband and had no contact that entire day with defendant; the potential witness had nothing further to add and was not willing to testify (Tr II, 4). Given defense counsel's statements, it is apparent that she had no contact information for this potential witness until during trial and, even then, made contact with her but the witness was actually no witness at all concerning the offenses at trial. The record does not support defendant's claim of ineffective assistance as to the failure to call this potential witness.

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

Defendant next claims defense counsel failed to contact the casino as he instructed (Defendant's Standard 4 brief, 1).  Again, nothing in the record[1] supports defendant's claim that he even requested that his counsel contact a casino and, in fact, the officer who interviewed defendant testified that defendant never mentioned anything about having been at a casino and winning the $497 found on his person the day Isaacson was robbed of $470 (Tr II, 26, 27-28).

Defendant claims his attorney did nothing on his behalf other than move for directed verdict (Defendant's Standard 4 brief, 1).  On the contrary, defense counsel moved for a reduction of bond, objected to the consolidation of the cases against defendant, secured a plea agreement that would have been extremely beneficial to defendant, and extensively cross-examined the witnesses during trial.  Outside the hearing of the jury on the last day of trial, defendant made some of these allegations before the trial court.  In response, his trial attorney, after noting the information cited above concerning the potential witness "Sheila" added,

> Your Honor, I've represented Mr. Heath since his aggravated stalking charge [a separate case].  I believe it was last late summer.  He was out on bond on that charge when these two allegations arose.  He's been in custody since - - I believe it's been since the early part of - - late part of November of last year.

> I have - - every motion he's asked me to bring, I've brought to this Court; a motion to reduce bond; a motion to - - against [sic] the Court to sever these cases.

> I believe I've been an effective attorney.  I believe I've cross-examined every witness effectively.   I believe I cross-examined the missing witness effectively at the preliminary examination.

> I've been doing this, Judge, for 21 years.  I've been trying cases for 21 years.  This is the first time I've had a client who has an epiphany late in the trial and now wants to blame the lawyer for what he perceives as everything going wrong.  I didn't tell Mr. Heath what to say when he took the stand on Tuesday.  I

---

[1] Defendant states he sent many letters to his attorney and the judge; however, the People have no copies of such letters and are unable to confirm whether any of these claims were included therein.

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

didn't coach him.  He's 51 years of age; he knows how to answer questions on his own.

This case is what it is, your Honor.  I've done everything I was supposed to.  I've done everything with everything that I had with every resource I had available to me to try this case.  And Mr. Heath just indicated in his little statement to you, other than this lady that he kept mentioning, there were no other witnesses.  He wanted me to contact a daughter, he wanted me to con - - I never got that from him about contacting his daughter, contacting his cousin.  I never got a name from him, except this Sheila woman.  And I never got a last name from him until two days ago.

I have kept in really good contact with him.  I've written - - I've responded to practically every letter he's ever written me.  But the reality is, your Honor, this man's mind was made up from the day he picked up the aggravated stalking case.  We ran that preliminary examination.  That case was bound over.  He didn't do that either.

When this case came about, he wanted to run the prelim.  I had to convince him not to take testimony of the second - - the first guy because I was confident that, once all the evidence was brought to light, that Mr. Heath would have his epiphany.  He never did.  That's not my problem.

We're here today because Mr. Heath indicated he wished to have his constitutional right to a trial by a jury.  That's the reason why we're here, your Honor.  I believe - - question - - tell me if I'm wrong; that I've done everything that I'm duty bound to do as his counselor.  That all I have to say.

THE COURT:  All right.

MS. FOSTER:  Oh, one other thing.  I didn't yell at him.  I did raise my voice because, frankly, I get a little offended when people say to me that I'm working for the prosecution.  I do not work for the prosecution.  [Tr II, 12-15.]

For the record, the trial court then stated that trial counsel had been trying cases in Kent

County for close to 20 years and is:

Very experienced, very effective, very confident.  You're not going to get a better attorney than Ms. Foster.  You may be disappointed with how things have gone.  That's not unusual.  You're on trial, you're facing serious charges.  So, defendants are sometimes or oftentimes upset.  You're in a touch position; you're facing serious charges.  But that's why we have jury trials.

You have a very effective attorney.  I'm sure she'll make a very effective closing argument.  All of us, the Court, the prosecution, your defense attorney, are

doing the best job possible to give you a fair trial.  I'm confident that the witnesses are taking their oath seriously when they testify.  [Tr II, 15-16.]

The weakness of defendant's claim of ineffective assistance of counsel is further demonstrated by his suggestion that his counsel instruct the jury that he had three prior drug convictions in order to demonstrate that robbery was "out of his character."  Obviously, these prior convictions did not come into evidence even though defendant testified because they had no relevancy as to his credibility.  MRE 609.  In fact, had defense counsel informed the jury of these prior convictions, it is likely her doing so would have been a better indicator of ineffectiveness than anything currently suggested by defendant.  Introduction of these prior convictions would have labeled him as a repeat offender with a drug problem that provides evidence of his motive to rob others in order to support his drug habit.  Defendant does not seem to understand this; his trial counsel obviously did.

Defendant's claim that the jury had a question and he was never informed of the substance has no basis in the trial record.  The People found no evidence that the jury returned a question before their verdict was reached.

Finally, defendant's claim that the prosecutor excluded four black jurors because of their race has no support in the record.  Defendant makes this allegation with no citations to the record to indicate when in the jury selection process he claims this occurred.  "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."  *People v Kelly,* 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM

**RELIEF REQUESTED**

WHEREFORE, for the reasons stated herein, the People respectfully pray that the convictions and sentences entered in this cause by the Circuit Court for the County of Kent be AFFIRMED.

<div style="margin-left:50%">

Respectfully submitted,

William A. Forsyth (P 23770)
Kent County Prosecuting Attorney

Timothy K. McMorrow (P 25386)
Chief Appellate Attorney

</div>

Dated:  July 28, 2013                    By: /s/ Kimberly M. Manns
                                         _____
                                             Kimberly M. Manns (P 67127)
                                             Assistant Prosecuting Attorney

RECEIVED by Michigan Court of Appeals 7/28/2013 4:43:42 PM