# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 23, 2013

Robert P. Young, Jr.,
Chief Justice

147713

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
    Plaintiff-Appellee,

v

    SC: 147713
    COA: 310897
KELVIN WAYNE HEATH,
    Kent CC:  11-011910-FH
    Defendant-Appellant.
               11-011911-FH

_____/

      On order of the Court, the application for leave to appeal the August 20, 2013 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.





      I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 23, 2013

                             Clerk

t1216

# IN THE SUPREME COURT FOR THE STATE OF MICHIGAN

**PEOPLE OF THE STATE OF MICHIGAN,**

Plaintiff-Appellee,

v KEVIN WAYNE HEATH ,
(Print the name you were convicted under on this line.)

Defendant-Appellant.   Ok

Supreme Court No. ___Ora 8-20-13___
(Leave blank.)

Court of Appeals No. 310897
(From Court of Appeals decision.)

Trial Court No. 11-01910-FH And
(See Court of Appeals brief or Presentence Investigation Report.)

Kent   11-01911-FH

---

**INSTRUCTIONS:** Answer each question. Add more pages if you need more space. **NOTE:** If you are appealing a Court of Appeals decision involving an administrative agency or a civil action, you will have to replace **this page** with one containing the relevant information for that case.

G. Buth

---

14771

## PRO PER APPLICATION FOR LEAVE TO APPEAL

**1.** I was found guilty on (Date of Plea or Verdict) 3-29-12

**2.** I was convicted of (Name of offense) unarmed Robbery

_____

**3.** I had a ☐ guilty plea; ☐ no contest plea; ☑ jury trial; ☐ trial by judge. (Mark one that applies.)

**4.** I was sentenced by Judge George S. Buth on 4-25-12
(Print or type name of judge)          (Print or type date you were sentenced)

in the Kent County Circuit Court to 8 years _____ months
(Name of county where you were sentenced)                    (Put minimum sentence here)

to 20 years _____ months, and to _____ years _____ months to _____ years _____ months.
(Print or type maximum sentence)          (Minimum sentence)          (Maximum sentence)

I am in prison at the M.B.P trusty Division in Marquette , Michigan.
(Print or type name of prison)          (Print or type city where prison is located.)

**5.** The Court of Appeals affirmed my conviction on 8-20-13 ,
(Print or type date stamped on Court of Appeals decision)

in case number 310897 . A copy of that decision is attached.
(Print or type number on Court of Appeals decision)

**6.** ☑ This application is filed within 56 days of the Court of Appeals decision. (It MUST be received by the Court within 56 days of date on Court of Appeals decision in criminal cases and 42 days in civil cases. **Delayed applications are NOT permitted, effective September 1, 2003.**)

**FILED**

SEP 1 3 2013

LARRY S. ROYSTER
CLERK
MICHIGAN SUPREME COURT

**PRO PER APPLICATION FOR LEAVE TO APPEAL cont.** Lower Court Nb# 110910-FH
110911-FH

KELVIN WAYNE HEATH , Defendant-Appellant          CA No. 310897

**INSTRUCTIONS:** In the part below, only bring up issues that were in your Court of Appeals brief. Attach a copy of your Court of Appeals brief if possible. If you prepared a supplemental brief which was filed in the Court of Appeals, those issues go in this part also. You should attach a copy of that brief, too, if you can. New issues go in question 8 on page 7.

### GROUNDS - ISSUES RAISED IN COURT OF APPEALS

7. I want the Court to consider the issues as raised in my Court of Appeals brief and the additional information below.

**ISSUE I:**

**A.** (Copy the headnote, the title of the issue, from your Court of Appeals brief.)

ERROR-Admitting Preliminary Exam. Testimony of Barry Isaacson without due diligence being exercised, Failed to produce this witness. ERROR in Scoring OV 10, and OV 19, → Thread of evidence that connect totality of case is Isaacson Testimony: Bad faith acts purposefully committed by Prosecution office

**B.** The Court should review the Court of Appeals decision on this issue because: (Check all the ones you think apply to this issue, but you must check at least one.)

☑ 1. The issue raises a serious question about the legality of a law passed by the legislature.
☑ 2. The issue raises a legal principle which is very important to Michigan law.
☑ 3. The Court of Appeals decision is clearly wrong and will cause an important injustice to me.
☑ 4. The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** (Explain why you think the choices you checked in "B" apply to this issue. List any cases that you want the Supreme Court to consider. State any facts which you want the Court to consider. If you think the Court of Appeals mixed up any facts about this issue, explain here. If you need more space, you can add more pages.)

The prosecutor admits, The Court of Appeals admit, that due diligence was not made. That alone is plain error and grounds for reversal. Coupled with I stated to judge he can correct error now why should I have to wait 2, years I sent Judge Buth a letter stating I had 7, questions for my Appeal purpose all this is in sentence transcript which was my only time to go on record thru out trial I brought up Isaacson presence when I took stand and I was not allowed to ask my 5, other questions Judge cut me off so I raised these issues even if my attorney did'nt do so clearly enough on page 169,173 of transcript thats enough for court to accept as preserved. I was wrongly convicted by a statement inadmissable evidence (People v. Dye 431 Mich Report) If records not clear Appeals court should have been clear before Affirming = Get Full developed records, Judge Buth error determined outcome

© 2003 Prison Legal Services of Michigan, Inc  **PLSM SELF-HELP PACKET**     PLSM S4163 08.14.03

Continued on extra page

Page 4,

Extra Page = Wrongfully Admitted pre-lim. Testimony

Issue 1,

cases = People v. Ray Lee Doss unpublished opinion of 9-6-2012
court of Appeals # 306682

In my letters to Att. V. Foster I informed her that witness/victim Isaacson would not be showing up for trial my letter to her stated- Isaacson dated Sheila the same night and continued to date and call upon her services...

Isaacson told police he was lost and got robbed until police told him they were aware of a string of robberies and explained to him what they entail of area robberies thats when his story changed I was denied the opportunity of Fair cross exam. as was the triers of Fact and Fate... (Law And Facts of inadmissable testimony Isaacson stated under oath should **Not** outweigh constitutional Framers purpose) for this reason I ask that the Supreme Court reverse/vacate conviction a miscarriage of Justice is being served. Jury was denied a fair case before them, this case planted seed for growth in (count one) "Mr. Gray" what the jury was asked to do was unfair! one hour before I was brought in for verdict deputies came shackled me told me the jury had a question as we were about to exit holding area another deputy stuck his head in cell said they didn't need me I ask my Attorney what question jury had she stated it was not important! I still don't Know what this question was ??? in my transcripts I told judge something not right about how things are being done in his courtroom several calls and letters were made, and sent, to Attorney Foster on witnesses, casino, and discussing my case with me.

Extra Page

Issue 1, Page 2,     wrongfully Admitted pre-lim Testimony

As to count one case # 11-011910-FH
Elements of a Robbery was never proven
State of Michigan & Federal Law says the following
must happen = ① Forcibly taking another's property or
② Taking anothers Property by threat or force, Intent to
permently deprive another of possession, Taking From
Person and or use of weapon and or Injury to victim
alledged victim Mr. Gray never mentions what MCL has deemed
as robbery! what he says is on transcript Vol. one, of two, at
page 105, I've never seen Mr. Gray in life until this
trial= prosecution Purposely use Mr. Gray's alledged claim to
get a conviction Knowingly unfair prejudice would occur
impact was great and enhanced "grays" testimony for these reasons
I ask that the plain error not be over looked by this
Honorable court... The jury was being asked in effect to
infer that defendant was guilty of the charged offense
because he had committed an earlier similar crime. Abuse
of discretion is warranted where a declarant testifies at prelem
Exam. but not at trial and if said declarant admits on
record he lied or decieved police defense should be
allowed to cross-exam. in Front of Jury whom is trier
of Fact (had Jury heard/Known above they might have reject
governments case attogher) Fed. Rules of Evid 801(d) (i
(B) and MCL 767.35

Court of Appeals No. 310897

Trial court No. 11-011910 FH
Trial court No. 11-011911 FH

( Issue 1    Extra page No# 3 )

Before Plain error, Before preservation for appeal, there is due diligence to be met. You cannot skip point A, and go to B, or C, without violating sixth, and fourteenth, Amend. Rights and I ask this Honorable court to entertain that. As well as Prosecutor stating on record witness/victim Isaacson was difficult refer to People v. Dye 431 Mich. Report Prosecution should not have been permitted to bolster their evidence a Pre-lem testimony of non-Appearing witness/victim Judge should've made Prosecutor show due diligence at that point without request from counsel it is the duty of trial court to see that the case goes to Jury in clear intelligent Manner People v. Barringer 311 Mich. Report. By Jugde giving the instruction for Jury to consider Isaacson testimony as evidence there was no need to object! abuse was committed at his instruction thus influence decision. defense ask Judge for instructing Jury to consider non-Appearance ~~as~~ unfavorable to state he denied P. v. Mills 450 Mich Report and P. v. Hunt 94 Mich. Appeal 106 Mich. Appeals Page 319 on record defense stated it Just recieved notice on ~~first~~ second day of trial first they heard of witness not being avalible unfair 11th hour suprise. see Also People v. McIntosh 389 Mich Report Judge directing attention to testimony constituted Prejudicial Error People v. Smith 363 Mich Report

**PRO PER APPLICATION FOR LEAVE TO APPEAL** (cont.) Lower court No# 11011910-FH 11011911-FH

KELVIN WAYNE HEATH Defendant-Appellant          CA No. 310897

---

**INSTRUCTIONS:** In the part below, only bring up issues that were in your Court of Appeals brief. Attach a copy of your Court of Appeals brief if possible. If you prepared a supplemental brief which was filed in the Court of Appeals, those issues go in this part also. You should attach a copy of that brief, too, if you can. New issues go in question 8, on page 7.

---

**ISSUE II:**

**A.** (Copy the headnote, the title of the issue, from your Court of Appeals brief.)

ERROR- scoring OV 10 and OV 19 Resentencing is required minimum Sentence Range was affected.

**B.** The Court should review the Court of Appeals decision on this issue because: (Check all the ones you think apply to this issue, but you must check at least one.)

