UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

KELVIN HEATH,

    Petitioner,                             Case No. 2:14-cv-123

v.                                                 Honorable R. ALLAN EDGAR

MITCH PERRY,

    Respondent.

_____/

## MEMORANDUM AND ORDER

Petitioner Kelvin Heath, filed this petition for writ of habeas corpus challenging his convictions for two counts of unarmed robbery, and impersonation of a public officer. Petitioner was sentenced as a fourth habitual offender to eight to twenty years imprisonment on each unarmed robbery conviction and time served for his impersonation of a public officer conviction. The Michigan Court of Appeals summarized the facts of this case explaining:

> Heath's convictions arise out of a pair of robberies committed within two weeks of each other. In both cases, there was evidence that he used text messages to direct the victims to a particular apartment where they could purchase "massage" services. When the victims arrived at the apartment complex, Heath confronted them and identified himself as a police officer conducting a sting operation. Heath then took the victims' wallets to "check their identification" and took the victims' money. He then returned the wallets and told the victims that they were free to go.
>
> The second victim, Barry Isaacson, testified that he was from Illinois but came to Grand Rapids for unspecified "business." He said he went to the apartment complex at issue for an "adult service." After Heath stopped him and took his money, Isaacson drove around the parking lot and saw Heath getting into his car. He drove up to Heath and took a picture of him with his phone's camera. He then called the number

given as a contact for the massage service and Heath answered. Isaacson called the police department and, after an officer arrived at the parking lot, he gave the officer a copy of Heath's picture and the contact number. The officer traced the phone number to Heath and verified Isaacson's photo as a match for Heath's driver's license photo. The first victim later identified Heath as the person who robbed him.

PageID.255.

Petitioner argues in his petition that:

I. Inadmissable testimony from preliminary hearing was used against me without prosecutors using due diligence to get witness/ victim Mr. Iaacson.

II. Wrong point variables added. Points were added to enhance sentence without proving what is used to enhance. Nor do said variables apply to case.

III. Ineffective assistance of counsel. Counsel and Petitioner disagreed about taking a plea and counsel failed to subpoena witnesses and discuss strategy. Petitioner and counsel only met at court hearing and communication was by mail. Counsel failed to observe point variables and raise fair cross section claim.

IV. Prosecutorial misconduct. Prosecutor had no intention of bringing Mr. Isaacson who is a witness/ victim to the court room due to lying to police officer and his demeanor. Prosecutor's purpose was to use testimony to prove another unsolved case.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2)

2

resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Respondent argues that Petitioner has procedurally defaulted each of his claims and can not overcome his procedural default by showing cause and prejudice for his default in the state courts or that he is actually innocent. When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claims in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

After expressly noting Petitioner's default in failing to object to using the preliminary examination testimony in the absence of victim Isaacson at trial and to the improper scoring of offense variables at sentencing, the Michigan Court of Appeals then reviewed Petitioner's claim for plain error, finding none. In this circuit, "plain error review does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000); *see also Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) (state court's alternative holding on the merits does not require federal court to disregard the procedural bar); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (same); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (claim is defaulted even where the state court may excuse the default for "manifest injustice"); *Federico v. Yukins*, No. 93-2424, 1994 WL 601408, at *3-*4 (6th Cir. Nov. 2, 1994) (same, for "miscarriage of justice"). Further, the Michigan Court of Appeals found that Petitioner abandoned his ineffective assistance of counsel claim because he presented no factual or legal arguments to support his claim. Similarly, the Michigan Court of Appeals concluded that Petitioner

5

failed to properly present his claim that the prosecution engaged in racial discrimination by using peremptory challenges to exclude African Americans from the jury. The court found no plain error which could warrant relief. In order to overcome his procedural default, Petitioner has to show cause and prejudice for his default in the Michigan Court of Appeals.

Petitioner asserts that his counsel erred by failing to object to the prosecution's claim that victim Isaacson was unavailable to testify at trial. Mr. Isaacson testified at the preliminary examination. At the preliminary examination, counsel indicated that the main reason Mr. Isaacson's testimony was taken was to preserve it because he lived out of the state. Mr. Isaacson resided in Illinois. The prosecution subpoenaed him and made telephone contact with him. Mr. Isaacson informed the prosecutor that he would not attend the trial and would not honor the subpoena. PageID.208. The court found Mr. Isaacson unavailable and that it was proper to read his preliminary examination testimony during trial. Page ID.209.