- [✓] 1. The issue raises a serious question about the legality of a law passed by the legislature.
- [✓] 2. The issue raises a legal principle which is very important to Michigan law.
- [✓] 3. The Court of Appeals decision is clearly wrong and will cause an important injustice to me.
- [✓] 4. The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** (Explain why you think the choices you checked in B apply to this issue. List any cases that you want the Supreme Court to consider. State any facts which you want the Court to consider. If you think the Court of Appeals mixed up any facts about this issue, explain here. If you need more space, you can add more pages.)

Court of Appeals admits they are limited to plain error and I did not object at trial my attorney and I are at odds as seen in transcripts specifically volume 2, page 15, so she purposely did not investigate OV. correctness I didn't have access to law books as I stated in transcripts to do the correct scoring Plan Error is enough. And should've been considered by Appeals court (after reading transcripts) Please refer to court of Appeals Brief (Appellant)

---

**PRO PER APPLICATION FOR LEAVE TO APPEAL cont.** Lower Court No# 11-011910-FH 11-011911-FH

KELVIN WAYNE HEATH Defendant-Appellant          CA No. 310897

**INSTRUCTIONS:** In the part below, only bring up issues that were in your Court of Appeals brief. Attach a copy of your Court of Appeals brief if possible. If you prepared a supplemental brief which was filed in the Court of Appeals, those issues go in this part also. You should attach a copy of that brief, too, if you can. New issues go in question 8 on page 7.

**ISSUE III:**

A. (Copy the headnote, the title of the issue, from your Court of Appeals brief.)

Ineffective Counsel

B. The Court should review the Court of Appeals decision on this issue because: (Check all the ones you think apply to this issue, but you must check at least one.)

☑ 1.   The issue raises a serious question about the legality of a law passed by the legislature.

☑ 2.   The issue raises a legal principle which is very important to Michigan law.

☑ 3.   The Court of Appeals decision is clearly wrong and will cause an important injustice to me.

☑ 4.   The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

C. (Explain why you think the choices you checked in B apply to this issue. List any _cases_ that you want the Supreme Court to consider. State any _facts_ which you want the Court to consider. If you think the Court of Appeals mixed up any facts about this issue, explain here. If you need more space, you can add more pages.)

I've never sat down with trial Attorney Foster to go over my case only meetings we had were at court appearances they were brief and we discussed 3, different Plea Agreements which I refused other than my letters to Foster those are our only communications transcript Vol. 2, pages 3, 4, admits ineffectiveness pages 9, 10, 11 I stated for record her ineffectiveness She knew of my witnesses 3, months prior to trial by way of letters and Family calling to inform her of Ph#'s, names, to contact Phone calls are recorded at Defenders office by state law! Mich. Rules of Professional conduct 1.4, 1.1 (b) 1.1 (c) and 1.3 - 325 F3d 115 pages 2003 U.S. v. Perez

Continue on next page

**PRO PER APPLICATION FOR LEAVE TO APPEAL cont.** Lower No#
11-011910-FH
11-011911-FH

KELVIN WAYNE HEATH, Defendant-Appellant          CA No. 310897

**INSTRUCTIONS:** In the part below, only bring up issues that were in your Court of Appeals brief. Attach a copy of your Court of Appeals brief if possible. If you prepared a supplemental brief which was filed in the Court of Appeals, those issues go in this part also. You should attach a copy of that brief, too, if you can. New issues go in question 8 on page 7.

**ISSUE III:** continued From issue IV:

**A.** (Copy the headnote, the title of the issue, from your Court of Appeals brief.)

Ineffective counsel

**B.** The Court should review the Court of Appeals decision on this issue because: (Check all the ones you think apply to this issue, but you must check at least one.)

☑ 1. The issue raises a serious question about the legality of a law passed by the legislature.

☑ 2. The issue raises a legal principle which is very important to Michigan law.

☑ 3. The Court of Appeals decision is clearly wrong and will cause an important injustice to me.

☑ 4. The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** (Explain why you think the choices you checked in B apply to this issue. List any cases that you want the Supreme Court to consider. State any facts which you want the Court to consider. If you think the Court of Appeals mixed up any facts about this issue, explain here. If you need more space, you can add more pages.)

My interest was not protected, do to counsels conflicting considerations/schedules. Had it not been for counsels mistakes, I would have had a reasonable likely chance of acquittal. The failed performance was created by not calling any of my witnesses as I instructed. Not contacting casino as I instructed failing to consult with me to discuss my case or even a strategy of defense... lack of duties owed was prejudical to me counsels failure resulted in my conviction = I did not have law books to use correct law jargon but I let the judge Know I did not have fair trial in

**FOR MORE ISSUES, ADD PAGES. GIVE THE SAME INFORMATION. NUMBER EACH ISSUE.**

transcripts vol. 2 at pages 11, 12, counsel failed to object to Isaacson testimony when judge asked her I believe she did it purposefully. she's demonstrated ill will in transcripts

issue 3, continued

**PRO PER APPLICATION FOR LEAVE TO APPEAL cont.** Lower court No# 11-011910-FH
11-011911-FH

Kelvin Wayne HEATH, Defendant-Appellant

CA No. 310897

**INSTRUCTIONS:** In the part below, only bring up issues that were in your Court of Appeals brief. Attach a copy of your Court of Appeals brief if possible. If you prepared a supplemental brief which was filed in the Court of Appeals, those issues go in this part also. You should attach a copy of that brief, too, if you can. New issues go in question 8 on page 7.

**ISSUE IV:**

**A.** (Copy the headnote, the title of the issue, from your Court of Appeals brief.)

peremptory challenges to exclude all Blacks/African Amer.
From Jury

**B.** The Court should review the Court of Appeals decision on this issue because: (Check all the ones you think apply to this issue, but you must check at least one.)

[✓] 1. The issue raises a serious question about the legality of a law passed by the legislature.

[✓] 2. The issue raises a legal principle which is very important to Michigan law.

[✓] 3. The Court of Appeals decision is clearly wrong and will cause an important injustice to me.

[✓] 4. The decision conflicts with a Supreme Court decision or another decision of the Court of Appeals.

**C.** (Explain why you think the choices you checked in B apply to this issue. List any <u>cases</u> that you want the Supreme Court to consider. State any <u>facts</u> which you want the Court to consider. If you think the Court of Appeals mixed up any facts about this issue, explain here. If you need more space, you can add more pages.)

Its been proven an all white jury will convict in 80% of all Non-white cases Prosecutor purposely excluded all 4 of African Americans My attorney was trying to do away with constitutional obligations and I was affected by it. I preserved issue when I stated on record My constitutional rights are being violated once again I had no access to Law books to use legal wording for above violations

Continue on next page

New issue 1: CONTINUE

New Issue 1,

If you may recall, the original plea offer was two counts of Larceny from a Person and a dismissal of all other counts and the Aggravated Stalking charge. Had you taken the deal, your guidelines would have could have scored as low as 14-29 months on the minimum, a sentence range with which the judge would have complied. You conviction guidelines are now 50-200 on the minimum as a Supp 4 and a max of up to life. I know that you and your surrogates have already begun a campaign of shifting blame onto me. It is the predictable scenario of "when all else fails, blame the defense lawyer," as evidenced by the barrage of calls that Judge Buth's staff received from your mother and sister the day **after** your disastrous testimony, (I assume at your request since neither had been to court to witness what was really unfolding) but I am secure in the knowledge that my representation was dutiful and effective.

Sincerely,

Valerie A. Foster, Esq.
VAF/

I enclose a letter I recieved from attorney V. Foster after the fact she never stated the above to me nor is any of above on record I send this to re-enforce my claim of deliberate indifference and ineffectiveness she withheld above INFO. purposely do to lack of interest and my unwillingness to take lenthier plea I was force to take stand do to her unwilling to gather witness I requested.

**PRO PER APPLICATION FOR LEAVE TO APPEAL cont.** Lower court Not 11-01910-11-01911 FH FH

KELVIN WAYNE HEATH Defendant-Appellant          CA No. 310897

**NEW ISSUES - INSTRUCTIONS:** If you want the Supreme Court to look at errors which were not raised in the Court of Appeals by your attorney or you, check YES in "8." Answer parts **A, B,** and **C** for each new issue you raise. There is space provided for 2 new issues. You can add more pages. If you do not have new issues, go to question 9 on page 8.

## GROUNDS - NEW ISSUES

8. ☑ YES, I want the Court to consider the additional grounds for relief contained in the following issues. The issues were not raised in my Court of Appeals brief. MCR 7.302(F)(4).

**NEW ISSUE I:**

A. (State the new issue you want the Court to consider.) ineffective Counsel/Misconduct of counsel never discussed side bars or chamber conversations with me the lowest Plea on record is 29, months I'm enclosing a letter she sent me after conviction she never said 14, months she purposely with held this INFO. did not have my best interest at hand. Attorney Foster was angered I did not take 29 to 80 months Plea its all in transcripts

B. The Court should review this issue because: (Check all the ones you think apply to your case, but you must check at least one.)

   ☑ 1. The issue raises a serious question about the legality of a law passed by the legislature.
   ☑ 2. The issue raises a legal principle which is very important to Michigan law.

C. (Explain why you think that your choices in B above apply to this issue in your case. List any cases and citations, laws, or court rules, etc. which support your argument. Explain how they apply to this issue. State the facts which support and explain this issue. If these facts were not presented in court, explain why. You can add more pages.)

All thru my representation by Att. Foster I made it known we were having problems her snide comments, Never gothering my witnesses or follow up on suggested leads michigan-court-rules-states an Attorney shall keep files up to 5, years I ask the court to retrieve said file, And request records of phone calls made to Public defenders office For the following Months of 2012= Jan, Feb, Mar. And Dec, 2011= will reenForce claim People v. Battles #2 109 mich Appeals

Continue next page

**PRO PER APPLICATION FOR LEAVE TO APPEAL (cont.)** Lower Ct № 11-01910 FH
11-01911-FH

KELVIN WAYNE HEATH, Defendant-Appellant          CA No. 310897

---

**NEW ISSUE II:**

**A.** (State the new issue you want the Court to consider.) (Prosecutor Misconduct/intentional misconduct) under color of state law actions that deprived me of Federal Rights. Failed to file brief within proper time limits of Appeals Procedures dictated by state Law.

---

**B.** The Court should review this issue because: (Check all the ones you think apply to your case, but you must check at least one.)

☑ **1.** The issue raises a serious question about the legality of a law passed by the legislature.