The Michigan Court of Appeals rejected this claim explaining:

Consistent with the exception to the right to confront witnesses, MRE 804(b)(1) provides that a witness' testimony from a prior hearing may be admitted into evidence when the declarant is unavailable "if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." A witness is unavailable if he "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown." MRE 804(a)(5). Whether the prosecution showed due diligence is a question of whether a reasonable, good-faith effort was made in attempting to procure the witness, not "whether more stringent efforts would have produced [him]." *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). This determination is dependent on the facts and circumstances of each case. *Id*.

Although the record is sparse because the trial court did not conduct a hearing on the issue, it appears that the prosecutor knew Isaacson's home address and knew that Isaacson was reluctant to testify at trial; indeed, the prosecutor reminded the trial court that they took Isaacson's

full testimony during the preliminary examination because he "was less than cooperative" even then and they wanted to be sure that they made a record. The prosecutor indicated that Isaacson had been subpoenaed [in Illinois], but did not respond. In the months leading to the trial, the prosecutor also made several unsuccessful attempts to contact Isaacson by telephone. No other efforts were made to secure his presence.

Heath's lawyer acknowledged that the prosecutor had attempted to get Isaacson to appear and that Isaacson refused to come, but nevertheless argued that the prosecutor could have done more to ensure his presence. On the basis of the existing record, the trial court apparently determined that the prosecutor had made sufficient efforts to establish due diligence in procuring Isaacson's presence. As such, the trial court determined that Isaacson was unavailable for purposes of MRE 804(b)(1) and determined that it was proper to read Isaacson's testimony from the preliminary examination into the record.

Here, the record was not fully developed and, for that reason, we cannot state with any degree of certainty that the prosecutor failed to exercise due diligence—that is, we cannot say that the trial court's implicit determination that the prosecutor's efforts were reasonable was on its face erroneous. *Bean*, 457 Mich at 684 (stating that the test is one of "reasonableness and depends on the facts and circumstances" unique to each case). As such, we cannot conclude that it was plain error to admit Isaacson's preliminary examination testimony.

Even if we were to conclude that the trial court plainly erred and the error prejudiced Heath's trial, this Court would nevertheless have to determine whether to exercise its discretion to grant relief. *Carines*, 460 Mich at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (quotation marks and citation omitted). Because Heath is not actually innocent and because any error does not—on this record—undermine the fairness, integrity or public reputation of judicial proceedings, Heath would not be entitled to the requested relief. *Id.*

PageID.256-257.

Testimonial out-of-court statements by witnesses are barred under the Confrontation Clause unless witnesses are unavailable and defendants had a prior opportunity to cross-examine witnesses, regardless of whether such statements are deemed reliable by court.    *Crawford v.*

*Washington*, 541 U.S. 36 (2004) (abrogating *Ohio v. Roberts*, 448 U.S. 56 (1980)). The Sixth Amendment guarantees to the criminal defendant the right "to be confronted with the witnesses against him." The Supreme Court has held that this right "means more than being allowed to confront the witness physically. 'Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination.'" *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (quoting *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). The Confrontation Clause generally guarantees only "an opportunity for effective cross-examination," *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). It does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 20. In *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), the Court made clear that in the exercise of this right, "the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."

The reading of the preliminary examination testimony of victim Isaacson was appropriate since victim Isaacson was unavailable to testify at trial. Petitioner had the chance to confront and cross-examine victim Isaacson during his preliminary examination testimony. ECF No. 13-2. Petitioner cannot show that his confrontation rights were violated when he actually cross-examined the witness during his preliminary examination proceeding.[1] Petitioner cannot show cause or prejudice as a result of his procedural default of this issue. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in

---

[1] Petitioner's claim that the prosecutor never intended to call witness Isaacson to trial is baseless and not supported by fact or argument.