☑ **2.** The issue raises a legal principle which is very important to Michigan law.

**C.** (Explain why you think that your choices in B above apply to this issue in your case. List any cases and citations, laws, or court rules, etc. which support your argument. Explain how they apply to this issue. State the facts which support and explain this issue. If these facts were not presented in court, explain why. You can add more pages.)

As a court officer the Prosecutor had a duty to uphold the law he had a witness swear under oath witness/victim Prosecutor had a duty to secure said witness/victim or Forfeit prosecution. Allocation to the prosecution of the burden of investigation and production of all res gestae witnesses has served the people of this state well. And has advanced the efficientcy of the criminal justice system and saved money so to allow a prosecutor to not uphold his court duties will be a breakdown of said system as well as a miscarriage of justice, costly repair even more so of reoccurances. The prosecutors failure to take any action during this time undermines whatever degree of good faith he is afforded. Prosecution never intended to allow me to confront Isaacson or he would have issued Bench warrant admittedly Prosecutor Knew he had problem witness. Constitutional right to confront involves more than physical confrontation = exposes to the jury through meaningful cross, Facts, inferences, reliability, etc. Trial court prosecution infringed upon my sixth Amend. right, Limitation on cross exam. was problematic it barred me from asking Isaacson why he initially lied to police cite criminal procedure Vol.7. Page 90, Sec. 27.5(d) and Dennis v. Sparks 449. U.S

MCL. 767.35

## RELIEF REQUESTED

9. For the above reasons I request that this Court *GRANT* leave to appeal, *APPOINT* a lawyer to represent me, and *GRANT* any other relief it decides I am entitled to receive.

9-2-13
(Date)

Kelvin Heath #199603
(Print your name and number here.)

Kelvin Heath
(Sign your name here.)

Marquette Branch Prison trusty Div.
(Print your address here.)

1960 U.S. Hwy 41 S. Marquette, MI
49855

# IN THE SUPREME COURT FOR THE STATE OF MICHIGAN

PEOPLE OF THE STATE OF MICHIGAN

(Print the name of the opposing party, e.g., "People of the State of Michigan.")

Plaintiff-Appellee,

v KEVIN WAYNE HEATH ,

(Print the name you were convicted under on this line.)

Defendant-Appellant.

Supreme Court No. _____

(Leave blank.)

Court of Appeals No. 310897

(From Court of Appeals decision.)

Trial Court No. 11-01910-FH  11-01191-FH

(See Court of Appeals brief or Presentence Investigation Report.)

## MOTION FOR WAIVER OF FEES AND COSTS

Appellant, pursuant to MCR 7.319(7)(h) and MCL 600.2963, for the reasons stated in the attached affidavit of indigency, requests that this Court: (Check the ones that apply to you.)

☑ GRANT a waiver pursuant to MCR 7.319(7)(h) of all fees required for filing the attached pleadings because the provisions of MCL 600.2963, requiring prisoners to pay filing fees do not apply to appeals from a decision involving a criminal conviction or appeals from a decision of an administrative agency. The statute applies *exclusively* to prisoners filing civil cases and appeals in civil cases.

☑ GRANT a waiver pursuant to MCR 7.319(7)(h) of all fees required for filing the attached pleadings because the provisions of MCL 600.2963, requiring only indigent prisoners to pay court filing fees violates the equal protection provision of the Michigan Constitution, Art I, Sec 2.

☐ Temporarily waive the initial partial payment of filing fees for the attached pleadings and order the Michigan Department of Correction to collect and pay the money to this Court at a later date in accordance with MCL 600.2963, when the money becomes available in appellant's prison account. If the Court does not allow this, I will be prevented from filing the attached pleading in a timely manner.

☐ Allow an initial partial payment of $_____ of the fee for filing the attached pleadings and order the Michigan Department of Correction to collect the remaining money and pay it to this Court at a later date in accordance with MCL 600.2963, as additional money becomes available in my prison account. If the Court does not allow this, I will be prevented from filing the attached pleading in a timely manner.

9-2-13

(Date)

Kelvin Heath #199603

(Print your name and number here.)

Kelvin Heath

(Sign your name here.)

Marquette Branch Prison Trusty Div.

(Print your address here.)

1960 U.S. Hwy 41 S, Marquette MI

49855

## IN THE SUPREME COURT FOR THE STATE OF MICHIGAN

PEOPLE OF THE STATE OF MICHIGAN
(Print the name of the opposing party, e.g. "People of the State of Michigan.")

**Plaintiff-Appellee,**

v

KELVIN WAYNE HEATH
(Print the name you were convicted under on this line.)

**Defendant-Appellant.**

Supreme Court No. _____
(Leave blank.)

Court of Appeals No. 310897
(From Court of Appeals decision.)

Trial Court No. 11-01910-FH 11-01911-FH
(See Court of Appeals brief or Presentence Investigation Report.)

---

## AFFIDAVIT OF INDIGENCY

1. My name is Kelvin Heath . I am in prison at MBP _____ in Marquette MI.
(Type or print your name here.)    (Name of prison)    (city where prison is located)

My prison number is 199603 . My income and assets are: (Check the ones that apply to you.)
(Your prison number.)

- [ ] My only source of income is from my prison job and I make $_____ per day.
- [x] I have no income.
- [ ] I have no assets that can be converted to cash.
- [x] I can not pay the filing fees for the attached application.

I ask this Court to waive the filing fee in this matter.

I declare that the statements above are true to the best of my knowledge, information and belief.

9-2-13
(Date)

Kelvin Heath
(Sign your name here.)
Kelvin Heath
(Print your name here.)

---

## PROOF OF SERVICE

On September , 2013, I mailed by U.S. mail one copy of the documents checked below: (Put a check mark by the ones you mailed.)

- [x] Affidavit of Indigency and Proof of Service
- [x] Motion to Waive Fees and Costs
- [ ] Statement of Prisoner Account (this is not necessary in criminal appeals)
- [x] Pro Per Application for Leave to Appeal with a copy of Court of Appeals Decision
- [x] Court of Appeals Brief
- [x] Supplemental Court of Appeals Brief

TO: Kent _____ County Prosecutor, 82 Ionia , at
(Name of county where you were sentenced)    (Address)
Grand Rapids , MI 49503
(City)    (Zip Code)

I declare that the statements above are true to the best of my knowledge, information and belief.

9-10-13
(Date)

Kelvin Heath
(Sign your name here.)
Kelvin Heath
(Print your name here.)

---

© 2003 Prison Legal Services of Michigan, Inc    **PLSM SELF-HELP PACKET**    PAGE 1 OF 1    PLSM S4163 08.14.03

**COVER LETTER**

9-2-13
(Put Today's Date)

Clerk
Michigan Supreme Court
P.O. Box 30052
Lansing, MI 48909

RE: PEOPLE OF THE STATE OF MICHIGAN v KELVIN WAYNE HEATH
(Print the name of the opposing party, e.g., "People of the State of Michigan.")    (Print the name you were convicted under here.)

Supreme Court No. _____
Court of Appeals No. 310897    (Leave blank - the Clerk will assign a number for you.)
(Get this number from the Court of Appeals decision.)
Trial Court No. 11-011910^FH 11-011911-FH    (Get this number from Court of Appeals brief or Presentence Investigation Report.)

Dear Clerk:

Enclosed please find the original of the pleadings checked below.  (Put a check mark by the items you are sending.)  I am indigent and can not provide seven copies.  Please file them.

✓ Affidavit of Indigency/Proof of Service
✓ Motion to Waive Fees and Costs
___ Statement of Prisoner Account (this is not necessary in criminal appeals)
✓ Pro Per Application for Leave to Appeal
✓ Court of Appeals Decision (You **must** enclose a copy of the Court of Appeals decision.)
✓ Court of Appeals Brief (This is not necessary, but it is a good idea.)
✓ Supplemental Court of Appeals Brief (This is not necessary, but it is a good idea.)
___ Other _____

Thank you.

Sincerely,

Kelvin Heath
(Sign your name here.)

Kelvin Heath
(Print or type your name here.)
# 199603
(Print or type your prisoner number here.)
Marquette Branch Prison trusty Div.
(Print or type your address here.)
Marquette, MI 49855
(Print or type your City, State, and Zip Code here.)

Copy sent to:
Kent _____ County Prosecutor
(Fill in the county where you were convicted.)

RECEIVED
SEP 13 2013
LARRY S. ROYSTER
CLERK SUPREME COURT

**INSTRUCTIONS**

1. You will need 2 copies and the original of this letter and the pleadings listed above.

2. Mail the original of this letter and all the pleadings listed above to the Supreme Court Clerk.

3. Mail 1 copy of letter and pleadings to the prosecutor in the county where you were convicted.

4. Keep 1 copy of letter and pleadings for your file.

SC 147713

Approved, Michigan Court of Appeals

| **LOWER COURT** | **Electronically Filed** | **CASE NO.** | |
|---|---|---|---|
| Kent Circuit Court | **BRIEF COVER PAGE** | Lower Court | 11-11910-FH 11-11911-FH |
| | | Court of Appeals | **310897** |

(Short title of case)

Case Name: **People v Kelvin Wayne Heath**

1. Brief Type (select one):  ☑ APPELLANT(S)    ☐ APPELLEE(S)    ☐ REPLY
   ☐ CROSS-APPELLANT(S)    ☐ CROSS-APPELLEE(S)    ☐ AMICUS
   ☐ OTHER [identify]: _____

2. This brief is filed by or on behalf of [insert party name(s)]: **Defendant, Kelvin Wayne Heath**

3. ☐ This brief is in response to a brief filed on _____ by _____ .

4. ORAL ARGUMENT:  ☑ REQUESTED    ☐ NOT REQUESTED

5. ☐ THE APPEAL INVOLVES A RULING THAT A PROVISION OF THE CONSTITUTION, A STATUTE, RULE
   OR REGULATION, OR OTHER STATE GOVERNMENTAL ACTION IS INVALID.
   [See MCR 7.212(C)(1) to determine if this applies.]