a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Similarly, Petitioner cannot establish constitutional error occurred during his sentencing. Generally, errors in sentencing do not present a federal issue cognizable in habeas corpus proceedings. *See Johnson v. Arizona*, 462 F.2d 1352 (9th Cir. 1972); *Pringle v. Beto*, 424 F.2d 515 (5th Cir. 1970). To the extent that petitioner challenges the correctness of his sentence on the basis of state law, Petitioner is not entitled to habeas review unless there has been a fundamental miscarriage of justice. *See Bagby v. Sowders*, 894 F.2d 792 (6th Cir.), *cert. denied*, 496 U.S. 929 (1990).[2]

Petitioner's sentence does not exceed the statutory limit nor has Petitioner shown that the sentence amounted to an arbitrary and capricious abuse of discretion. The Michigan Court of Appeals rejected Petitioner's claim of sentencing error. Petitioner has not shown cause and prejudice for his procedural default of this issue because he was sentenced as a habitual offender under Mich. Comp. Laws § 769.12 for unarmed robbery in violation of Mich. Comp. Laws § 750.530. The habitual offender statute enhanced Petitioner's allowable maximum sentence from fifteen years imprisonment to life imprisonment. Petitioner was sentenced to a maximum sentence of twenty years

---

[2]Petitioner relies upon the state law case of *People v. Lockridge*, 2015 WL 4562293 (Mich. Jul. 29, 2015). The court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence. As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional, and the remedy was to make them advisory only. The Michigan Supreme Court's decision in *Lockridge* does not render the result "clearly established" for purposes of habeas review. This Court may consider only the "clearly established" holdings of the United States Supreme Court. *Williams*, 529 U.S. at 412. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014). For the same reasons, it may not consider the holdings of the state courts. Instead, this Court may only grant relief on habeas review if the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, U.S. at 410.

imprisonment. Therefore, Petitioner has not set forth a federal question because his sentence was imposed within the state statutory limit. *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987), *cert. denied*, 484 U.S. 1014 (1988).

> [A] state trial court's sentencing decision and claims arising out of the decision are not generally constitutionally cognizable, relief may be required where the petitioner is able to show that the sentence imposed exceeds or is outside the statutory limits, or is wholly unauthorized by law. *E.G.*, *Bozza v. United States*, 330 U.S. 160, 166, 67 S.Ct. 645, 648-49, 91 L.Ed. 8181 (1947); *United States v. Jackson*, 696 F.2d 320, 321 (5th Cir. 1983); *Willeford v. Estelle*, 538 F.2d 1194, 1196-97 (5th Cir. 1976). If the sentence is within the statutory limits, the petitioner must show that the sentencing decision was wholly devoid of discretion or amounted to an "arbitrary or capricious abuse of discretion," or that an error of law resulted in the improper exercise of the sentence's discretion and thereby deprived petitioner of his liberty.

*Id.* at 923-24. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner alleges that his counsel was ineffective for failing to investigate his case, call appropriate witnesses, discuss strategy, object to the scoring guidelines, challenge the jury selection procedure, and for conspiring with the prosecutor. Petitioner fails to show cause or prejudice for his procedural default of this claim in the Michigan Court of Appeals.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A

court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Petitioner has failed to explain exactly how his counsel was ineffective. The record does not support Petitioner's assertions of ineffective assistance of counsel. When Petitioner raised his concerns about the effectiveness of his counsel to the trial judge, counsel responded and the trial court rejected Petitioner's claim.

> Your Honor, I've represented Mr. Heath since his aggravated stalking charge [a separate case]. I believe it was last late summer. He was out on bond on that charge when these two allegations arose. He's been in custody since -- I believe it's been since the early part of -- late part of November of last year.
>
> I have -- every motion he's asked me to bring, I've brought to this Court; a motion to reduce bond; a motion to -- against the Court to sever these cases.
>
> I believe I've been an effective attorney. I believe I've cross-examined every witness effectively. I believe I cross-examined the missing witness effectively at the preliminary examination.
>
> I've been doing this, Judge, for 21 years. I've been trying cases for 21 years. This is the first time I've had a client who has an epiphany late in the trial and now wants to blame the lawyer for what he perceives as

everything going wrong. I didn't tell Mr. Heath what to say when he took the stand on Tuesday. I didn't coach him. He's 51 years of age; he knows how to answer questions on his own.