6. As required by MCR 7.212(C), this brief contains, in the following order: [check applicable boxes to verify]
   ☑ Table of Contents [MCR 7.212(C)(2)]
   ☑ Index of Authorities [MCR 7.212(C)(3)]
   ☑ Jurisdictional Statement [MCR 7.212(C)(4)]
   ☑ Statement of Questions [MCR 7.212(C)(5)]
   ☑ Statement of Facts (with citation to the record) [MCR 7.212(C)(6)]
   ☑ Arguments (with applicable standard of review) [MCR 7.212(C)(7)]
   ☑ Relief Requested [MCR 7.212(C)(9)]
   ☑ Signature [MCR 7.212(C)(9)]

7. This brief is signed by [type name]: /s/ **Daniel D. Bremer**

   Signing Attorney's Bar No. [if any]: **P-23554**

FILED

SEP 1 8 2013

LARRY S. ROYSTER
CLERK
MICHIGAN SUPREME COURT

## TABLE OF CONTENTS

Index of Authorities..................................................................................................i

Jurisdictional Statement..........................................................................................iv

Statement of Questions Presented for Review.......................................................iv

Statement of Applicable Standards of Review.......................................................iv

Statement of Facts...................................................................................................1

Argument

    I.   THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE THE PRE-
        LIMINARY EXAMINATION TESTIMONY OF BARRY ISAACSON BECAUSE
        THE PROSECUTOR FAILED TO SHOW DUE DILIGENCE IN ATTEMPTING
        TO PRODUCED THIS WITNESS...........................................................8

    II.  THE TRIAL COURT ERRED IN SCORING OV 10 AND OV 19 AND RESEN-
        TENCING IS REQUIRED BECAUSE THE RECOMMENDED MINIMUM
        SENTENCE RANGE WAS AFFECTED...............................................13

Relief Requested....................................................................................................17

## INDEX OF AUTHORITIES

### Cases

*Barber v Page*, 390 US 719; 88 S Ct 1318; 20 L Ed 2d 255 (1968)................................8

*Lisenba v California*, 314 US 219; 62 S Ct 280; 86 L Ed 166 (1941)............................9

*People v Adams*, 430 Mich 679; 425 NW2d 437(1988)..............................................16

*People v Babcock*, 469 Mich 247; 666 NW2d 231 (2003)............................................8

*People v Baiz*, unpublished opinion per curiam of the Court of Appeals, issued January 9, 2007
   (Docket No. 262912).....................................................................................15

*People v Barbee*, 470 Mich 384; 681 NW2d 348 (2004)............................................15

## Cases
(Continued)

*People v Bean*, 457 Mich 677; 580 NW2d 390 (1998)......................................................8, 10, 11

*People v Cannon*, 481 Mich 152; 749 NW2d 257 (2008).......................................................14, 15

*People v Ewing*, 435 Mich 443; 458 NW2d 880 (1990)................................................................13

*People v Francisco*, 474 Mich 82; 711 NW2d 44 (2006)........................................................13, 17

*People v Howay*, 222 Mich App 104; 564 NW2d 72 (1997)........................................................11

*People v Howay*, 455 Mich 865; 567 NW2d 251 (1997)..............................................................12

*People v Huston*, 489 Mich 451; 802 NW2d 261 (2011).........................................................14, 15

*People v James*, 192 Mich App 568; 481 NW2d 715 (1992).......................................................10

*People v Jenkins*, 244 Mich App 1; 624 NW2d 457 (2000).........................................................15

*People v Katt*, 468 Mich 272; 662 NW2d 12 (2003)......................................................................8

*People v Lechleitner*, 291 Mich App 56; 804 NW2d 345 (2010)................................................13

*People v Malkowski*, 385 Mich 244; 188 NW2d 559 (1971).......................................................13

*People v Morson*, 471 Mich 248; 685 NW2d 203 (2004).............................................................13

*People v Steele*, 283 Mich App 472; 769 NW2d 256 (2009)........................................................13

*People v Unger*, 278 Mich App 210; 749 NW2d 272 (2008).........................................................8

*People v Walker*, 428 Mich 261; 407 NW2d 367 (1987)..............................................................13

*People v Wiggins*, 289 Mich App 126; 795 NW2d 232 (2010).....................................................13

*People v Williams*, 483 Mich 226; 769 NW2d 605 (2009)...........................................................13

*Pointer v Texas*, 380 US 400; 85 S Ct 1065; 13 L Ed 2d 923 (1965)..............................................8

*Townsend v Burke*, 334 US 736; 68 S Ct 1252; 92 L Ed 2d 1690 (1948)......................................13

## United States and Michigan Constitutions

Const 1963, art1, § 20. ..................................................................................8

US Const, Am VI..........................................................................................8

US Const, Am XIV.......................................................................................8

## Michigan Rules of Evidence

MRE 804(a)(5)..............................................................................................10

MRE 804(b)(1)..............................................................................................10

## Michigan Sentencing Guidelines Manual
## 2011 Edition

OV 10............................................................................................14, 15, 16

OV 19................................................................................................15, 16

## Statutes

725 ILCS 220/1 – 220/5...............................................................................11

MCL 750.215...............................................................................................1

MCL 767.91 – 95.........................................................................................11

MCL 768.26..................................................................................................9

MCL 769.12..................................................................................................1

## JURISDICTIONAL STATEMENT

The Court of Appeals has jurisdiction under MCL 600.308 and MCL 600.309 and MCR 7.302(A)(1)(b). This is an appeal by right from a final judgment of conviction that occurred on May 16, 2012. Defendant filed a timely request for appointment of counsel and declaration of indigency on June 1, 2012, and a timely claim of appeal was filed within 42 days of the judgment of conviction, pursuant to MCR 6.425(F)(1)(b) and MCR 7.203(A)(1) by means of an order appointing counsel on or about June 19, 2012.

## STATEMENT OF QUESTIONS PRESENTED FOR REVIEW

1. Did the trial court err in admitting into evidence the preliminary examination testimony of Barry Isaacson because the prosecutor failed to show due diligence in attempting to produce this witness?

Defendant-Appellant would answer "yes."

The trial court would answer "no."

2. Did the trial court err in scoring OV 10 and OV 19 and is resentencing required because the recommended minimum sentence range was affected?

Defendant-Appellant would answer "yes."

The trial court would answer "no."

## STATEMENT OF APPLICABLE STANDARDS OF REVIEW

The applicable standards are set forth in the argument portion of this brief.

## STATEMENT OF FACTS

This case is on appeal from the convictions of the Defendant, Kelvin Wayne Heath, in two cases that were consolidated for trial and appeal, File No. 11-11910-FH and File No. 11-11911-FH.  In each case Mr. Heath was convicted of two counts, unarmed robbery, MCL 750.530, and impersonating a police officer, MCL 750.215.  Mr. Heath was also sentenced in each case as an habitual offender, fourth offense, MCL 769.12.  Mr. Heath was convicted of these offenses as a result of a jury trial that took place in the Kent County Circuit Court on March 27, and March 29, 2012.  The jury acquitted Mr. Heath of unlawful imprisonment in each case.

On May 16, 2012, the trial court sentenced Mr. Heath to concurrent terms in each case of 8 years to 20 years for unarmed robbery, and 148 days in jail, with credit for 148 days, in each for impersonating a police officer.

### Trial

Brian Gray said that on November 14, 2011 he responded to an ad on a website called www.backpage.com that offered massages.  (tr., Vol. 1, 103).  He called the phone number provided and received back a text message.  This was supposedly from a female from Northern Michigan.  (tr., Vol. 1, 103-104).  Through sending text messages back and forth he agreed to meet the female at Apartment D-1 at the Swiss Valley Apartments in Wyoming.  (tr., Vol. 1, 104).

When Mr. Gray walked into the building a man whom he later identified as Kelvin Heath approached him and said that there was a sting operation.  (tr., Vol. 1, 105).  The man wore a long sleeved black t-shirt with some yellow lettering on it.  (tr., Vol. 1, 125; 127).  The man said that there was a rapist in the area and asked Mr. Gray for his wallet.  The man said that he was a police officer and patted Mr. Gray down.  He told Mr. Gray that he did not fit the description of

the rapist and that he was free to go. (tr., Vol. 1, 105; 113). When Mr. Gray got back to his car he looked through his wallet and noticed that his money, $300, was missing. (tr., Vol. 1, 106).

Later that night and the next morning Mr. Gray received voicemail messages from the phone number in the ad. The male voice in the message said that the police had his license number and that he should turn himself in at the police department. (tr., Vol. 1, 106-107). He then contacted the police. He did not at first tell the police why he was at the apartment complex because he was embarrassed, but he did later. (tr., Vol. 1, 107). He described the man to a sketch artist who drew the sketch on a computer screen. (tr., Vol. 1, 107; 122-123). A few weeks Mr. Gray later attended a physical lineup. He picked Mr. Heath from the lineup and identified him as the person whom he had encountered at the apartment complex. (tr., Vol. 1, 107; 113).

The testimony of Barry Isaacson from a preliminary examination was read into the record. The only explanation offered for his absence was that Mr. Isaacson lived in Illinois. (tr., Vol. 1, 129-130).

Barry Isaacson said that he lived in Illinois. He was in Grand Rapids on November 29, 2011 for business. The day before he came to Grand Rapids he responded to an ad on www.backpage.com for an adult service. (tr., PE, 6). The telephone number in the ad was 616-477-1333. (tr., PE, 16). A girl answered the phone and said that the fee would be $150. She told Mr. Isaacson to text her when he came to Grand Rapids. (tr., PE, 10). He was given a different number to text when he arrived in Grand Rapids. He was directed by a text message to the Swiss Valley Apartments complex in Wyoming and given a building and unit number. He went there at about 12:00 p.m. to 1:00 p.m. after he concluded his business. (tr., PE, 6-7).

The unit was on the lower level of the building, 1-D, toward the back of the building. (tr., PE, 7). Mr. Isaacson walked into the building and knocked on the door of the apartment. At this point a man came up to him from the back door of the building and said that he was a police

officer. He wore a Wyoming Police t-shirt. (tr., PE, 8). It was a yellow t-shirt with blue or black lettering on the front over a light blue long sleeved shirt. (tr., PE, 18-19). The man shoved Mr. Isaacson against the wall and said "sting operation." He asked Mr. Isaacson if he had any weapons or sharp objects in his pockets. The man took Mr. Isaacson's wallet and the cash that was attached to it. Mr. Isaacson asked for his identification. The man called someone on a cell phone and said "He's not 5'8" or Hispanic. Bring the girl down." (tr., PE, 8).