This case is what it is, your Honor. I've done everything I was supposed to. I've done everything with everything that I had with every resource I had available to me to try this case. And Mr. Heath just indicated in his little statement to you, other than this lady that he kept mentioning, there were no other witnesses. He wanted me to contact a daughter, he wanted me to con -- I never got that from him about contacting his daughter, contacting his cousin. I never got a name from him, except this Sheila woman. And I never got a last name from him until two days ago.

I have kept in really good contact with him. I've written -- I've responded to practically every letter he's ever written me. But the reality is, your Honor, this man's mind was made up from the day he picked up the aggravated stalking case. We ran that preliminary examination. That case was bound over. He didn't do that either.

When this case came about, he wanted to run the prelim. I had to convince him not to take testimony of the second -- the first guy because I was confident that, once all the evidence was brought to light, that Mr. Heath would have his epiphany. He never did. That's not my problem.

We're here today because Mr. Heath indicated he wished to have his constitutional right to a trial by a jury. That's the reason why we're here, your Honor. I believe -- question -- tell me if I'm wrong; that I've done everything that I'm duty bound to do as his counselor. That's all I have to say.

THE COURT: All right.

DEFENSE COUNSEL: Oh, one other thing. I didn't yell at him. I did raise my voice because, frankly, I get a little offended when people say to me that I'm working for the prosecution. I do not work for the prosecution.

THE DEFENDANT: You said it's your first case; that nobody ever did this before.  So why say that if nobody ever said this to you.

DEFENSE COUNSEL: Did what before?

THE DEFENDANT: Accuse you of working for the prosecutor.

12

>DEFENSE COUNSEL: No, no, no, no. I never said that. I said I don't like it when clients say to me, "You're workin' for the prosecution."
>
>THE DEFENDANT: You said, "you people." We don't need to - -
>
>DEFENSE COUNSEL: You know what, Mr. Heath? I'm not going to argue with you.
>
>THE COURT: Well - - well, enough said from both of you. I'll just - - Mr. Heath, I'll just state for the record - -
>
>DEFENSE COUNSEL: It's not my fault you're here, your man, it's your own.
>
>THE COURT: - - Ms. Foster has, I think been trying cases here in Kent County for close to 20 years.
>
>DEFENSE COUNSEL; yes, sir.
>
>THE COURT: Very experienced, very effective, very confident. You're not going to get a better attorney than Ms. Foster. You may be disappointed with how things have gone. That is not unusual. You're on trial, you're facing serious charges. So, defendants are sometimes or oftentimes upset. You're in a tough position; you're facing serious charges. But that's why we have jury trials.
>
>You have a very effective attorney. I'm sure she'll make a very effective closing argument. All of us, the Court, the prosecution, your defense attorney, are doing the best job possible to give you a fair trial. I'm confident that the witnesses are taking their oath seriously when they testify.

PageID.223-224.

Petitioner has not supported his claims of ineffective assistance of counsel. Petitioner has set forth no reason to show that his counsel was ineffective other than she failed to get him acquitted of the charges. Petitioner has not established cause and prejudice to overcome his procedural default of this issue in the Michigan Court of Appeals. Further, Petitioner has not shown that the rejection of this issue during his trial was based upon an unreasonable application of federal law.

13

Similarly, Petitioner has made no showing to overcome his procedural default of the his claim that the prosecutor used his peremptory challenges merely to exclude African American's from the jury. Petitioner has failed to explain how the jury selection process was unfair and his conclusory allegations of misconduct fail to establish a constitutional violation. Petitioner has failed to show cause and prejudice for his procedural default of this issue. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Accordingly, the Petition is Dismissed.

In addition, if Petitioner should choose to appeal this action, a certificate of appealability is denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

The undersigned recommends that the court deny Petitioner's application on procedural grounds of default. Under *Slack*, 529 U.S. at 484, when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists

of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id.* The undersigned concludes that reasonable jurists could not debate that each of Petitioner's claims are properly dismissed on the procedural grounds of default. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Therefore, the court will deny Petitioner a certificate of appealability.

A Judgment consistent with this Memorandum and Order will be entered.

SO ORDERED.


Dated:   6/7/2016                          /s/ R. Allan Edgar
                                           R. ALLAN EDGAR
                                           UNITED STATES DISTRICT JUDGE