The man told Mr. Isaacson that he would be used to identify someone who had roughed someone up. As the man was holding Mr. Isaacson's money, about $475 to $525 in cash, Mr. Isaacson asked for his identification. (tr., PE, 8; 25). The man said "wait right here" and walked out of the building. (tr., PE, 9).

Mr. Isaacson followed the man outside and got into his car. He found the man in the parking lot and asked for his money. As the man drove away, Mr. Isaacson called him on the number that he had used for texting. (tr., PE, 9; 21). The man called back and said that he would bring the girl down to identify him. Mr. Isaacson told him to return his money or he would call the police. Mr. Isaacson was able to take a photograph of the man as he was parked next to the man and he remembered part of his license number. (tr., PE, 9; 14). The man drove a black four-door car with no front license plate. (tr., PE, 14).

Mr. Isaacson identified Kelvin Heath as the man whom he had encountered. (tr., PE, 19).

Donald VerHage, a Wyoming police officer, said that on November 29, 2011 he was dispatched to the Swiss Valley Apartments. He met Barry Isaacson there. Mr. Isaacson told Officer VerHage what had happened and that man who had robbed him drove a black four-door car. He said that the first three letters of the license plate were BDR. (tr., Vol. 1, 134; 136). Mr. Isaacson showed Officer VerHage a photograph of the man who robbed him with his cell phone.

(tr., Vol. 1, 138-139).  Officer VerHage had Mr. Isaacson e-mail the photograph to Detective Philip Swiercz.  (tr., Vol. 1, 139).

Later Detective Swiercz provided Officer VerHage with the name Kelvin Heath and directed him to Apartment G at 1833 Prairie Parkway.  In front of this apartment was a black four-door Mercury with a license plate bearing the letters BDR.  (tr., Vol. 1, 135-137).

Officer VerHage went to the front door of the apartment and Officer * Ferguson went to the back door.  Officer VerHage called for backup units.  Hearing commotion at the back door, Officer VerHage went there and saw Officer Ferguson attempting to handcuff Kelvin Heath.  (tr., Vol. 1, 137-138).  There were four or five other people going in and out of the back door whom various officers attempted to detain.  (tr., Vol. 1, 138).

Philip Swiercz, a Wyoming detective, had been assigned the investigation of the Brian Gray incident.  (tr., Vol. 1, 141).  On November 29, 2011, Detective Swiercz heard by radio traffic that Officer VerHage was sent to the Swiss Valley Apartments regarding a robbery.  He then called Officer VerHage and told him that he was investigating a similar incident from the same location.  (tr., Vol. 1, 142).  Officer VerHage called him later and provided a phone number for the suspect, 616-477-1333.  He was then able to get the name of owner of the telephone number, Kelvin Heath.  (tr., Vol. 1, 143).  When Detective received the photograph of the alleged robber, he printed it out and compared it to a Secretary of State photograph and jail photograph.  (tr., Vol. 1, 144).

Detective Swiercz went to 1833 Prairie Parkway.  At this address Eleanor Griffin, who said that she was Kelvin Heath's mother, let him in.  Detective Swiercz took a light blue t-shirt that was similar to the t-shirt worn by the man in the photograph.  (tr., Vol. 1, 144-145).

In the parking lot Detective Swiercz was told by Officer Dennis Ferguson that he had read Miranda rights to Mr. Heath.  (tr., Vol. 1, 146).  Detective Swiercz told Mr. Heath, who was

in Officer Ferguson's cruiser, that he was under arrest for robbery and impersonating a police officer. He asked Mr. Heath why he was at the Swiss Valley Apartments. Mr. Heath said that he was just driving through. An unknown male told Mr. Heath to "f*** off." (tr., Vol. 1, 147; 153). Mr. Heath said that he did drive the Mercury but that he did not know anything about the blue t-shirt from his mother's apartment. (tr., Vol. 1, 147-148). He did not know why someone had taken his picture and had his telephone number. (tr., Vol. 1, 148). Detective Swiercz asked Mr. Heath about Brian Gray and Mr. Heath denied having any contact with him. (tr., Vol. 1, 150).

Dennis Ferguson, a Wyoming police officer, went to the back door of the apartment building at 1833 Prairie Parkway on November 29, 2011. (tr., Vol. 1, 157-158). He saw a person resembling the person in the photograph on Mr. Isaacson's telephone leaving through a sliding glass door. (tr., Vol. 1, 158). He placed person, identified as Kelvin Heath, in handcuffs and emptied out the man's pockets. (tr., Vol. 1, 159). In the left front pocket was a white and silver Boost Mobile Qualcomm cell phone, a black cell phone and a set of keys. In the right front pocket were lottery tickets, $497 in cash, a Michigan ID card and other cards. (tr., Vol. 1, 159-160). The white and silver cell phone was identical to the one shown in the photograph on Mr. Isaacson's cell phone and had Mr. Isaacson's telephone number in it. (tr., Vol. 1, 161).

Officer Ferguson read Miranda rights to Mr. Heath. Mr. Heath said that he had pulled into the parking lot of the Swiss Valley Apartments to turn around and went back out. He first denied encountering anyone in the parking lot. (tr., Vol. 1, 162). He said that the two cell phones were his and first denied that anyone else had access to them. (tr., Vol. 1, 163). He later said that a friend named Sheila was with him at about 1:30 p.m. and might have used one of his phones. He did not say where she came from or where she went. (tr., Vol. 1, 163).

Later Mr. Heath said that when he was turning around in the parking lot a white or Hispanic man had yelled "mother f*****" something at him but that he did not get out of his car.

(tr., Vol. 1, 164). Mr. Heath said that Sheila must have called Mr. Isaacson's number. He did not know how Sheila would have had the number. (tr., Vol. 1, 165).

Kelvin Heath said that he was born on March 28, 1961. He resided at 1833 Prairie Parkway with his sister and her son. His mother did not live there but was at this location on November 29, 2011 because she was sick. (tr., Vol. 1, 177). The gray and white cell phone that was found on him was his. The black cell phone belonged to Kelly Carpenter, who also went by the name Sheila. (tr., Vol. 1, 178).

On November 29 Mr. Heath gave Sheila a ride and dropped her off at her car, a black Honda. (tr., Vol. 1, 178). Later that day, at about 2:00 p.m. she contacted Mr. Heath and said that she was having problems with one of her clients, Barry Isaacson. Sheila was a call girl. She charged $200 per hour. Mr. Isaacson had ejaculated before his hour was up and was dissatisfied. He was acting in a belligerent way so Sheila asked Mr. Heath to pick her up. (tr., Vol. 1, 179). Mr. Isaacson said that he did not get his full hour. (tr., Vol. 1, 189). Sheila told Mr. Heath where to pick her up. (tr., Vol. 1, 180).

Mr. Heath drove through the parking lot and saw a man whom he thought might be asking for directions. Mr. Heath rolled down his window and the man said "MF" something and then "You guys" something. (tr., Vol. 1, 180). Mr. Heath did not see Sheila. He was arrested before he saw her again. (tr., Vol. 1, 181).

Mr. Heath could not remember what he was doing on November 14. He would have had no reason to be in the Swiss Valley Apartments complex. (tr., Vol. 1, 181-182). He never met Brian Gray. (tr., Vol. 1, 182). He did not know whether Mr. Gray was one of Sheila's clients. (tr., Vol. 1, 182).

Mr. Isaacson's telephone number was on Mr. Heath's telephone because Sheila had used Mr. Heath's telephone to contact Mr. Isaacson. Her phone was dead. (tr., Vol. 1, 182). Sheila

had used Mr. Heath's phone at about 10:30 a.m. to 11:00 a.m., before he picked up his daughter and her cousin. (tr., Vol. 1, 183).

Mr. Heath had picked up Sheila that morning at about 9:30 a.m. in the parking lot at 1833 Prairie Parkway where she had parked her black Honda. She had several call girl appointments that morning. (tr., Vol. 1, 185). Mr. Heath returned home from picking up his daughter at about 12:45 p.m. to 1:00 p.m. Sheila returned at about 1:10 p.m. (tr., Vol. 1, 188).

Later that day Mr. Heath picked up Sheila again and dropped her off at the Swiss Valley Apartments complex. He picked her up at a parking lot across the street from the complex. (tr., Vol. 1, 183-184).

Mr. Heath said that he was an associate of Sheila who, along with other people, received part of her money. (tr., Vol. 1, 192-193). He said that the money found on him when he was arrested was money that he had won at a casino the previous night. (tr., Vol. 1, 198).

Detective Swiercz said that he did a secondary interview of Barry Isaacson after Officer VerHage had interviewed at the scene. He did the secondary interview by telephone because Mr. Isaacson lived in Illinois. (tr., Vol. 2, 17). Mr. Isaacson did not at first tell Detective Swiercz that he had engaged the services of a call girl, but he did later when Detective Swiercz pressed him on this issue. (tr., Vol. 2, 18). When asked why Mr. Isaacson did not appear for trial, Detective Swiercz knew from his discussion with Mr. Isaacson that he was "a high-end businessman and very busy." (tr., Vol. 2, 19). Mr. Isaacson had said to Detective Swiercz, "I already gave you my sworn testimony under oath, and if I can make it, I'll make it." (tr., Vol. 2, 19). Mr. Isaacson had been subpoenaed for trial by mail. (tr., Vol. 2, 19). Someone in the victim/witness office told Detective Swiercz that Mr. Isaacson couldn't make it to the trial. (tr., Vol. 2, 20).

Detective Swiercz had no experience with securing witnesses through material witness warrants. (tr., Vol. 2, 20-21). He had no information that the defense had anything to do with Mr. Isaacson's non-appearance. (tr., Vol. 2, 21).

Officer VerHage said that Mr. Isaacson told him that he was missing approximately $470. He had three $100 bills in the $470, and the rest were twenties, tens and fives. (tr., Vol. 2, 26).

## **ARGUMENT**

I. THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE THE PRELIMINARY EXAMINATION TESTIMONY OF BARRY ISAACSON BECAUSE THE PROSECUTOR FAILED TO SHOW DUE DILIGENCE IN ATTEMPTING TO PRODUCE THIS WITNESS.

**Standard of Review**:   Preserved evidentiary rulings are reviewed for an abuse of discretion. *People v Unger,* 278 Mich App 210, 216; 749 NW2d 272 (2008). Preliminary questions of law relating to evidentiary issues such as whether a rule of evidence or statute precludes the admission of the evidence are reviewed de novo. *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). A trial court's determination as to whether a witness is unavailable such that the witness' prior recorded testimony is admissible is reviewed for abuse of discretion. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Criminal defendants have the right to confront the witnesses against them. US Const, Am VI, XIV; Const 1963, art1, § 20. Denial of the right of cross examination can be a denial of due process as guaranteed by the Fourteenth Amendment to the United States Constitution. *Pointer v Texas*, 380 US 400, 405; 85 S Ct 1065; 13 L Ed 2d 923 (1965). *Barber v Page*, 390 US 719, 724-725; 88 S Ct 1318; 20 L Ed 2d 255 (1968) holds that a witness is not unavailable for the

-8-

purposes of a criminal defendant's right of confrontation unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. Criminal defendants are guaranteed due process of law. *Lisenba v California*, 314 US 219, 236; 62 S Ct 280; 86 L Ed 166 (1941).

The complaining witness in File No. 11-11910-FH, Barry Isaacson, did not appear for trial and his preliminary examination testimony was read into the record in lieu of his appearance. There was no explanation for his non-appearance except that he lived in Illinois (tr., 1, 129-130):

> THE COURT: You can be seated, ladies and gentlemen of the jury. Correct me if I'm wrong here, Mr. Bramble [prosecutor], but you propose to read in the sworn testimony taken at a previous proceeding of the alleged victim in the other case, Mr. Isaacson?
>
> MR. BRAMBLE: Yes, your Honor.
>
> THE COURT: It's my understanding he's a resident of the State of Illinois and he's just simply not here today.
>
> MR. BRAMBLE: Correct, your Honor.
>
> THE COURT: All right. I'm going to allow, ladies and gentlemen of the jury, his sworn testimony to be read in.

The Defendant moved for a mistrial at the conclusion of the prosecutor's case, on the ground that the prosecutor had not shown due diligence in securing the presence of Mr. Isaacson. (tr., Vol. 1, 169-170). The prosecutor said that Mr. Isaacson was "less than cooperative" but that he did receive a subpoena. (tr., Vol. 1, 170-171). Mr. Isaacson had been called "numerous" times. He called the victim advocate in the prosecutor's office and said that he would not appear. (tr., Vol. 1, 171).

MCL 768.26 allows the prosecutor to use testimony taken at an examination, preliminary hearing, or at a former trial of the case, or taken by deposition at the instance of the defendant whenever the witness giving such testimony can not, for any reason, be produced at the trial, or

whenever the witness has, since giving such testimony, become insane or otherwise mentally incapacitated to testify.

MRE 804(b)(1) allows the use of prior recorded testimony of an unavailable witness as an exception to the hearsay rule under certain conditions:

> Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

MRE 804(a)(5) says that a witness is unavailable for purposes of the hearsay exception for prior recorded testimony when the witness:

> is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision [MRE 804] (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means, and in a criminal case, due diligence is shown.

The test for whether a witness is "unavailable" as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial. The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it. *People v Bean*, supra, 457 Mich 677, 684. See also *People v James*, 192 Mich App 568, 571-573; 481 NW2d 715 (1992). In the latter case the Court of Appeals said that the prosecutor had not shown due diligence where the prosecutor mailed a subpoena to the witness by certified mail three weeks before the trial and then tried to located him on the first day of the trial.

In *People v Bean*, the police began looking for the witness in question, Pryor, twelve days before the trial. The Supreme Court held that the prosecutor had not shown due diligence in

-10-

locating Mr. Pryor and gave a number of reasons for its decision [*People v Bean*, supra, 457

Mich 677, 687-688]:

> For instance, although the police tried to telephone Mr. Pryor's grandmother, they never went to her address after learning that her phone was disconnected. Neither did they inquire with regard to her whereabouts, after learning that Mr. Pryor and his mother had moved. The police had a telephone number in Detroit for Mr. Pryor's mother, but never sought the assistance of the telephone company in matching the number to an address; neither did they ask the phone company for access to information provided by Mr. Pryor's mother or grandmother at the time they obtained telephone service. No contacts of any kind were attempted with police departments or other agencies in the Washington D.C. area. The police never checked with the Postal Service to see whether change-of-address forms had been filed. The police did not check with the Michigan Department of Corrections to see whether Mr. Pryor was incarcerated there, and the police did not contact the Department of Social Services (Family Independence Agency) to learn whether there was a current address for receiving public assistance benefits.

There is a uniform act that is used to secure the presence of out-of-state witnesses, MCL

767.91 – 95, and known as the "Uniform Act to Secure the Attendance of Witnesses from Within

or Without a State in Criminal Proceedings." This act is also effective in Illinois, 725 ILCS

220/1 – 220/5. Under that act, a Michigan prosecutor can seek to have an out-of-state witness

appear before a judge in the other state, who may or may not hold the witness in custody if

necessary.

In a slightly different context, *People v Howay*, 222 Mich App 104, 109; 564 NW2d 72

(1997) holds that a prosecutor has not exercised due diligence in securing the presence of an

endorsed out-of-state witness if the prosecutor has not either used the uniform act or taken other

reasonable measures to secure the presence of the witness. In that case, the prosecutor had

mailed a subpoena to an out-of-state witness but had not further contact with him. There is no

reason that "due diligence" would not have the same meaning in the context of showing the

unavailability of a witness as in the present case. The Supreme Court has directed that this case

shall have no precedential force or effect, but it did not overrule it.  *People v Howay*, 455 Mich 865; 567 NW2d 251 (1997).

Mr. Isaacson was in fact under no legal compulsion to attend the trial since the uniform act had not been used.  Whether the subpoena was mailed to him or served personally, the Kent County Circuit Court had no jurisdiction to compel his presence.  The prosecutor was well aware that Mr. Isaacson was "less than cooperative" because he was a married man from Illinois seeking at the minimum a "massage" in Kent County.  The record does not show when the subpoena was given to Mr. Isaacson, whether it was mailed or personally served, or how many times he was called.  The record also does not anywhere, including Mr. Isaacson's preliminary examination testimony, disclose where in Illinois he lived, but it is obvious that the prosecutor had an address and telephone for him.

It appears in fact, that the prosecutor expected that Mr. Isaacson would not appear.  Since both cases were joined for trial, over the Defendant's objection, the absence of Mr. Isaacson affected not only the case in which he was the complainant, but the case in which Mr. Gray was the complainant.  There was a very strong similarity between the two incidents, such that Mr. Isaacson's testimony corroborated the testimony of Mr. Gray.  The admission of Mr. Isaacson's preliminary examination testimony was not harmless error and should lead to a new trial for both cases.

II. THE TRIAL COURT ERRED IN SCORING OV 10 AND OV 19 AND RESENTENCING IS REQUIRED BECAUSE THE RECOMMENDED MINIMUM SENTENCE RANGE WAS AFFECTED.

**Standard of Review**: Preserved scoring issues are reviewed to determine if the sentencing court "properly exercised its discretion and whether the evidence adequately supports a particular score." *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009). Questions of statutory interpretation are reviewed de novo and factual findings are reviewed for clear error. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). The proper interpretation and application of the legislative sentencing guidelines are legal questions that are reviewed de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). A trial court's scoring under the sentencing guidelines is reviewed to determine whether the court properly exercised its discretion and whether the record evidence adequately supports a particular score. *People v Lechleitner,* 291 Mich App 56, 62; 804 NW2d 345 (2010). When challenged, a sentencing factor need only be proven by a preponderance of the evidence. *People v Wiggins,* 289 Mich App 126, 128; 795 NW2d 232 (2010).

A defendant has a constitutional right to a sentencing based upon accurate information. *Townsend v Burke*, 334 US 736; 68 S Ct 1252; 92 L Ed 2d 1690 (1948); *People v Malkowski*, 385 Mich 244, 249; 188 NW2d 559 (1971); *People v Francisco*, 474 Mich 82, 88-92; 711 NW2d 44 (2006). If a defendant challenges the facts relied upon in scoring the guidelines, the trial court may not consider them unless it first permits the defendant a reasonable opportunity to challenge the scoring of the guidelines and the trial court must find that the scoring is supported by a preponderance of the evidence. *People v Walker*, 428 Mich 261, 267-268; 407 NW2d 367 (1987); *People v Ewing*, 435 Mich 443; 458 NW2d 880 (1990).

The sentencing guidelines were scored only for the most serious offenses, the two unarmed robbery convictions. They were scored identically. Unarmed robbery is a Class C offense against the person. The Defendant did not object to the scoring of the guidelines at the time of sentencing, but the Defendant is filing a Motion to Remand with this brief.

**OV 10 – Exploitation of a Victim's Vulnerability**

OV 10 was scored at 15 points. A score of 15 points is appropriate where "Predatory conduct was involved." The explanation for this score is given on page 2 of the CFJ-284 part of the presentence report, that Mr. Heath had used an internet ad to attract potential victims.

*People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008) holds that vulnerability is a prerequisite of any score under OV 10:

> . . . we conclude that points should be assessed under OV 10 only when it is readily apparent that a victim was 'vulnerable, i.e., was susceptible to injury, physical restraint, persuasion, or temptation. Factors to be considered in deciding whether a victim was vulnerable include (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious. The mere existence of one of these factors does not automatically render the victim vulnerable.

*People v Huston*, 489 Mich 451, 463; 802 NW2d 261 (2011) does not disagree with *People v Cannon* but holds that pre-offense conduct does not have to be directed at a specific victim. Also, it holds that vulnerability is not limited to a victim's personal characteristics, but can include a victim's "relationships or circumstances." *Id.*, 464.

Presumably the purpose of the internet ad was "temptation or persuasion." However, *People v Huston* does not hold that any form of preoffense planning amounts to predatory conduct, nor does it overrule *People v Cannon*. In fact, *People v Huston* specifically holds that predatory conduct does not encompass *any* preoffense conduct, but rather only those forms of

-14-

preoffense conduct that are commonly understood as being predatory in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection. *People v Huston*, supra, 489 Mich 451, 462.

In *People v Huston*, the defendants lay in wait in a mall parking lot after dark and robbed a woman who parked her car. They were looking not only for a victim but for a vulnerable victim. Mr. Heath was allegedly looking for any man who responded to the backpage ad. None of the *Cannon* factors apply to either Mr. Gray or to Mr. Isascson. Mr. Heath's alleged conduct was indeed run-of-mill planning, not lying in wait or seeking out a particularly vulnerable victim. The score for OV 10 should be zero.

## OV 19 – Threat to Security or Interference with the Administration of Justice

OV 19 was scored at 10 points. A score of 10 points is appropriate where "The offender otherwise interfered with or attempted to interfere with the administration of justice." The explanation for this score is given on page 2 of the CFJ-284 part of the presentence report, that the Defendant denied any involvement in the charged offenses and that he was just passing through the parking lot of the Swiss Valley apartments. He first denied encountering anyone in the parking lot.

It is well settled that providing false information to the police or committing perjury can justify a score of 10 points under OV 19. See *People v Barbee*, 470 Mich 384, 386-387; 681 NW2d 348 (2004) and *People v Jenkins*, 244 Mich App 1, 15 n 6; 624 NW2d 457 (2000). On the other hand, as recognized by the majority in *People v Baiz*, unpublished opinion per curiam of the Court of Appeals, issued January 9, 2007 (Docket No. 262912), when a jury finds the testimony of a victim to be more credible that than of the defendant, this does not equate with a

finding that the defendant did in fact lie when he testified.  A copy of this opinion is submitted with this brief in a separate appendix.  As the majority points out in that opinion, assessing 10 points under OV 19 based on a defendant maintaining his innocence raises constitutional concerns.

According to Officer Dennis Ferguson, Mr. Heath first denied encountering anyone in the parking lot but then said that he encountered another motorist who called him a "m****f*****," which was consistent with his trial testimony.  He denied any contact at all with Brian Gray.  The jury found Mr. Gray and Mr. Isaacson to be more credible, but this does not mean that the jury decided that Mr. Heath committed perjury.  In *People v Adams*, 430 Mich 679, 693; 425 NW2d 437(1988) the Michigan Supreme Court held that while a sentencing court can consider a defendant's perjury in assessing his potential for rehabilitation:

> We do not suggest that the trial judge has uncontrolled discretion in this area, or that there could not be circumstances in which the record would support a claim that the defendant's testimony did not display a flagrant willingness to lie under oath, that the trial court gave improper weight to false testimony on an irrelevant matter, or that the trial court improperly concluded that the perjury in question was wilful, that is, that although material the evidence could not rationally be attributed to the defendant and was therefore not relevant to the prospects for rehabilitation.

> However, when the record contains a rational basis for the trial court's conclusion that the defendant's testimony amounted to wilful, material, and flagrant perjury, and that such misstatements have a logical bearing on the question of the defendant's prospects for rehabilitation, the trial court properly may consider this circumstance in imposing sentence.

The same standard should apply to the scoring of OV 19, and in the present case the score should be zero.

If OV 10 and OV 19 are scored at zero, the total offense variable points will be reduced from 55 to 30.  That would change the recommended minimum sentence range from the present

one, 58 months to 228 months, to 43 months to 172 months.  The actual minimum sentence for unarmed robbery in each case was 8 years, or 96 months.

The actual minimum sentence of 96 months falls within the range of 43 months to 172 months.  However, *People v Francisco*, supra, 474 Mich 82, 91-92 requires resentencing when the minimum sentence range is miscalculated, even if the sentence falls with the minimum sentence range as corrected.

## **RELIEF REQUESTED**

For the above reasons, Defendant asks that the Court of Appeals reverse his convictions of two counts of unarmed robbery and two counts of impersonating a police officer and remand this case to the Kent County Circuit Court for a new trial.  In the alternative, Defendant asks that the the Court of Appeals remand this case to the Kent County Circuit Court for resentencing.

Respectfully submitted,

Dated:  January 3, 2013

/s/ Daniel D. Bremer
Daniel D. Bremer (P-23554)
Attorney for Defendant-Appellant
1133 East Bristol Road
Burton, Michigan 48529
(810) 232-6231

RECEIVED by Michigan Court of Appeals 3/2/2013 7:09:14 PM

STATE OF MICHIGAN

IN THE COURT OF APPEALS

PEOPLE OF THE STATE
OF MICHIGAN,

     Plaintiff-Appellee,     Docket No. 310897

vs               Lower Court File Nos.  11-011910-FH
                         11-011911-FH

KELVIN WAYNE HEATH,

     Defendant-Appellant.

_____/

William A. Forsyth (P-23770)     Kelvin Heath
Prosecuting Attorney        In Pro Per
82 Ionia Avenue, NW, Ste. 450    # 199603
Grand Rapids, Michigan 49503    Saginaw Correctional Facility
(616) 632-6710         9625 Pierce Road
                Freeland, Michigan 48623

_____

## **SUPPLEMENTAL STANDARD 4 BRIEF**

Kelvin Wayne Heath
in pro per
# 199603
Saginaw Correctional Facility
9625 Pierce Road
Freeland, Michigan 48623

**TABLE OF CONTENTS**

Index of Authorities................................................................................i

Argument

      INEFFECTIVE COUNSEL................................................................1

Relief Requested................................................................................3

**INDEX OF AUTHORITIES**

**Cases**

*Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986)............................................3

*Booker v Jabe*, 775 F2d 762 (CA 6, 1985)............................................3

*Strauder v West Virginia*, 100 US 303; 25 L Ed 664 (1880)............................................3

*Swain v Alabama*, 380 UA 202; 85 S Ct 824; 13 L Ed 759 (1965)............................................3

*United States v Koblitz*, 803 F2d 1523 (CA 11, 1986)............................................2

*United States v Perez*, 325 F3d 115 (CA 2, 2003)............................................2

*United States v Schwarz*, 283 F3d 76 (CA 2, 2002)............................................2

**Michigan Rules of Professional Conduct**

MRPC 1.1(b)............................................2

MRPC 1.1(c)............................................2

MRPC 1.3............................................2

MRPC 1.4............................................2

RECEIVED by Michigan Court of Appeals 3/2/2013 7:09:14 PM

**West Digest**

Crim. Law 641.5(.5)...................................................................................2

Crim. Law 641.5(5)....................................................................................2

Crim. Law 641.5(7)....................................................................................2

Crim. Law 641.10(1)...................................................................................2

Crim. Law 641.13(1)...................................................................................2

## STATEMENT OF QUESTION PRESENTED FOR REVIEW

Was the Defendant-Appellant's counsel ineffective?

Defendant-Appellant would answer "yes."

The trial court would answer "no."

## STATEMENT OF APPLICABLE STANDARDS OF REVIEW

The applicable standards are set forth in the argument portion of this brief.

RECEIVED by Michigan Court of Appeals 3/2/2013 7:09:14 PM

**ARGUMENT**

**INEFFECTIVE COUNSEL**

Trial attorney Ms. Valerie Foster failed to adequately investigate my case. 1) Counsel never interviewed, or called, my witnesses as I instructed to refute Prosecutor's argument. 2) Counsel never contacted the casino as I instructed. My family members called the public defender's office and informed said counsel's office that the casino would not release information. unless it was petitioned by the court or an attorney. This information was passed on three months before my trial. 3) Never discussed a strategy, or even sat down to go over my case other than to bring my three different plea bargains at court appearances -- which were our only meetings. Attorney Valerie Foster was disappointed and highly upset that I refused to take a plea bargain to the point that it reflected in her comments throughout my two day trial. I am alleging that I was prejudiced by my trial attorney's performance due to her conflicting interest, coupled with expediting trials, forceful pleas, committing misconduct simply to meet her constitutional obligation. Under color of state law she had a duty to make reasonable investigations and representation. There was no dedication or commitment acts done in my interest (other than asking for a directed verdict!). The guiding principle is that a lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interest and consistent with the client's overall requirements as to the character of representation. I appellant further state that I wrote several letters to trial attorney Foster three, four months before the trial date instructing her to contact those witnesses and the casino. I also wrote Judge Buth on five different occasions, one being to make sure that the arguments that I and my attorney had in his courtroom were preserved on record. Michigan Rules of Court states that a trial attorney shall maintain and keep a file of client's notation, communications, etc for up

-1-

to five years. I ask the Michigan Court of Appeals to request that trial attorney Valerie Foster turn over her file to the appellate office along with my letters of communication to her to re-enforce my claim. Although it is clear in the transcripts that my attorney and I are having problems the judge never investigated to determine the problem. I cite *United States v Perez*, 325 F3d 115 (CA 2, 2003); Crim. Law 641.5(.5); 641.10(1) and 641.5(7), 641.10(1); *United States v Schwarz*, 283 F3d 76 (CA 2, 2002); Crim. Law 641.13(1) and 641.5(5); *United States v Koblitz*, 803 F2d 1523 (CA 11, 1986) 32(14) specifically footnote 2, # 13.

MRPC 1.4, also MRPC 1.1(b) and MRPC 1.1(c) as well MRPC 1.3. Attorney Valerie Foster violated all three named rules.

I Kelvin Heath further that I instructed trial attorney Valerie Foster to inform the jury that I have three prior drug convictions which are my only felony convictions. I have no history of violence. To demonstrate robbery is out of character. I also instructed her to put on record I was against how the jury process was done. I am alleging attorney Valerie Foster engaged in misconduct due to my writing to the judge complaining about her representation, coupled with my accusing her of conspiring with the prosecutor – the transcripts reflect her snide comments very unbecoming and re-enforce my claim of ineffective performance. The jury had a question that I was told my by attorney it was important nor did the judge enlighten me to what this question was ??? Nor did they feel the need to put it on record this is why I asked Judge Buth who is here to make sure I received a fair trial. I wrote Honorable Judge Buth on March 17, 2012 letting him know I had seven questions for trial attorney Foster. He only allowed me to ask two of them before he cut me off while I'm going on record for appeal purposes.

I challenge the procedure conducted to panel my jury and the prosecutor's selective method of excluding the four Blacks on the panel simply because of race. I'm alleging Sixth Amendment violations as well as Fourteenth due to purposeful discrimination in the selection of

RECEIVED by Michigan Court of Appeals 3/2/2013 7:09:14 PM

-2-

the venire also substantially underrepresented on the venire from which my jury was drawn. the venire was selected under a practice providing the opportunity for discrimination. This combination of factors raises the necessary inferences of purposeful discrimination.

I cite the following: *Booker v Jabe*, 775 F2d 762 (CA 6, 1985); *Swain v Alabama*, 380 UA 202; 85 S Ct 824; 13 L Ed 759 (1965); *Strauder v West Virginia*, 100 US 303; 25 L Ed 664 (1880); *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

In 1994 a professor at Grand Valley State University brought to the attention the systematic way in which Kent County selected its jurors. As a result a new system was instituted. I'm alleging said system has resurfaced.

Although my attorney did not preserve these issues I raise I ask this Court of Appeals to intervene to to I am alleging ineffective assistance of counsel.

I request a stay of judgment to release my on bail or on my own recognizance.

Respectfully submitted,

Dated: 2-27-13

Kelvin Heath

Kelvin Heath
# 199603
Saginaw Correctional Facility
9625 Pierce Road
Freeland, Michigan 48623

RECEIVED by Michigan Court of Appeals 3/2/2013 7:09:14 PM

# STATE OF MICHIGAN

# COURT OF APPEALS

DEFENDANTS COPY

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KELVIN WAYNE HEATH,

Defendant-Appellant.

UNPUBLISHED
August 20, 2013

No.  310897
Kent Circuit Court
LC Nos.  11-011910-FH;
11-011911-FH

Before:  WHITBECK, P.J., and OWENS and M. J. KELLY, JJ.

PER CURIAM.

Defendant Kelvin Wayne Heath appeals of right his jury convictions of two counts of unarmed robbery, MCL 750.530; and two counts of false personation of a public officer, MCL 750.215.  The trial court sentenced him as a habitual offender, fourth offense, MCL 769.12, to serve concurrent sentences of 8 to 20 years in prison for each unarmed robbery and time served for the false personation counts.  Because we conclude that there were no errors warranting relief, we affirm.

Heath's convictions arise out of a pair of robberies committed within two weeks of each other.  In both cases, there was evidence that he used text messages to direct the victims to a particular apartment where they could purchase "massage" services.  When the victims arrived at the apartment complex, Heath confronted them and identified himself as a police officer conducting a sting operation.  Heath then took the victims' wallets to "check their identification" and took the victims' money.  He then returned the wallets and told the victims that they were free to go.

The second victim, Barry Isaacson, testified that he was from Illinois but came to Grand Rapids for unspecified "business."  He said he went to the apartment complex at issue for an "adult service."  After Heath stopped him and took his money, Isaacson drove around the parking lot and saw Heath getting into his car.  He drove up to Heath and took a picture of him with his phone's camera.  He then called the number given as a contact for the massage service and Heath answered.  Isaacson called the police department and, after an officer arrived at the parking lot, he gave the officer a copy of Heath's picture and the contact number.  The officer traced the phone number to Heath and verified Isaacson's photo as a match for Heath's driver's license photo.  The first victim later identified Heath as the person who robbed him.

-1-

On appeal, Heath argues that the trial court erred when it allowed the prosecutor to have Isaacson's preliminary examination testimony read into evidence. Specifically, he contends that the trial court erred to the extent that it determined that the prosecutor had exercised due diligence in procuring Isaacson's presence. He notes that there is no evidence that the prosecutor sought to obtain his presence under the Uniform Act to Secure the Attendance of Witnesses from without a State in Criminal Proceedings, see MCL 767.91 *et seq.*, which, he maintains, precludes a finding of due diligence. This Court reviews a trial court's decision to permit the admission of evidence for an abuse of discretion. *People v Roper*, 286 Mich App 77, 90; 777 NW2d 483 (2009). "However, this Court reviews de novo whether a rule or statute precludes admission of evidence as a matter of law." *Id.* at 91. This Court reviews de novo issues of constitutional law, such as the right to confront witnesses. *People v Rose*, 289 Mich App 499, 505; 808 NW2d 301 (2010). Heath's lawyer, however, did not contemporaneously object to the reading of Isaacson's testimony into the record. Rather, she first brought up the issue of confrontation in a motion for a mistrial. Therefore, this issue was not properly preserved and our review is limited to determining whether there was plain error affecting Heath's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). When a claim has been forfeited, we will only grant relief if we conclude that there was in fact an error, that the error was plain (i.e., was clear or obvious), and the error affected the outcome of the lower court proceeding. *Id.*

A criminal defendant has the right to confront the witnesses against him or her. *People v Yost*, 278 Mich App 341, 369-370; 749 NW2d 753 (2008). Generally, this includes the right to examine the witness at trial. *Rose*, 289 Mich App at 513. Nevertheless, the Sixth Amendment does not bar "testimonial statements by a witness who does not appear at trial" if the witness "is unavailable and the defendant had a prior opportunity to cross-examine the witness." *Yost*, 278 Mich App at 370, citing *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

Consistent with the exception to the right to confront witnesses, MRE 804(b)(1) provides that a witness' testimony from a prior hearing may be admitted into evidence when the declarant is unavailable "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." A witness is unavailable if he "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown." MRE 804(a)(5). Whether the prosecution showed due diligence is a question of whether a reasonable, good-faith effort was made in attempting to procure the witness, not "whether more stringent efforts would have produced [him]." *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). This determination is dependent on the facts and circumstances of each case. *Id.*

Although the record is sparse because the trial court did not conduct a hearing on the issue, it appears that the prosecutor knew Isaacson's home address and knew that Isaacson was reluctant to testify at trial; indeed, the prosecutor reminded the trial court that they took Isaacson's full testimony during the preliminary examination because he "was less than cooperative" even then and they wanted to be sure that they made a record. The prosecutor

indicated that Isaacson had been subpoenaed, but did not respond.[1] In the months leading to the trial, the prosecutor also made several unsuccessful attempts to contact Isaacson by telephone. No other efforts were made to secure his presence.

Heath's lawyer acknowledged that the prosecutor had attempted to get Isaacson to appear and that Isaacson refused to come, but nevertheless argued that the prosecutor could have done more to ensure his presence. On the basis of the existing record, the trial court apparently determined that the prosecutor had made sufficient efforts to establish due diligence in procuring Isaacson's presence. As such, the trial court determined that Isaacson was unavailable for purposes of MRE 804(b)(1) and determined that it was proper to read Isaacson's testimony from the preliminary examination into the record.

Here, the record was not fully developed and, for that reason, we cannot state with any degree of certainty that the prosecutor failed to exercise due diligence—that is, we cannot say that the trial court's implicit determination that the prosecutor's efforts were reasonable was on its face erroneous. *Bean*, 457 Mich at 684 (stating that the test is one of "reasonableness and depends on the facts and circumstances" unique to each case). As such, we cannot conclude that it was plain error to admit Isaacson's preliminary examination testimony.

Even if we were to conclude that the trial court plainly erred and the error prejudiced Heath's trial, this Court would nevertheless have to determine whether to exercise its discretion to grant relief. *Carines*, 460 Mich at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (quotation marks and citation omitted). Because Heath is not actually innocent and because any error does not—on this record—undermine the fairness, integrity or public reputation of judicial proceedings, Heath would not be entitled to the requested relief. *Id.*

Next, Heath argues that the trial court improperly scored offense variable (OV) 10 and OV 19. This Court reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the facts. *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008). And this Court reviews the trial court's findings underlying a particular score for clear error. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). However, because Heath did not object to the trial court's scores, our review is limited to plain error affecting his substantial rights. *People v Odom*, 276 Mich App 407, 411; 740 NW2d 557 (2007).

The trial court must score OV 10 at 15 when the defendant uses predatory conduct to exploit a vulnerable victim. MCL 777.40. Predatory conduct is defined as "preoffense conduct directed at a victim for the primary purpose of victimization." MCL 777.40(3)(a). This has been interpreted to not include all preoffense conduct, but only that which is predatory in nature, such as lying in wait. *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011). Vulnerability

---

[1] Because the subpoena was served in Illinois, it was not enforceable. See *People v Nieto*, 33 Mich App 535, 538 n 7; 190 NW2d 579 (1971).

refers to the victim's susceptibility to "injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). The vulnerability need not be inherent in the victim, but can arise from the circumstances surrounding the offense. *Huston*, 489 Mich at 464.

On appeal, Heath argues that he did not engage in predatory conduct and that the victims were not vulnerable. The record evidence established that Heath lured the victims to a particular apartment so that when they arrived he could approach and rob them; a clear example of lying in wait. Moreover, the victims were vulnerable because Heath caused them to believe he was a police officer and exploited the victims' apprehension that they might be thought to be involved in an illegal activity. Indeed, the victims were susceptible to physical restraint because they believed Heath had the authority to restrain them. Accordingly, the trial court did not plainly err in scoring this variable.

The trial court had to score OV 19 at 10 points if the offender interfered, or attempted to interfere, with the administration of justice. *People v Ericksen*, 288 Mich App 192, 203; 793 NW2d 120 (2010). Interference with the administration of justice has been broadly construed to go beyond acts constituting obstruction of justice and includes interference with law enforcement officers. *People v Barbee*, 470 Mich 283, 286-288; 681 NW2d 348 (2004). Here, Heath argues that he was incorrectly scored under OV 19 for making perjured statements without a specific finding that he committed perjury. But the trial court did not score this variable on that basis; it scored OV 19 because Heath made false statements to the police regarding whether he had been at the apartment complex where the robberies occurred. Giving false information to a police officer investigating a crime interferes with the administration of justice. *Id.* at 288. Accordingly, there was no plain error.

Next, in a Standard 4 brief, Heath argues that he was denied effective assistance of counsel. However, his allegations related to this claim are devoid of factual and legal support and amount to nothing more than a declaration of Heath's position. Therefore, we conclude that he has abandoned this claim of error on appeal. *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004). Similarly, Heath argues in his Standard 4 brief that the prosecution engaged in racial discrimination by using peremptory challenges to exclude all African-Americans from the jury. Heath failed to raise this issue in his statement of questions presented, thus it is not properly presented for review. *People v Miller*, 238 Mich App 168, 172; 604 NW2d 781 (1999). In any event, on reviewing the record, we can find no support for this claim; thus, he has not shown the existence of a plain error warranting relief. *Carines*, 460 Mich at 764.

There were no errors that warrant relief.

Affirmed.

/s/ William C. Whitbeck
/s/ Donald S. Owens
/s/ Michael J. Kelly